# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

---

JAMES ROANE, JR., <u>et al.</u>,     )
           )
      Plaintiffs,     )
           )
      v.     )     **Civil Action No. 05-2337 (RWR)**
           )
ALBERTO GONZALES, <u>et al.</u>,     )
           )
      Defendants.     )
           )

---

## <u>DEFENDANTS' PARTIAL MOTION TO DISMISS</u>

Pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(5) and 12(b)(6), Defendants hereby move for partial dismissal of the Amended Complaint. Specifically, defendants move for dismissal of the following parties and claims:

1. All individual capacity claims;

2. The official capacity claims against defendants Tandy and Webster;

3. Counts IV (in part) and V.

A memorandum of points and authorities and proposed order are included with this Motion.

Respectfully submitted,

_____
JEFFREY A. TAYLOR, D.C. Bar #498610
United States Attorney


_____
RUDOLPH CONTRERAS, D.C. Bar #434122
Assistant United States Attorney

_____

PETER D. BLUMBERG, D.C. Bar # 463247
Assistant United States Attorney
United States Attorneys Office
Judiciary Center Building
555 4th Street, N.W., 10th Floor
Washington, D.C. 20530
(202) 514-7157


_____

ROBERT J. ERICKSON, D.C. Bar No. 220731
Principal Deputy Chief
Criminal Appellate Section
U. S. DEPARTMENT OF JUSTICE
950 Pennsylvania Avenue, NW
Room 1515
Washington, DC 20530
(202) 514-2841

Dated: November 9, 2006

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **JAMES H. ROANE, JR., <u>et al.</u>,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| **v.** ) | **Civil Action No. 05-2337 (RWR)** |
| ) | |
| **ALBERTO GONZALES, <u>et al.</u>,** ) | |
| ) | |
| **Defendants.** ) | |

**DEFENDANTS' MEMORANDUM IN
<u>SUPPORT OF PARTIAL MOTION TO DISMISS</u>**

## I. <u>FACTUAL BACKGROUND</u>

**A.    Plaintiffs' Complaint**

Plaintiffs James Roane, Richard Tipton and Cory Johnson are individuals who have been sentenced to death under federal law.  <u>See</u> Amended Complaint (Am. Comp.") at ¶ 2.  Unless their capital convictions and/or death sentences are overturned in another judicial proceeding or via executive clemency, they will be executed by lethal injection.  <u>See id.</u> at ¶ 2, 22.  The current federal execution process involves the administration of three substances:  Sodium Pentothal, Pancuronium Bromide and Potassium Chloride.  <u>See id.</u> at ¶ 23.

Plaintiffs bring this action against Alberto Gonzalez (Attorney General, Department of Justice), Karen Tandy (Administrator, Drug Enforcement Administration), Harvey G. Lappin (Director, Federal Bureau of Prisons), Newton Kendig (Medical Director, Federal Bureau of Prisons), Mark Bezy (Warden, United States Penitentiary, Terre Haute); Thomas Webster (Clinical Director, United States Penitentiary, Terre Haute) and John Doe defendants.  The Amended Complaint purports to sue each of these defendants in both their official and individual

capacities.  <u>See</u> Am. Comp. at ¶¶ 11-17.  Plaintiffs claim that the government's three drug lethal

injection protocol utilized in conducting federal judicial executions violates the Eighth

Amendment of the Constitution, the Administrative Procedure Act ("APA") and the Controlled

Substances Act.  <u>See</u> Am. Comp. at ¶¶ 1-7.  The Amended Complaint contains five counts,

which may be briefly summarized as follows:

> Count I (Fifth Amendment, Due Process): Claiming that defendants' alleged
> failure to disclose the procedure that will be used in carrying out their executions
> violates plaintiffs' due process rights.  <u>See</u> Am. Comp. at ¶¶ 56-58.
>
> Count II (Eighth Amendment, Cruel and Unusual Punishment): Claiming that the
> lethal injection procedure utilized in federal judicial executions creates an
> unreasonable risk of excruciating and unnecessary pain.  <u>See</u> Am. Comp. at ¶¶ 59-
> 61.
>
> Count III (Eighth Amendment, Deliberate Indifference): Claiming that the means
> by which the plaintiffs will be anesthetized prior to their deaths violates their
> Eighth Amendment right to be free from deliberate indifference to serious medical
> needs.  <u>See</u> Am. Comp. at ¶¶ 62-66.
>
> Count IV(Administrative Procedure Act): Claiming that the manner in which
> defendants developed the protocol for conducting federal judicial executions
> violated the Administrative Procedure Act, requiring the action to be set aside.
> This Count also challenges the federal regulation authorizing lethal injection as a
> means of carrying out death penalty sentences.  <u>See</u> Am. Comp. at ¶¶ 67-72.
>
> Count V (Controlled Substances Act): Claiming that defendants have arbitrarily
> and capriciously failed to exercise enforcement authority under the Controlled
> Substances Act, based upon the fact that at least one of the chemicals used in
> carrying out federal judicial executions is a Schedule III controlled substance.
> <u>See</u> Am. Comp. at ¶ 73-77.

As relief, plaintiffs seek a preliminary and permanent injunction barring their execution through

the current three drug protocol; a declaratory judgment that the federal government's current

protocol for administering lethal injections violates the Fifth Amendment and Eighth

Amendments to the Constitution and the APA, and reasonable attorneys fees and costs pursuant

to 42 U.S.C. § 1988.  See Am. Comp. at ¶¶ 78-83.

**B.    Procedural History**

Plaintiffs filed their original complaint in December 2005.  See USDC PACER Dkt. No.
1.  In February 2006, they sought a preliminary injunction to stay their executions during the
pendency of Hill v. McDonough, in which the Supreme Court reviewed whether a claim
challenging the method of execution is properly brought as a civil rights action or may only be
heard as a habeas action.  See Dkt. No. 2.  Defendants did not oppose the stay, and the Court
granted plaintiffs' motion by order of February 27, 2006.  See Dkt. No. 5.

On June 12, 2006, the Supreme Court issued its decision in Hill, concluding that an
Eighth Amendment challenge to a lethal injection procedure may proceed as a civil rights action.
See Hill v. McDonough, 126 S. Ct. 2096 (2006).  Plaintiffs thereafter filed their amended
complaint on July 10, 2006.  See Dkt. No. 8.

## II.  STANDARD OF REVIEW

Defendants seek partial dismissal of the Amended Complaint pursuant to Rules 12(b)(1),
12(b)(5) and 12(b)(6) of the Federal Rules of Civil Procedure.  A Rule 12(b)(6) motion "tests the
legal sufficiency of the complaint." ACLU Found. of S. Cal. v. Barr, 952 F.2d 457, 472 (D.C.
Cir. 1991). In reviewing a motion filed pursuant to Rule 12(b)(6), the Court takes the allegations
in the non-movant's pleading as true. Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Sinclair v.
Kleindienst, 711 F.2d 291, 293 (D.C. Cir. 1983).   A complaint may not be dismissed "unless it
appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which
would entitle him to relief." Id.

When faced with a facial challenge to subject matter jurisdiction under Fed. R. Civ. P.

12(b)(1), the Court applies substantially the same standard of review that is used to evaluate Fed. R. Civ. P. 12(b)(6) motions. See Vanover v. Hantman, 77 F. Supp.2d 91, 98 (D.D.C. 1999). The court must accept as true all of the plaintiff's well-pled factual allegations and draw all reasonable inferences in favor of the plaintiff; however, the court does not need to accept as true the plaintiff's legal conclusions. See Alexis v. District of Columbia, 44 F. Supp.2d 331, 336-37 (D.D.C. 1999).

## III. ARGUMENT

**A.     The Individual Capacity (Bivens) Claims Against All Defendants Should be Dismissed**

Defendants do not dispute that this Court has subject matter jurisdiction to hear plaintiffs' Eighth Amendment Constitutional claims (Counts II and III), either as claims brought directly under the Constitution or through relying on the waiver of sovereign immunity provided by the Administrative Procedure Act ("APA"). See Department of the Army v. Blue Fox, Inc., 525 U.S. 255, 259 (1999) (citing 5 U.S.C. § 702); Trudeau v. Federal Trade Commission, 456 F.3d 178, 190 n.22 (D.C. Cir. 2006) (citing Hubbard v. EPA, 809 F.2d 1, 11 n. 15 (D.C. Cir 1986)). Plaintiffs may not, however, maintain individual capacity Bivens claims against any of the defendants.

1.     Plaintiffs' Complaint Seeks Prospective Declaratory and Injunctive Relief, Not Post-Injury Monetary Relief

A Bivens claim (Bivens v. Six Unknown Named Agents, 403 U.S. 388, 390-97 (1971)) permits a plaintiff to seek monetary damages as a remedy for constitutional violations committed by federal officials acting in their individual capacities. See Kartseva v. Department of State, 37 F.3d 1524, 1525 n.2 (D.C. Cir. 1994). As explained in Butz v. Economou, 438 U.S. 478, 504 (1978), "the decision in Bivens established that a citizen suffering a compensable injury to a constitutionally

-4-

protected interest could invoke the general federal-question jurisdiction of the district courts to obtain an award of monetary damages against the responsible federal official." (emphasis in original)

Plaintiffs here have not yet suffered a "compensable injury" resulting from allegedly unconstitutional conduct by a federal officer or officers. See Am. Comp. at ¶ 2. Nor do they seek any monetary damages. See id. at ¶¶ 78-82. To the contrary, their entire Amended Complaint is predicated on the contention that in the absence of declaratory and injunctive relief, they will be injured by an allegedly unconstitutional means of administering the death penalty. Further, their prayer for relief seeks "preliminary and permanent injunctive relief barring the defendants from executing the plaintiffs by means of the lethal injection protocol." Am. Comp. at ¶ 78. These remedies can only be provided by defendants in their official capacities, thus, only official capacity claims are appropriate in this matter.

"Injunctive or declaratory relief is useless to a person who has already been injured. 'For people in Bivens' shoes, it is damages or nothing.'" Butz, 438 U.S. 504-05 (1978) (quoting Bivens, 403 U.S. at 410). This is not, however, a "damages or nothing" situation. Here, plaintiffs have other effective remedies in the form of injunctive relief. See Correctional Services Corp. v. Malesko, 534 U.S. 61, 72 (2001); Bush v. Lucas, 462 U.S. 367, 377 & 377 n.13 (1983) (only considering a Bivens remedy when "no other form of judicial relief was available"); Harlow v. Fitzgerald, 457 U.S. 800, 814 (1982) ("an action for damages may offer the only realistic avenue for vindication of constitutional guarantees"); Davis v. Passman, 442 U.S. 228, 245 (1979).

As plaintiffs seek only prospective injunctive relief, and not post-injury monetary relief, the

individual capacity <u>Bivens</u> claims should be dismissed.[1]

> 2.    Plaintiffs Have Not Properly Accomplished Service of Process on Defendants in Their Individual Capacities

Because an individual capacity lawsuit seeks damages from the personal resources of a government employee for his individual acts, <u>see</u> <u>Hafer v. Melo</u>, 502 U.S. 21, 25 (1991) and <u>Kentucky v. Graham</u>, 473 U.S. 159, 165-66 (1985), service of process is fundamental to any procedural imposition on an individual capacity defendant.  <u>See</u> <u>Murphy Brothers, Inc. v. Michetti Pipe Stringing, Inc.</u>, 526 U.S. 344, 350 (1999); <u>Delgado v. Bureau of Prisons</u>, 727 F. Supp. 24, 26 (D.D.C.1989); <u>Lawrence v. Acree</u>, 79 F.R.D. 669, 670 (D.D.C.1978).  Proper service of process upon defendants is necessary to obtain jurisdiction over defendants in their individual capacities. <u>See</u> <u>Pollack v. Meese</u>, 737 F. Supp. 663, 666 (D.D.C.1990) ("The failure, therefore, to perfect individual service is fatal to a <u>Bivens</u> action."). In the absence of service of process (or a waiver of service by a defendant), a court may not ordinarily exercise power over a defendant.  <u>See</u> <u>Murphy Brothers</u>, 526 U.S. at 350; <u>see also</u> <u>Deutch v. Department of Justice</u>, 881 F. Supp. 49, 52 (D.D.C. 1995).

---

[1]Section 1983 of Title 42, which creates a cause of action for unconstitutional conduct on the part of persons acting under color of state law, does allow for equitable or injunctive relief. <u>See</u> 42 U.S.C § 1983; <u>Ranger v. Tenet</u>, 274 F. Supp.2d 1, 6 n.5 (D.D.C. 2003).  It is well established, however, that federal officers and employees cannot be sued under section 1983 for activities undertaken by them pursuant to Federal law.  <u>See</u> <u>District of Columbia v. Carter</u>, 409 U.S. 418, 424-25 (1976); <u>Meyer v. Reno</u>, 911 F. Supp. 11, 14 n.1 (D.D.C. 1996) ("It is well established that 42 U.S.C. § 1983, which provides a cause of action for violations of constitutional rights accomplished under color of state law, does not provide a basis for suit for actions taken under color of federal law."); <u>see also</u> <u>Williams v. United States</u>, 396 F.3d 412, 414 (D.C. Cir. 2005).   Though <u>Bivens</u> has often been characterized as "the federal equivalent of the section 1983 cause of action", <u>see</u> <u>Brown v. Philip Morris Inc.</u>, 250 F.3d 789, 801 (3d Cir. 2001), the above cited authorities make it clear that a plaintiff may not obtain injunctive relief through a <u>Bivens</u> action.

When bringing a suit against a person in his or her individual capacity, a plaintiff must accomplish service of process in accordance with Fed. R. Civ. P. 4(e), which requires that a copy of the summons and complaint be delivered to the individual personally or left at his dwelling house or ususal place of abode with some person of suitable age or discretion who resides there. See Fed. R. Civ. P. 4(e). Alternate rules of service under Fed. R. Civ. P. 4(e)(1) provide for service in accordance with the rules of the state in which the court is located.

Here, plaintiffs have not filed proof of service with the Court reflecting proper individual capacity service. See Fed. R. Civ. P. 4(l).[2] Rule 4(m) gives a plaintiff 120 days to serve process, yet the initial complaint was filed nearly a year ago. This failure of proper individual capacity service provides an alternative basis for dismissal of the individual capacity claims.

> 3. The Court Cannot Exercise Personal Jurisdiction Over Defendants Bezy or Webster in Their Personal Capacities

It is highly improbable that this Court would have personal jurisdiction over defendants Mark Bezy or Thomas Webster in their individual capacities even if proper service was ultimately accomplished. See Reuber v. United States, 750 F.2d 1039, 1049 (D.C. Cir. 1985) (discussing personal jurisdiction); Meyer v. FBI, 929 F. Supp. 10, 13 (D.D.C. 1996) (same). In personam jurisdiction over out-of-state defendants may be maintained by this United States District Court only if permitted by the "long arm" laws of the District of Columbia. See Crane v. Carr, 814 F. 2d 758,

_____

[2]It is well settled that service upon a defendant's employer or agent is not sufficient to effect personal service on an individual being sued in his or her personal capacity. Taylor v. Gearan, 979 F. Supp. 1, 5 (D.D.C. 1997); see also Simpkins v. District of Columbia, 108 F.3d 366, 366-69 (D.C. Cir. 1997) (government employees sued personally for money damages must be personally served); Navy, Marshall & Gordon, P.C. v. United States Int'l Dev. Cooperation Agency, 557 F. Supp. 484, 489-90 (D.D.C. 1983) (federal agents sued in individual capacity for money damages must be served personally and not merely through service upon offices in which they work.)

762 (D.C. Cir. 1987). The District exercises personal jurisdiction based upon the D.C. Code's "long arm" statute found at D.C. Code §13-423 (2000), which states in relevant part:

> (a) A District of Columbia court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's--
>
> > (1) transacting any business in the District of Columbia;
> > (2) contracting to supply services in the District of Columbia;
> > (3) causing tortious injury in the District of Columbia by an act or omission in the District of Columbia;
> > (4) causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia;
> > (5) having an interest in, using, or possessing real property in the District of Columbia;
> > (6) contracting to insure or act as surety ...; or
> > (7) marital or parent and child relationship ...
>
> (b) When jurisdiction over a person is based solely upon this section, only a claim for relief arising from acts enumerated in this section may be asserted against him.

D.C. Code § 13-423 (2000).

At the time plaintiffs filed the Complaint, Mr. Bezy was the warden of a prison located in Terre Haute, Indiana, and Dr. Webster was and continues to be the clinical director of that facility. The injuries about which plaintiffs complain will occur at the federal prison in Terre Haute. The mere fact that these defendants are employees of the Bureau of Prisons, which maintains its headquarters in Washington, D.C., is insufficient to establish the requisite "minimum contacts" with the District of Columbia. See Cameron v. Thornburgh, 983 F.2d 235, 256 (D.C. Cir. 1993); Zakiya v. U.S., 267 F. Supp. 2d 47, 54 (D.D.C. 2003); Reuber v. U.S., et al., 750 F.2d 1039 (D.C. Cir. 1984); James v. Reno, 39 F. Supp. 2d 37, 42 (D.C. Cir. 1999); Meyer v. Reno, 911 F. Supp. 11, 14

-8-

(D.D.C. 1996).

In order for the District Court for the District of Columbia to have personal jurisdiction over a defendant, there must be established minimum contacts and the exercise of jurisdiction must comport with "traditional notions of fair play and substantial justice." Asahi Metal Indus. Co. v. Superior Court of Cal., 480 U.S. 102 (1987); Wiggins v. Equifax Inc., 853 F. Supp. 500 (D.D.C. 1994). "Plaintiff's claim for relief must arise from the defendants' contacts with the District of Columbia and his 'claims must bear some relation to the acts in the District that are relied upon to confer personal jurisdiction.'" Id. at 502 (quoting and citing D.C. Code § 13-423(b); Bayles v. K-Mart Corp., 636 F. Supp. 852, 854 (D.D.C. 1986)). Further, the burden is on the plaintiffs to establish that this Court may exercise personal jurisdiction over the out-of-state defendants. See Blumenthal v. Drudge, 992 F. Supp. 44, 53 (D.D.C. 1998). Plaintiff in this case has failed to allege such facts, and the allegations against Mr. Bezy, or Dr. Webster do not establish the "minimum contacts" necessary to confer personal jurisdiction over these defendants by a District of Columbia court. The individual capacity claims against these two defendants should therefore be dismissed.

4.    Defendant Kendig Would be Entitled to Absolute Immunity Against Individual Capacity Claims, if Plaintiffs' Bivens Claims Were Cognizable

The Amended Complaint includes an individual capacity claim against Newton Kendig, the Medical Director of the Federal Bureau of Prisons. See Am. Comp. at ¶ 14. Dr. Kendig is a member of the Public Health Service. See Declaration of Newton Kendig (Ex. A). As a consequence, he is entitled to absolute immunity for damages claims under the Public Health Service Act, 42 U.S.C. § 233. Section 233(a) makes the Federal Tort Claims Act ("FTCA") the exclusive remedy for specified actions against members of the Public Health Service:

> The remedy against the United States provided by sections 1346(b) and 2672 of Title 28 [the Federal Tort Claims Act], or by alternative benefits provided by the United States where the availability of such benefits precludes a remedy under section 1346(b) of Title 28, for damage for personal injury, including death, resulting from the performance of medical, surgical, dental, or related functions, by any commissioned officer or employee of the Public Health Service while acting within the scope of his office or employment, shall be exclusive of any other civil action or proceeding.

42 U.S.C. § 233(a).  See, e.g., Cuoco v. Moritsugu, 222 F.3d 99, 107-08 (2d Cir. 2000); Pimentel v. Deboo, 411 F. Supp.2d 118, 126 (D. Conn. 2006); Seminario Navarrete v. Vanyur, 110 F. Supp.2d 605, 606 (N. D. Ohio 2000) ("Congress has expressly made the FTCA an inmate's sole remedy for injuries received by Public Health Service Officers acting within the scope of their employment"). Thus, even assuming that plaintiffs were seeking a damages remedy in this action (which by the terms of the Amended Complaint they are not), they could not maintain a Bivens action against defendant Kendig, and would instead have to proceed under the FTCA.

5.    All Other Defendants Would Be Entitled to Qualified Immunity,

Federal officials enjoy a qualified immunity from constitutional and certain statutory claims. Cleavinger v. Saxner, 474 U.S. 193, 201 (1985); Procunier v. Navarette, 434 U.S. 555, 561 (1978). Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  In developing the doctrine of qualified immunity, the Supreme Court has sought to strike a balance "between the interests in vindication of citizens' constitutional rights and in public officials' effective performance of their duties." Anderson v. Creighton, 483 U.S. 635, 639 (1987) (quotation omitted). Recognizing that "bare allegations of malice should not suffice to subject government officials either to the costs

-10-

of trial or to the burdens of broad-reaching discovery," Harlow, 457 U.S. at 817-18, the Court balanced those competing interests by establishing a higher threshold for holding public officials personally liable for constitutional violations. For a public official to be liable for damages, that official both must have violated a constitutional right, and that right must have been "clearly established" at the time of the violation -- "[t]he contours of the right must be sufficiently clear that a reasonable official would understand what he is doing violates that right." Anderson, 483 U.S. at 640. ("qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law'") (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)).

For the reasons set forth in part III.A.1, supra, this case is not appropriately styled as a Bivens action, in that plaintiffs are not claiming that defendants have engaged in conduct that constitutes a violation of a clearly established constitutional right or rights, redressable only through monetary damages. However, the named defendants would be entitled to qualified immunity if this was properly a Bivens action. Even assuming arguendo that plaintiffs are successful on the merits of their challenge, it simply cannot be argued that any alleged unconstitutionality of the lethal injection protocol for federal judicial executions is clearly established at this point in time.

Neither the Supreme Court nor the D.C. Circuit Court of Appeals have spoken directly on the issue presented through this case, cautioning against any finding that the law in this area is "clearly established." See Kalka v. Hawk, 215 F.3d 90, 100 (D.C. Cir. 2000) (concurring opinion) (explaining that what should be deemed to constitute settled law must be decided at least at the Court of Appeals level; "I think it highly unlikely that we would ever hold that an unreviewed district court decision could clearly establish a constitutional right"); Penthouse Int'l v. Meese, 939 F.2d 1011, 1020 (D.C. Cir. 1991) (concurring opinion) (where ruling would constitute "new law," officials are

immune from suit); see also Wilson v. Layne, 526 U.S. 603 (1999) (requiring that the "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right"). The decisions of other courts on the constitutionality of various lethal injection protocols employed in the administration of state executions have frequently rejected Eighth Amendment challenges predicated on the claim that the protocols used by the states constitute cruel and unusual punishment. See Beardslee v. Woodford, 395 F.3d 1064, 1075 (9th Cir. 2005); Cooper v. Rimmer, 379 F.3d 1029, 1033 (9th Cir. 2004); Walker v. Johnson, — F. Supp.2d —, 2006 WL 2619857 (E.D. Va. 2006); Crowe v. Head, 426 F. Supp.2d 1310, 1353 (N.D. Ga. 2005); see also Abdur'Rahman v. Bredesen, 181 S.W.3d 292 (Tenn. 2005); State v. Webb, 750 A.2d 448 (Conn. 2000); Sims v. State, 754 So.2d 657 (Fla. 2000).

The requirement that the law be clearly established is plainly not satisfied here, meaning that if individual capacity claims were properly before this Court, the individual capacity defendants would be entitled to qualified immunity.

**B.    Plaintiffs' Claims Against Karen Tandy and Count V Are Proscribed By Heckler v. Cheney**

Among the defendants in this action is Karen Tandy, administrator of the Drug Enforcement Administration ("DEA"). Plaintiffs do not allege that Administrator Tandy or the DEA is directly involved with the federal judicial execution process. Rather, plaintiffs' claim against the DEA is predicated on the fact that one of the chemicals used in federal judicial executions, sodium pentothal, is a Schedule III controlled substance. See Am. Comp. at ¶ 75. The Controlled Substances Act ("CSA"), by its terms, makes it unlawful to "dispense" any "controlled substance" except pursuant to a prescription "issued for a legitimate medical purpose by an individual practitioner acting in the

usual course of his medical profession." See Am. Comp. at ¶ 6 (quoting 21 U.S.C. §§ 822, 829 (2000)). Plaintiffs claim that the use of sodium pentothal in federal judicial executions violates the CSA because it is allegedly not being dispensed in a manner consistent with the statutory mandates of the CSA. See id.; see also id. at ¶ 76.

In addition to their assertion that the inclusion of sodium pentothal in the federal judicial execution process violates the CSA, plaintiffs go on to state that, "[m]oreover, on information and belief, the defendants have arbitrarily and capriciously failed to exercise their authority to enforce the CSA, by not requiring the persons whom the defendants intend to dispense controlled substances to the plaintiffs to apply for a registration, and will continue to act arbitrarily and capriciously by permitting them to dispense a controlled substance without doing so." Am. Comp. at ¶ 77. This is the basis on which DEA administrator Tandy has been named as a defendant, as it is the DEA that has delegated enforcement responsibility under the CSA. See Am. Comp. ¶ 12.

Plaintiffs' effort to use the judicial review provisions of the APA to mount a challenge to the absence of enforcement action by the DEA was squarely addressed by the Supreme Court over two decades ago in Heckler v. Cheney, 470 U.S. 821, 830-35 (1985). In Heckler, prison inmates brought an action to compel the Food and Drug Administration ("FDA") to take enforcement action under the Food, Drug and Cosmetic Act with respect to drugs used in lethal injections. See id. at 823-24. In addressing whether enforcement action constitutes "agency action . . . committed to discretion by law," and thus exempt from judicial review under the APA, see 5 U.S.C. § 701, the Supreme Court held that:

> This Court has recognized on several occasions over many years that an agency's decision not to prosecute or enforce, whether through civil or criminal process, is a decision generally committed to an agency's absolute discretion. This recognition of

the existence of discretion is attributable in no small part to the general unsuitability
for judicial review of agency decisions to refuse enforcement.[3]

After addressing a series of considerations, including, but not limited to: 1) the fact that enforcement

action involves a complicated balancing of factors that lie within the agency's expertise; 2) that an

agency is best positioned to determine how to set priorities and expend its resources; 3) the general

deference given to an agency's interpretation of the statutes it is charged with implementing; and,

4) that enforcement has generally been regarded as the special province of the Executive Branch

under the Constitution, the Court concluded that "an agency's decision not to take enforcement action

should be presumed immune from judicial review under § 701(a)(2)." Id. at 832.

This principle has been reaffirmed on numerous occasions by the D.C. Circuit Court of

Appeals. "Courts are ill-equipped to evaluate the factors that go into a decision not to bring suit or

enforce regulations." Shoshone-Bannock Tribes v. Reno, 56 F.3d 1476, 1481 (D.C. Cir.1995); see

also Crowley Carribean Transport Inc. v. Pena, 37 F.3d 761, 764-65 (D.C. Cir. 1994); Kisser v.

Cisneros, 14 F.3d 615, 620 (D.C. Cir. 1993); Warner v. FCC, 990 F.2d 1378, 1993 WL 87965 (D.C.

Cir. Mar. 17, 1993) (unpublished table decision).

The failure to take enforcement action claim advanced by plaintiffs in Count V of the

Amended Complaint is not just controlled by Heckler v. Cheney; it is for all practical purposes

identical to Heckler v. Cheney. Both involve claims that the use of certain drugs in the

administration of lethal injections violate statutory requirements: in Heckler, the statute was the

Food, Drug and Cosmetic Act, whereas here plaintiffs are claiming a violation of the CSA. Both

---

[3]See United States v. Batchelder, 442 U.S. 114, 123-124 (1979); United States v. Nixon,
418 U.S. 683, 693 (1974); Vaca v. Sipes, 386 U.S. 171, 182 (1967); Confiscation Cases, 7 Wall.
454, 19 L.Ed. 196 (1869).

-14-

cases sought judicial review of a failure to take action by the agency charged with enforcement of the respective statutes: the FDA in <u>Heckler</u>, the DEA here.  As such,  plaintiffs' cause of action predicated on an alleged "arbitrary and capricious" failure to exercise enforcement authority under the CSA should be dismissed on the basis articulated by the Supreme Court in <u>Heckler</u>, that "an agency's decision not to take enforcement action should be presumed immune from judicial review under § 701(a)(2)."  <u>Heckler</u>, 470 U.S. at 832.[4]

**C.**   **Defendant Webster Has Exercised His Right Not to Participate in Federal Judicial Executions**

Plaintiffs have also brought suit against Thomas Webster, M.D.  <u>See</u> Am. Comp. at ¶ 16. They state that in his position as clinical director at USP Terre Haute, he is "responsible for overseeing the provision of medical care to inmates at that facility."  <u>Id</u>.  While plaintiffs' Amended Complaint does not expressly describe how Dr. Webster is connected to the claims in this action, defendants assume that his inclusion is related to the deliberate indifference claim (Count III); <u>i.e.</u>, that if the lethal injections are carried out, Dr. Webster would not be taking "appropriate medical care until the moment of [plaintiffs'] deaths."  Am. Comp. at ¶ 66.

Under 18 U.S.C. § 3597(b) and 28 C.F.R. § 26.5 an employee of the United States Department of Justice may be excused from attendance at or personal participation in any execution if such participation is either contrary to the moral or religious convictions of the employee or if the employee is a medical professional who considers such participation or attendance contrary to

---

[4]<u>Heckler</u> does recognize that the presumption of unreviewability may be overcome where Congress expressly limits an agency's exercise of enforcement discretion or otherwise circumscribes an agency's power to discriminate among issues or cases it will pursue.  <u>See</u> <u>Heckler</u>, 470 U.S. at 833.  Plaintiffs have not alleged that there is anything in the CSA that "provid[es] guidelines for the agency to follow in exercising its enforcement powers."  <u>Id</u>. at 832.

medical ethics.  See 18 U.S.C. § 3597(b); 28 C.F.R. part 26.5.  Dr. Webster has exercised his right

to be excused from participation in federal judicial executions.  See Declaration of Thomas Webster

at ¶ 2 (Ex. B).  He should therefore be dismissed as a defendant in this matter, as he has no

involvement in or control over any facet of the federal judicial execution process.  See id.

**D.    Plaintiffs Are Barred From Raising Claims Concerning the Promulgation of Regulations Addressing The Implementation of Death Sentences in Federal Cases**

In Count IV of their Complaint, plaintiffs claim a series of violations of the APA.  See Am.

Comp. at ¶ 67-72.  As drafted, this portion of the Amended Complaint makes it far from clear

exactly which agency "actions" are being challenged as "arbitrary, capricious, an abuse of discretion

or otherwise not in accordance with law."  These six paragraphs, which alternatively refer both to

a "Final Rule" and the "Lethal Injection Protocol" appear to reference both the regulation generally

authorizing lethal injection use in federal executions (28 C.F.R. § 26.3(a)(4)) as well as the specific

"protocol" to be used in carrying out the lethal injection; i.e., the sequential administration of sodium

pentothal, pancuronium bromide and potassium chloride.  See Am. Comp. at ¶ 72 (referencing a

"Proposed Rule," a "Final Rule," and the "Lethal Injection Protocol").

To the extent that plaintiffs are raising APA challenges concerning the development of the

three-drug protocol utilized by the government in carrying out lethal injection executions, defendants

will address those claims in briefing on the merits, along with plaintiffs' constitutional challenges

to that protocol seeking declaratory and injunctive relief.  However, to the extent that plaintiffs are

seeking to use this civil action to mount an APA challenge to the promulgation of 28 C.F.R. § 26.3,

any such  claims are plainly barred under the doctrine of res judicata, because these are matters that

either were raised or could have been raised in United States v. Tipton, 90 F.3d 861, 901-03 (4th Cir.

1996). Alternatively, plaintiffs' challenge to the regulation generally authorizing the use of lethal injection for federal death sentences is plainly barred by the six year statute of limitations governing APA claims.

     1.    Plaintiffs' APA Challenges to the Federal Regulations Authorizing Lethal Injection Are Barred by Res Judicata

     a.    *Proceedings in United States v. Tipton*

The plaintiffs in this action (Roane, Tipton and Johnson) were convicted in the United States District Court for the Eastern District of Virginia of capital murder in furtherance of a continuing criminal enterprise and for various related racketeering, firearms and drug offenses. See United States v. Tipton, 90 F.3d 861, 867-69 (4th Cir. 1996). Each was sentenced to death pursuant to 21 U.S.C. § 848(e)(1)(a). See id. at 870. After sentencing, the District Court granted a motion by Roane, Tipton and Johnson barring their execution on the ground that Congress had not legislatively authorized a means by which death sentences imposed under section 848 should be carried out, nor had the Congress delegated to the Attorney General the authority to issue implementing regulations. See id.; see also id. at 902 (further explaining this challenge to their sentences). Though the Attorney General had promulgated a regulation specifically permitting death by lethal injection – 28 C.F.R. § 26.3[5] – Roane, Tipton and Johnson argued that the absence of explicit Congressional authorization permitting the promulgation of such regulations rendered the Attorney General's action ultra vires. See id. at 902. Roane, Tipton and Johnson appealed their convictions on a variety of grounds, and the United States appealed the District Court's stay of their executions. Id. at 870.

---

[5]"Except to the extent a court orders otherwise, a sentence of death shall be executed . . . [b]y intravenous injection of a lethal substance or substances in a quantity sufficient to cause death." 58 Fed. Reg.4898, 4901-02 (1993) (codified at 28 C.F.R. § 26.3)

The Fourth Circuit Court of Appeals vacated the District Court's stay order. Noting that "although Congress clearly may, if it chooses, preemptively legislate the means of executing federal death sentences," this power:

> is not exclusive of the power of the executive branch, where Congress has not acted preemptively, to provide those means as an aspect of its constitutional power to see "that the laws be faithfully executed." U.S. Const. art. II, § 3. Congress has itself authorized the Attorney General to "prescribe regulations for the government of [her] department, . . . [and] the distribution of its business .. . 5 U.S.C. § 301 (1996), has vested all functions of the Department of Justice in the Attorney General, and has authorized officers, employees, and agencies of the Department to perform those functions, 28 U.S.C. §§ 509, 510 (1996). Among those agencies are the United States Marshals, whose legislatively conferred obligation is to "obey, execute, and enforce all orders of the United States District Courts," 28 U.S.C. § 566(a) (1993).

Tipton, 90 F.3d at 902. Consequently, the Fourth Circuit concluded that "absent directly preempting congressional action, the Attorney General had constitutional and statutory authority to provide by regulation the means for executing death sentences imposed under 21 U.S.C. § 848(e), there being no claim made here that lethal injection is itself an unconstitutional means." Id. at 903. The Fourth Circuit then went on to conclude that Congress had neither expressly or by implication preempted the power of the executive branch to authorize a means for carrying out federal death sentences. See id. The Fourth Circuit vacated the stay order. Id. Appellants petitioned for certiorari and the Supreme Court denied the petition. See Roane v. United States, 520 U.S. 1253 (1997).

      b.    *The Application of Res Judicata Principles Demonstrates That These Claims Are Barred*

Res judicata bars a claim where there has been a final judgment on the merits in a prior suit involving the same parties or their privies and the same cause of action. See Parklane Hosiery Co. v. Shore, 439 U.S. 322, 326 n. 5 (1979); Drake v. FAA, 291 F.3d 59, 66 (D.C. Cir. 2003); I.A.M. Nat'l Pension Fund v. Industrial Gear Mfg Co., 723 F.2d 944, 946-47 (D.C. Cir. 1983). The

doctrines of <u>res judicata</u> and collateral estoppel are designed to "preclude parties from contesting matters that they have had a full and fair opportunity to litigate." <u>Montana v. United States</u>, 440 U.S. 147, 153-54 (1979)); <u>Drake</u>, 291 F.3d at 66.  "Thus, under <u>res judicata</u>, "'a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or <u>could have been raised</u> in that action.'" <u>Drake</u>, 291 F.3d at 66 (emphasis in original) (quoting <u>Allen v. McCurry</u>, 449 U.S. 90, 94 (1980)).

To determine whether the doctrine of <u>res judicata</u> applies to subsequent litigation, a reviewing court must decide:  (1) whether the parties are identical or in privity with each other in both suits; (2) whether the present claim is the same as a claim that was raised or might have been raised in the first proceeding; (3) whether a judgment was issued in the first action by a court of competent jurisdiction; and (4) whether the earlier decision was a final judgment on the merits. <u>See U.S. Indus., Inc. v. Blake Constr. Co.</u>, 765 F.2d 195, 205 n. 21 (D.C. Cir.1985); <u>Federated Dep't Stores, Inc. v. Moitie</u>, 452 U.S. 394, 399 (1981).

That elements one, three and four are satisfied here requires no extended discussion.  The parties are the same, the Fourth Circuit Court of Appeals is a court of competent jurisdiction, and plaintiffs' arguments concerning the Attorney General's authority to promulgate the regulation authorizing execution by lethal injection were addressed on the merits.  In the case at bar, rather than arguing that the regulations were <u>ultra vires</u>, plaintiffs are now claiming that in promulgating these regulations (described by plaintiffs as the "Final Rule") the Attorney General failed to: 1) respond adequately to public comments; 2) correct deficiencies in the Final Rule that the comments identified; or 3) adequately explain the basis for adopting lethal injection as the means of execution. <u>See</u> Am. Comp. at ¶¶ 70-71.  These new challenges to 28 C.F.R. § 26.3 are challenges that most

assuredly could have been raised in the prior proceeding, but were not. In sum, plaintiffs are "simply raising a new legal theory. This is precisely what is barred by res judicata." <u>Apotex, Inc. v. Food & Drug Administration</u>, 393 F.3d 210 (D.C. Cir. 2004); <u>National Savings & Trust Co. v. Rosendorf</u>, 559 F.2d 837, 840 n. 26 (D.C. Cir. 1977) ("[R]es judicata concludes not only issues decided but also those which could have been raised and decided in the earlier proceeding."); <u>Brotherhood of R.R. Trainmen v. Atlantic Coast Line R.R.</u>, 383 F.2d 225, 227 (D.C. Cir. 1967).

To permit plaintiffs to mount a second set of challenges to 26 C.F.R. § 26.3 predicated on nothing more than a new legal theory that was certainly available to them during the Fourth Circuit proceedings runs squarely counter to purposes of <u>res judicata</u>, which is to "conserve judicial resources, avoid inconsistent results, engender respect for judgments of predictable and certain effect, and to prevent serial forum-shopping and piecemeal litigation" <u>Hardison v. Alexander</u>, 655 F.2d 1281, 1288 (D.C. Cir. 1981); <u>see also</u> <u>Allen</u>, 449 U.S. at 94. Consequently, to the extent that Count 4 purports to raise an APA challenge regarding the promulgation of 28 C.F.R. 26.3, <u>res judicata</u> bars such a challenge.

2.    An APA Challenge to the Lethal Injection Regulation Is Barred by the Six Year <u>Statute of Limitations</u>

The jury in the Eastern District of Virginia sentenced Roane, Tipton and Johnson to death in 1993. <u>See</u> Am. Comp. at ¶ 22. The final rule authorizing lethal injection as a permissible means of carrying out federal death sentences was also promulgated in 1993. <u>See</u> 58 Fed. Reg. 4898, 4901 (1993). Challenges brought pursuant to the APA are subject to a six year statute of limitations. <u>See</u> 28 U.S.C. § 2401 ("Every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues"); <u>Impro Prods., Inc. v.</u>

Block, 722 F.2d 845, 850 (D.C. Cir. 1983) (interpreting 28 U.S.C § 2401 to apply to claims brought

under the APA); see also James Madison Ltd v. Ludwig, 83 F.3d 1085, 1094 (D.C. Cir. 1996);

Harris v. FAA, 215 F. Supp.2d 209, 214 (D.D.C. 2002).

Plaintiffs had a "right of action" from the time they were sentenced to death in 1993, and in

fact did pursue a challenge to 26 C.F.R. § 26.3 on direct appeal from their conviction and sentence.

See Tipton, 90 F.3d at 901-03. Plaintiffs' 2005 challenge to the same regulation in this Court,

however, "runs afoul" of the six year statute of limitations, because promulgation of the Final Rule

occurred substantially more than six years before the filing of plaintiffs' complaint. Impro Prods,

722 F.2d at 850; see Harris, 215 F. Supp.2d at 214 ("because the FAA issued the Recruitment Notice

in 1993, the statute of limitations expired six years later, in 1999").

## IV. CONCLUSION

WHEREFORE, defendants request that the Court: 1) dismiss all individual capacity claims;

2) dismiss the official capacity claims against defendants Tandy, Kendig and Webster; 3) dismiss

Count V and; 4) dismiss Count IV in part, insofar as it purports to challenge the promulgation of 28

C.F.R. § 26.3. A proposed order is included.

Respectfully submitted,

_____/s/_____
JEFFREY A. TAYLOR, D.C. Bar #498610
United States Attorney


_____/s/_____
RUDOLPH CONTRERAS, D.C. Bar #434122
Assistant United States Attorney

_____/s/_____
PETER D. BLUMBERG, D.C. Bar # 463247
Assistant United States Attorney
United States Attorneys Office
Judiciary Center Building
555 4th Street, N.W., 10th Floor
Washington, D.C. 20530
(202) 514-7157


_____/s/_____
ROBERT J. ERICKSON, D.C. Bar No. 220731
Principal Deputy Chief
Criminal Appellate Section
U. S. DEPARTMENT OF JUSTICE
950 Pennsylvania Avenue, NW
Room 1515
Washington, DC 20530
(202) 514-2841