UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JAMES H. ROANE, JR., <u>et al.</u>, | ) |
| Plaintiffs, | ) |
| v. | ) Civil Action No. 05-2337 (RWR) |
| ALBERTO GONZALES, <u>et al.</u>, | ) |
| Defendants. | ) |

**DEFENDANTS' REPLY TO PLAINTIFFS' OPPOSITION
TO DEFENDANTS' PARTIAL MOTION TO DISMISS**

Plaintiffs James Roane, Richard Tipton and Cory Johnson, federal inmates who have been sentenced to death under federal law, Am. Compl. at ¶ 2, claim that the government's three drug lethal injection protocol utilized in conducting federal executions violates the Eighth Amendment of the Constitution, the Administrative Procedure Act (APA) and the Controlled Substances Act (CSA).  <u>See</u> Am. Comp. at ¶¶ 1-7.  As an initial matter, we note that Plaintiffs' Opposition explicitly states that Plaintiffs "do not oppose the motion to dismiss the individual capacity claims against defendants."  Opp. at note 1.  The Court should grant Defendants' motion and dismiss with prejudice any and all individual-capacity (<u>Bivens</u>) claims in this lawsuit.[1]

---

[1] Plaintiffs bring this action against Alberto Gonzalez (Attorney General, Department of Justice), Karen Tandy (Administrator, Drug Enforcement Administration), Harley G. Lappin (Director, Federal Bureau of Prisons), Newton Kendig (Medical Director, Federal Bureau of Prisons), Mark Bezy (Warden, United States Penitentiary, Terre Haute); Thomas Webster (Clinical Director, United States Penitentiary, Terre Haute) and John Doe defendants.  <u>See</u> Am. Comp. at ¶¶ 11-17.  We understand that Mark Bezy has retired and the current Warden of USP Terre Haute is Rick Veach.

A.  **Plaintiffs' Official-Capacity Claims Against Defendant Tandy, and the Entirety of Count V, Are Barred By <u>Heckler v. Cheney</u>.**

As Defendants explained in their Memorandum, Plaintiffs' claims against the DEA are predicated on the fact that one of the chemicals used in federal judicial executions, sodium pentothal, is a Schedule III controlled substance. <u>See</u> Am. Comp. at ¶ 75. According to Plaintiffs, the Controlled Substances Act (CSA) makes it unlawful to "dispense" any "controlled substance" except pursuant to a prescription "issued for a legitimate medical purpose by an individual practitioner acting in the usual course of his medical profession." <u>See</u> Am. Comp. at ¶ 6 (quoting 21 U.S.C. §§ 822, 829 (2000)). Plaintiffs claim that, for various reasons, the use of sodium pentothal in federal executions violates the CSA. <u>Id</u>. at ¶ 76.

The United States Supreme Court's decision in <u>Heckler v. Cheney</u>, 470 U.S. 821, 830-35 (1985), is exactly like this case and definitively precludes Plaintiffs' APA claims concerning the CSA.[2] In <u>Heckler</u>, prison inmates brought an action to compel the Food and Drug Administration (FDA) to take an enforcement action under the Food, Drug and Cosmetic Act (FDCA) with respect to drugs used in lethal injections. <u>See id</u>. at 823-24 (inmates alleged that the government's use of certain drugs for capital punishment violated the FDCA, 21 U.S.C. § 301 <u>et seq</u>.). The FDCA is part of the same Title as the CSA. The CSA even refers to the FDCA. <u>See</u> 21 U.S.C. § 829.

---

[2] Defendants also note that in <u>Heckler v. Chaney</u>, 470 U.S. 821 (1985), involving the Food and Drug Administration (FDA), a component of the United States Department of Health and Human Services (HHS), the government defendant was the HHS Secretary, Margaret M. Heckler, not any of her subordinate employees. Since both BOP and the DEA are components of the USDOJ, following <u>Heckler v. Chaney</u>, the only proper individual defendant in this case would be the United States Attorney General, the Hon. Alberto Gonzales, in his official capacity only.

The Supreme Court noted in Heckler that it:

> has recognized on several occasions over many years that an agency's decision not to prosecute or enforce, whether through civil or criminal process, is a decision generally committed to an agency's absolute discretion. This recognition of the existence of discretion is attributable in no small part to the general unsuitability for judicial review of agency decisions to refuse enforcement.

Heckler, 470 U.S. at 831 (citations omitted).  The Court referenced as reasons for this presumption of unreviewability, the long tradition of prosecutorial discretion and the agency expertise employed in making enforcement decisions.  Id. at 832-33.

Here, Plaintiffs seek to extend Heckler improperly beyond its holding.  Relying on note 4 in the opinion, Plaintiffs claim that DEA has abdicated its statutory duties and thus their APA claims are not barred by Heckler.  Opp. at 3 (citing Heckler, 470 U.S. at 833, note 4).  What the Heckler Court said in note 4 was that the case before it was not one where an agency has "expressly adopted a general policy" so "extreme as to amount to an abdication of its statutory responsibilities."  Heckler, 470 U.S. at 833, note 4.  Like the FDA in Heckler, here DEA has no express general policy that entirely abdicates its duties under the CSA and Plaintiffs do not state otherwise.

Instead, Plaintiffs first claim that DEA has failed to enforce the CSA's requirements in the limited context of federal executions.  Opp. at 4.  On its face Plaintiffs' assertion, based upon an interpretation of the CSA and applicable regulations that we dispute, does not amount to the "extreme" case Heckler identified that would be subject to judicial review.  For example, Plaintiffs do not suggest that the DEA utterly has failed to implement the CSA.  Plaintiffs rely on Adams v. Richardson, 480 F.2d 1159 (D.C. Cir. 1973) (en banc) in arguing that certain enforcement decisions "may be reviewable."  Opp. at 3.  Adams is clearly distinguishable from

this case, as Plaintiffs here are not alleging any non-enforcement of the CSA generally. Instead, they argue that DEA has failed to enforce the CSA only with respect to "those responsible for carrying out executions . . . ." Opp. at 4.

Plaintiffs also claim, perhaps in a failed effort to identify judicially manageable standards in the CSA for evaluating DEA's enforcement decisions, that there are specific requirements set forth at 21 U.S.C. §§ 822, 829 and 841 that this Court could apply in evaluating Plaintiffs' claims about the CSA. Opp. at 4. Compare Opp. at 4-5 and Heckler, 470 U.S. at 830. In fact, the CSA is not a statutory scheme in which Congress "clearly withdrew discretion from the agency" as is required for judicial review under Heckler. Id. at 834. Just the opposite, the CSA is replete with examples of Congress having extended agencies considerable discretion in the CSA. See, e.g., 21 U.S.C. §§ 811 (discretion to initiate rulemaking to add or remove substances falling within Act), 822 (waiver of registration requirements), 828 (Attorney General's discretion to direct style of order forms). Moreover, Heckler specifically reminds courts that they "generally will defer to an agency's construction of the statute it is charged with implementing, and to the procedures it adopts for implementing that statute." 470 U.S. at 832. Plaintiffs' speculative assumptions about the CSA and the government's obligations thereunder are exactly why the Supreme Court, in Heckler, reminded the lower courts that cases such as this one are not subject to APA review.

Plaintiffs further argue that the government's execution protocol grants its employees a "de facto" waiver of the registration requirements under the CSA, without any rulemaking as a predicate. Opp. at 5. First, Plaintiffs compare apples and oranges. Waivers of registration requirements and non-enforcement of violations differ. The CSA establishes sanctions for violations. See 21 U.S.C. § 801 et seq. The CSA does not say that DEA or the USDOJ must

always prosecute or pursue every particular violation.  See, e.g., 21 U.S.C. § 841 (designating what is unlawful).  To the contrary, the Supreme Court in Heckler recognized that an agency's refusal to institute enforcement proceedings shares the same essential "characteristics [as] the decision of a prosecutor not to indict - - a decision which has long been regarded as the special province of the Executive Branch . . . ."  Heckler, 470 U.S. at 832.  Thus, not surprisingly, the Supreme Court in Heckler rejected the inmates' argument that the FDCA required prosecution of every violator.  Id. at 835 (observing that "[r]espondents argue that this statement mandates criminal prosecution of every violator of the Act but they adduce no indication in case law or legislative history that such was Congress' intention").

      As explained, Plaintiffs claim that the government's alleged failure to comply with the registration waiver requirements violates the "standards" set forth in the statute.  Opp. at 5.  Presumably, Plaintiffs mean that the statute, through registration waiver requirements, for example, creates the standards that could allow APA review in this case.  In Heckler, the Supreme Court rejected a similar argument.  In that case, the inmates claimed that since the FDCA prohibited "misbranding" and the introduction of "new drugs" absent agency approval, the FDCA supplied the courts with the standards needed to review the FDA's non-enforcement decisions under the APA.  The Supreme Court explicitly held that those "provisions are simply irrelevant to the agency's discretion to refuse to initiate proceedings."  Heckler, 470 U.S. 836.  That must be the result in this case.  Plaintiffs here make the same argument that was rejected in Heckler, that the CSA's waiver requirements somehow create standards that the court can use to evaluate DEA non-enforcement decisions.  Of course, just as the Supreme Court held in Heckler, the waiver requirements are silent as to enforcement decisions.

The Supreme Court concluded in <u>Heckler</u> that the "danger that agencies may not carry out their delegated powers with sufficient vigor does not necessarily lead to the conclusion that courts are the most appropriate body to police this aspect of their performance. That decision is in the first instance for Congress." <u>Heckler</u>, 470 U.S. at 834. Congress, of course, has established capital punishment as one potential sentence for certain federal crimes and fully expects that such sentences will be carried out. Congress enacted an implementing statute, 18 U.S.C. § 3596, that, by incorporating State methods of execution, envisions that lethal injection will be the usual means of carrying out federal executions. The Supreme Court's opinion in <u>Heckler</u> ends with the following admonition for the lower courts about the reach of the APA:

> The fact that the drugs involved in this case are ultimately to be used in imposing the death penalty must not lead this Court or other courts to import profound differences of opinion over the meaning of the Eighth Amendment to the United States Constitution into the domain of administrative law.

<u>Heckler</u>, 470 U.S. at 838.

**B.     Defendant Webster Must Be Dismissed Because He Has Exercised His Statutory Right Not to Participate in Federal Executions**.

Defendants explained that under 18 U.S.C. § 3597(b) and 28 C.F.R. § 26.5 an employee of the United States Department of Justice may be excused from attendance at, or personal participation in, any execution if such participation is either contrary to the employee's moral or religious convictions or if the employee is a medical professional who considers such participation or attendance contrary to medical ethics. <u>See</u> 18 U.S.C. § 3597(b); 28 C.F.R. § 26.5. Defendants presented evidence that since Dr. Thomas Webster, M.D. has exercised his statutory right to be excused from participation in federal executions, see Declaration of Dr. Thomas Webster at ¶ 2 (Def. Ex. B), he should be dismissed as a Defendant in this matter.

Plaintiffs argue that Dr. Webster has a "responsibility, as Clinical Director, to ensure that inmates at USP Terre Haute receive appropriate medical care." Opp. at 6. Plaintiffs then assert that Dr. Webster is a proper party without any citation to legal authority. Plaintiffs do not allege that Dr. Webster has, or had, any direct control or involvement in the lethal injection protocol that they are challenging or in any of the prior executions. Plaintiffs, seemingly recognizing the tenuousness of their position, ask that "if Dr. Webster is dismissed, the plaintiffs should be permitted to amend their complaint to include as a plaintiff the individual who carries out Dr. Webster's duties in the execution context." Opp. at 6. Defendants submit that there is no conceivable reason that such a person needs to be a party to this action. See, e.g., note 2 supra. Plaintiffs have withdrawn any claims they had against any defendants in their individual capacities. For jurisdictional purposes, the USDOJ, BOP and DEA (through the United States and the Attorney General) can be subject to Constitutional and APA claims and have conceded as much in their Memorandum. Regardless, the Court should dismiss Dr. Webster as a Defendant and there is no need to add unnecessary defendants. We note that the issue of whether Dr. Webster is a Defendant, even in his official capacity, is not merely an academic point. The Court's resolution of this question is of significant moment to Dr. Webster.

C.  **Plaintiffs Are Barred From Raising Claims Concerning the Promulgation of Regulations Addressing The Implementation of Death Sentences in Federal Cases.**

Defendants argued in their Memorandum that to the extent that Plaintiffs are raising APA challenges concerning the promulgation of 28 C.F.R. § 26.3, any such claims are plainly barred. In their Opposition, Plaintiffs state that they "do not challenge the promulgation of 28 C.F.R. §

26.3." Opp. at 7.[3] The Court should hold Plaintiffs to their representations and enter an order dismissing Count IV to the extent that it challenges, in any way, the federal government's regulations authorizing lethal injection use in federal executions, on the basis that such claims would be barred by res judicata and the applicable statute of limitations.

## CONCLUSION

For the foregoing reasons, Defendants request that the Court enter an order: 1) dismissing all individual capacity claims; 2) dismissing the official capacity claims against defendants Tandy, Kendig and Webster; 3) dismissing Count V and; 4) dismissing Count IV to the extent that it challenges the promulgation of 28 C.F.R. § 26.3.

Respectfully submitted,

s/Jeffrey A. Taylor
JEFFREY A. TAYLOR, D.C. BAR # 498610
Interim United States Attorney

s/Rudolph Contreras
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney

s/Peter S. Smith
PETER S. SMITH, D.C. BAR # 465131
Assistant United States Attorney
United States Attorney's Office
Civil Division
555 4th Street, N.W.
Washington, D.C. 20530
(202) 307-0372

---

[3] That is the regulatory provision generally authorizing lethal injection use in federal executions.  See 28 C.F.R. § 26.3(a)(4).

    s/ Robert J. Erickson
ROBERT J. ERICKSON, D.C. Bar # 220731
Principal Deputy Chief
Criminal Appellate Section
U. S. DEPARTMENT OF JUSTICE
950 Pennsylvania Avenue, NW
Room 1515
Washington, DC 20530
(202) 514-2841