# Attachment 1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JAMES H. ROANE, JR., et al., )<br>)<br>Plaintiffs, )<br>v. )<br>)<br>ALBERTO GONZALES, et al., )<br>Defendants. )<br>) | Case No. 1:05-CV-2337 (RWR) |

PLAINTIFF'S UNOPPOSED MOTION FOR A
PRELIMINARY INJUNCTION BARRING DEFENDANTS FROM
SETTING AN EXECUTION DATE FOR PLAINTIFF AND FROM EXECUTING HIM

Plaintiff Orlando Hall ("Mr. Hall"), a federal prisoner under sentence of death, respectfully moves that this Court enjoin defendants from setting an execution date for Mr. Hall and from executing him until the Court has reviewed the legality of the lethal injection method that the Government intends to use to carry out his execution (the "Lethal Injection Protocol" or the "Protocol"). The Lethal Injection Protocol violates the U.S. Constitution and other statutory provisions including but not limited to the Fifth and Eighth Amendments of the U.S. Constitution and the Administrative Procedures Act, 5 U.S.C. §§ 551 *et seq*. The grounds for this Motion are set forth in detail in the accompanying Memorandum of Points and Authorities. Counsel for Mr. Hall has conferred with counsel to all parties to this action, who have represented that they do not oppose this Motion.

- 2 -

Dated:  April 26, 2007

                              Respectfully submitted,

                                s/ Mark J. Hulkower

                              MARK J.  HULKOWER (D.C. Bar No. 400463)
                              OWEN BONHEIMER (D.C. Bar No. 484984)*
                              Steptoe & Johnson LLP
                              1330 Connecticut Avenue, NW
                              Washington, DC  20036
                              (202) 429-3000

                              ROBERT C. OWEN
                              Texas Bar No. 15371950
                              Owen & Rountree, LLP
                              P.O. Box 40428
                              Austin, Texas  78704
                              (512) 804-2661

                              MARCIA A. WIDDER
                              Louisiana Bar No. 23367
                              636 Baronne St.
                              New Orleans, LA  70113
                              (504) 558-9867

                              Counsel for Plaintiff Orlando Hall

                              *Pending application for admission to this Court

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JAMES H. ROANE, JR., et al., ) | |
| ) | |
| Plaintiffs, ) | |
| v. ) | Case No. 1:05-CV-2337 (RWR) |
| ) | |
| ALBERTO GONZALES, et al., ) | |
| Defendants. ) | |
| ) | |

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION
FOR A PRELIMINARY INJUNCTION BARRING DEFENDANTS FROM
SETTING AN EXECUTION DATE FOR PLAINTIFF AND FROM EXECUTING HIM

The lethal injection protocol employed by the defendants for executing federal prisoners (the "Lethal Injection Protocol" of the "Protocol") violates the U.S. Constitution and other statutory provisions including but not limited to the Fifth and Eighth Amendments of the U.S. Constitution, and the Administrative Procedure Act, 5 U.S.C. §§ 551 et seq. Plaintiff Orlando Hall ("Mr. Hall"), a federal prisoner under sentence of death, requests that this Court enjoin defendants Alberto Gonzales, U.S. Attorney General; Harley G. Lappin, Director of the Federal Bureau of Prisons; Newton E. Kendig II, M.D., Medical Director of the Federal Bureau of Prisons; Richard Veach, Warden at the U.S. Penitentiary Terre Haute; Thomas Webster, M.D., Clinical Director, U.S. Penitentiary Terre Haute; Karen Tandy, Administrator of the Drug Enforcement Agency; and John Doe I-X (collectively "Defendants") from setting a date for executing him and from executing him until the Court has completed its review of Defendants' Lethal Injection Protocol to determine its legality and constitutionality. Counsel for Mr. Hall has conferred with counsel for the defendants, who has represented that they do not oppose this motion for a preliminary injunction.

- 1 -

I.  **INTRODUCTION**

Mr. Hall has exhausted his final avenue for appeal of the conviction and death sentence imposed upon him by the United States District Court for the Northern District of Texas in 1995. On April 16, 2007, the U.S. Supreme Court announced that it had denied his petition for review of his habeas corpus appeal.  As it did in the case of Bruce Webster, the Government is now expected to schedule the execution of Mr. Hall by lethal injection for a date within months if not weeks or even days.  Under practices developed by the federal government, a sentence of death by lethal injection is carried out pursuant to the federal Lethal Injection Protocol.  This Protocol calls for non-medical personnel of the Federal Bureau of Prisons ("BoP") to inject Mr. Hall with a combination of three dangerous drugs – a super-clinical dose of a sedative intended to render him unconscious, followed by two deadly drugs:  one that paralyzes and effectively suffocates the prisoner while the other stops the heart, inducing fatal cardiac arrest.  See Compl. of Orlando Hall ("Hall Compl."), ¶22.  The Lethal Injection Protocol fails to provide for qualified medical personnel to administer the super-clinical dose of anesthesia prior to administration of the two excruciatingly painful drugs, and does not provide for use of medical equipment to monitor the effectiveness of that anesthesia or medical personnel qualified to operate that equipment.  See Hall Compl. at ¶47.  The Lethal Injection Protocol also unnecessarily provides for administration of pancuronium bromide, which paralyzes the muscular system, serving the purely aesthetic purpose of casting a "chemical veil" over the plaintiff to disguise the body's reaction to lethal injection including pain and suffering experienced in the absence of properly-administered anesthesia.  Inclusion of pancuronium bromide in the Protocol poses an additional threat of unnecessary pain because it causes asphyxiation.  Because of these and other defects set forth in the Complaint, the Protocol unnecessarily risks inflicting upon Mr. Hall the conscious experience

of a horrifying and tortuous death, as the drugs cause his diaphragm to freeze, resulting in the painful sensation of asphyxiation, and induce a massive cardiac arrest. Evidence from recent executions by lethal injection demonstrates this threat is real. See Hall Compl. at ¶¶42-43, citing Am. Compl., ¶¶45-46 (discussing harms inflicted upon inmates in recent executions by lethal injection); Webster Compl., ¶¶41-42 (same). The Protocol is a cruel, unusual, and degrading way for non-medical personnel to kill Mr. Hall that violates his constitutional and statutory rights. See Hall Compl. at ¶¶51-72. Due to orders of this Court, the Government is enjoined from executing the existing plaintiffs, who do not have execution dates. See Order Granting Motion to Stay and Granting Motion for Preliminary Injunction, Feb. 24, 2006; Order Granting Motion of Bruce Webster for Preliminary Injunction, Feb. 21, 2007. Mr. Hall seeks relief that will place him in the same position. He moves the Court for a preliminary injunction barring defendants from setting an execution date for him and from executing him pending the outcome of this litigation.

## II.    ARGUMENT

In this Circuit, federal courts weigh four factors to determine when injunctive relief is appropriate. Under Wagner v. Taylor, 836 F.2d 566, 575 (D.C. Cir. 1987), courts consider (1) the potential for irreparable harm to the plaintiff if preliminary injunctive relief is not granted, (2) the potential for substantial harm to defendants if this temporary relief is granted, (3) the public interest, and (4) the likelihood of success on the merits in the underlying action. Courts balance these factors and may grant an injunction even if Mr. Hall does not have an equally strong showing on all four factors. Role Models America, Inc. v. White, 193 F.Supp. 2d 76, 80 (D.D.C. 2002), rev'd on other grounds, 317 F.3d 327 (D.C. Cir. 2003). For example, if the plaintiff makes a strong showing on the first three factors, then for the fourth factor it is only necessary to

show a "substantial case on the merits", rather than a "probability of success on the merits." Id. (quoting WMATC v. Holiday Tours, Inc., 559 F.2d 841, 843 (D.C. Cir. 1977)). The first factor is the most significant. Irreparable injury is the touchstone of preliminary injunctive relief. See USA Recycling, Inc. v Town of Babylon, 66 F.3d 1272, 1295 (2d Cir. 1995).

For the reasons discussed fully below, each of the four factors weighs in favor of preliminarily enjoining the Government from setting an execution date for Mr. Hall and from executing him. The risk of irreparable injury to Mr. Hall is especially grave because the Lethal Injection Protocol fails to provide the most basic assurances against violation of his constitutional right to be free from unnecessary pain and suffering in his execution. In addition, just as no harm has resulted from the injunction of the executions of the existing plaintiffs, no harm to defendants will result from granting the preliminary injunctive relief Mr. Hall seeks, much less harm that outweighs the threat of irreparable injury to him. Further, the public interest will be served by granting the preliminary injunction because it would ensure protection of his constitutional rights, ensure the uniform application of justice, and ensure compliance with U.S. international obligations. Finally, there is a likelihood of success of this action on the merits, just as similar challenges to state protocols around the country have succeeded.

    A.    <u>Mr. Hall Faces Irreparable Injury</u>

The threat of irreparable injury is the most important factor, USA Recycling, Inc., 66 F.3d at 1294, and overwhelmingly favors granting the preliminary injunction Mr. Hall seeks. See Wagner, 836 F.2d at 575. If Mr. Hall does not receive preliminary injunctive relief, it is likely that he will be executed using the Lethal Injection Protocol. There is a serious risk that the Lethal Injection Protocol will leave him conscious while he suffocates and dies of cardiac arrest.

- 4 -

Such an excruciatingly painful death is foreseeable because of the defects in the Lethal Injection Protocol. The Protocol does not provide for administration of anesthesia by a qualified medical professional in an appropriate manner using monitoring equipment administered by trained medical personnel. The Protocol fails to provide reasonable assurance that a secure intravenous delivery method will be achieved, that a proper dose of anesthesia will be administered, and that sufficient anesthetic depth is achieved and maintained while two deadly drugs are injected into his person. Due to those defects among others, he will be in serious danger of actually feeling his own asphyxiation and cardiac arrest, in violation of his rights under the Eighth Amendment. Hall Compl., ¶¶ 56-63. Because he will die as his Eighth Amendment rights are violated in this manner, this is the gravest form of irreparable injury.

      B.      <u>Defendants Will Not Suffer Substantial Harm</u>

The Court must balance the irreparable harm to the plaintiff against any substantial harm to the defendants. <u>See</u> <u>Wagner</u>, 836 F.2d at 575. If this Court grants preliminary injunctive relief, the defendants will not suffer harm, much less substantial harm that could outweigh the irreparable injury to Mr. Hall. Defendants already are enjoined from using the Lethal Injection Protocol to execute existing plaintiffs to this action, including Bruce Webster. <u>See</u> Order Granting Motion to Stay and Granting Motion for Preliminary Injunction, Feb. 20, 2006; Order Granting Motion of Bruce Webster for Preliminary Injunction, Feb. 21, 2007. There is nothing unique about the circumstances of Mr. Hall that would make enjoining his execution substantially harmful to defendants. Mr. Hall has been a death row inmate for more than a decade and has been a model inmate throughout his incarceration. A brief delay in his execution will not harm the defendants either. The defendants' consent to this motion confirms that the Court can grant the preliminary injunctive relief Mr. Hall seeks without harming the defendants.

      C.      <u>Injunctive Relief Would Serve the Public Interest</u>

The third factor – public interest – also weighs in favor of granting injunctive relief. <u>See</u> <u>Wagner</u>, 836 F.2d at 575. Granting injunctive relief to Mr. Hall serves the public interest by protecting constitutional rights. Injunctive relief for Mr. Hall also would ensure uniformity in the application of justice, both between federal prisoners sentenced to death and between the prisoners on death row at the federal and state levels. In addition, injunctive relief would further the interest of ensuring U.S. compliance with its international obligations.

The U.S. criminal justice system is founded upon a system of constitutional guarantees, including the right to due process of law and the right to be free from cruel and unusual punishment. Protection of these rights for one person is the protection for all. <u>Cf.</u> <u>Planned Parenthood Ass'n of Cincinatti, Inc. v. City of Cincinatti</u>, 822 F.2d 1390, 1400 (6th Cir. 1987) (public interest served by preliminary injunction because "the public is certainly interested in the prevention of enforcement of ordinancyes which may be unconstitutional"). Permitting a violation of these constitutional rights goes against the public interest. Absent an injunction, defendants will violate Mr. Hall's Eighth Amendment and Fifth Amendment rights, casting grave doubt upon the legitimacy and moral authority of the federal capital punishment system. Because of the strong public interest in protecting the constitutional rights of all citizens and in preventing conduct that reduces the legitimacy and moral authority of the federal capital punishment system, the third factor favors injunctive relief.

The public interest in uniform application of justice also would be served by the preliminary injunction Mr. Hall seeks. <u>See</u> <u>Schriro v. Summerlin</u>, 542 U.S. 348, 363 (2004) (Breyer, J., Stevens, J., Souter, J., and Ginsburg., J., dissenting) (concluding that the "law's

commitment to uniformity" is not served when one inmate is executed while another is granted relief, when the constitutional rights of both have been violated), citing Mackey v. United States, 401 U.S. 667, 689 (1971) (Harlan, J., concurring) (recognizing the interest in uniformity of ultimate treatment among similarly-situated federal and state prisoners raising constitutional challenges). If defendants are not enjoined from setting a date for executing Mr. Hall using the Lethal Injection Protocol, then they will be free to execute him using the same unconstitutional method of execution they are barred from using against the other federal death row inmates already in this litigation.

It also would be unfair to deny preliminary injunctive relief to Mr. Hall when a growing number of states have enjoined lethal injections in the United States because these executions violate constitutional rights. See Memo. in Suppt. of Mot. of Bruce Webster for Prelim. Inj., Feb. 14, 2007, at pp. 5-9 (discussing recent federal and state court injunctions granted on constitutional and administrative law grounds, Evans v. Maryland, 914 A.2d 25, 139-50 (Md. Ct. App. Dec. 19, 2006) and Morales v. Tilton, Crim. No. 06-0219 (N.D. Ca. Dec. 15, 2006)). Since then, this trend continues to take hold. After a federal court in Ohio recently enjoined that State from executing another condemned inmate by lethal injection, Cooey v. Taft, Civ. No. 04-1156 (S.D. Oh. Dec. 21, 2006), the U.S. Court of Appeals for the Sixth Circuit denied the request of Ohio to vacate that injunction. Cooey v. Strickland, Ap. No. 06-4660 (6th Cir.) (Order of Mar. 20, 2007). Similarly, an October 2006 order holding the Missouri lethal injection protocol unconstitutional in Taylor v. Crawford, Civ. No. 05-4173 (W.D. Mo.) also remains in force, pending appeal to the U.S. Court of Appeals for the Eighth Circuit. See also Henry Weinstein, *N.C. is 11th State to Halt Lethal Injections*, L.A. Times (Jan. 26, 2007) (describing recent decision by state judge in North Carolina that the absence of doctor participation renders the

state's lethal injection protocol unlawful). Meanwhile, executives at the state level also are taking notice and voluntarily suspending executions by lethal injection until a constitutionally acceptable method can be identified. Last month, based in part on testimony by defendant Lappin, a Commission appointed by the Governor of Florida concluded that the State of Florida had executed a U.S. citizen using a lethal injection protocol that had gross inadequacies in its design and administration, leading directly to a protracted and extremely painful execution. See Report of Governor's Commission on Lethal Injection, Mar. 1, 2007, at pp. 8-9 (findings).[1] Lethal injections in Florida apparently remain halted by the Governor. The Governor of Tennessee similarly halted executions pending review of its lethal injection protocol, while the Governor of North Carolina is treating recent court decisions in that state as imposing an effective moratorium on lethal injection executions there. See Elizabeth Weil, *The Needle and the Damage Done*, N.Y. Times, Feb. 11, 2007.

    Many other state and federal prisoners on death row already are protected against the use of lethal injection protocols to execute them. Permitting defendants to set an execution date for Mr. Hall and executing him using the Lethal Injection Protocol would promote disparate treatment of condemned inmates. Some inmates such as the existing plaintiffs in this case would be free from the constitutional harms posed by lethal injection protocols, while others such as Mr. Hall would unfairly be subject to such harms. The public interest weighs against such disparate treatment and in favor of preliminary injunctive relief.

---

[1] This report is posted on the Internet at http://ohiodeathpenaltyinfo.typepad.com/ohio_death_penalty_inform/files/scommissiononadministrationoflethalinjectionfinalreport.pdf.

As outlined in Mr. Hall's Complaint at Attachment 2, international obligations incumbent on the United States also compel the need for careful study of the Lethal Injection Protocol before it is used again to execute anyone, including Mr. Hall. The U.N. Committee charged with monitoring U.S. compliance with the obligation to prevent cruel and degrading treatment has expressed serious concerns to the United States, noting the need for serious study of this matter. See Hall Compl., ¶ 49. Despite this exhortation, to date, there has been no known study of the efficacy of the Lethal Injection Protocol at preventing unnecessary, unconstitutional pain. There is a strong public interest in ensuring U.S. actions in carrying out the statutory death sentence imposed on Mr. Hall comply with the international rule of law. This interest is particularly strong because the principal international agreement at issue is the U.N. Convention Against Torture, to which 144 nations are party. See Murray v. Schooner Charming Betsy, 6 U.S. (2 Cranch) 64, 118 (1804) ("an act of Congress ought never to be construed to violate the law of nations if any other possible construction remains").

Enjoining defendants from setting a date for executing Mr. Hall using the Lethal Injection Protocol will ensure that condemned inmates are afforded all of their constitutional rights, that there is appropriate uniformity of justice between inmates on death row, and that international obligations of the United States are upheld. Because each of these grounds qualifies as a strong public interest, the third Wagner factor heavily weighs in favor of injunctive relief.

        D.      Success on the Merits of the Underlying Action Is Likely

The final factor – the likelihood of success on the merits – also weighs in favor of injunctive relief. See Wagner, 836 F.2d at 575. Because Mr. Hall makes a strong showing on the first three factors, Mr. Hall need only show a "substantial case on the merits", rather than a

"probability of success on the merits." Role Models America, Inc. v. White, 193 F.Supp. 2d 76, 80 (D.D.C. 2002) (quoting WMATC v. Holiday Tours, Inc., 559 F.2d 841, 843 (D.C. Cir. 1977)), rev'd on other grounds, 317 F.3d 327 (D.C. Cir. 2003). Mr. Hall has a substantial case on the merits. Just like the existing plaintiffs, Mr. Hall alleges that the Lethal Injection Protocol violates his rights under the Fifth and Eighth Amendments of the U.S. Constitution and the APA. Compare Hall Compl., ¶¶ 56-72 with Am. Compl., ¶¶ 50-70 & Webster Compl. ¶¶ 56-77. The claims of Mr. Hall therefore stand the same chance of success as those of the existing plaintiffs, who have received preliminary injunctive relief.

As shown by existing plaintiffs, these claims make out a substantial case on the merits. See Memo. in Suppt. of Mot. of Bruce Webster for Prelim. Inj., Feb. 14, 2007, at pp. 5-9 (discussing evidence including expert declaration and favorable decisions of other courts based upon similar claims). Based upon those arguments, this Court found the merits of those claims sufficient to grant preliminary injunctive relief. See Order Granting Motion to Stay and Granting Motion for Preliminary Injunction, Feb. 20, 2006; Order Granting Motion of Bruce Webster for Preliminary Injunction, Feb. 21, 2007. Since then, decisions of courts and executive branch officials only underscore the strength of these claims on the merits. As described in Part II.C of this Memorandum, other cases in Ohio, Missouri, and North Carolina, as well as recent action by governors of several states, underscore the constitutional magnitude of Mr. Hall's claims. See Cooey v. Taft, 2006 U.S. Dist. LEXIS 92521, *14 (S.D. Oh. Dec. 21, 2006) (prior to discovery in litigation over a secret lethal injection protocol, evidence from challenges to other lethal injection protocols arguably is the best evidence in support of a preliminary injunction). For these reasons, the Court should find the claims raised by Mr. Hall a sufficient basis for granting the preliminary injunctive relief.

### III.  CONCLUSION

The Court should grant Mr. Hall's unopposed request for a preliminary injunction barring defendants from setting an execution date for Mr. Hall and from executing Mr. Hall until the Court has reviewed the legality of the Lethal Injection Protocol.  All factors easily weigh in favor of a preliminary injunction and the weight of the first factor – risk of irreparable injury – is overwhelming.

Dated:  April 26, 2007

>Respectfully submitted,
>
> s/ Mark J. Hulkower
>
>MARK J. HULKOWER (D.C. Bar No. 400463)
>OWEN BONHEIMER (D.C. Bar No. 484984)*
>Steptoe & Johnson LLP
>1330 Connecticut Avenue, NW
>Washington, DC  20036
>(202) 429-3000
>
>ROBERT C. OWEN
>Texas Bar No. 15371950
>Owen & Rountree, LLP
>P.O. Box 40428
>Austin, Texas  78704
>(512) 804-2661
>
>MARCIA A. WIDDER
>Louisiana Bar No. 23367
>636 Baronne St.
>New Orleans, LA  70113
>(504) 558-9867
>
>Counsel for Plaintiff Orlando Hall
>
>*Pending application for admission to this Court

# Proposed Order

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                              )
**JAMES H. ROANE, JR., et al.,** )
                              )
    **Plaintiffs,**        )
  v.                          )   Case No. 1:05-CV-2337 (RWR)
                              )
**ALBERTO GONZALES, et al.,** )
    **Defendants.**        )
_____)

**ORDER**

    IT IS ORDERED that Plaintiff Orlando Hall's Unopposed Motion for a Preliminary Injunction Barring Defendants from Setting an Execution Date for Plaintiff and from Executing Him is hereby GRANTED.  The Defendants herein are enjoined from setting a date for executing Orlando Hall and from executing Orlando Hall, pending further order of this Court.

_____
Richard W. Roberts
United States District Judge