UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JAMES ROANE, JR., et al., | ) |
| Plaintiffs, | ) |
| BRUCE WEBSTER, | ) |
| Intervenor-Plaintiff, | ) |
| v. | ) Civil Action No. 05-2337 (RWR/DAR) |
| ALBERTO GONZALEZ, et al., | ) |
| Defendants. | ) |

**DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION
FOR ADDITIONAL DEPOSITIONS**

The Court should deny Plaintiff's Motion for Additional Depositions. Document No. 37. Despite the fact that they have yet to take any of the ten depositions that they are permitted under the Court's scheduling order, Plaintiffs seek an order allowing them to conduct 120 hours of deposition testimony. Plaintiffs state that they do not intend to take any single deposition exceeding the seven-hour limit in the rules. They also state that they expect to use this 120 hours to depose approximately 25 witnesses. However, Plaintiffs have not identified the individuals who they seek to depose and have not disclosed the ultimate number of depositions they seek to conduct. As is obvious from their request to conduct 120 hours of depositions, Plaintiffs could use that 120 hours to conduct, for example, sixty two-hour depositions or thirty three-hour depositions, which would be both burdensome and cumulative, in conflict with Fed. R. Civ. P. 26(b)(2). Plaintiffs' request also conflicts with the Federal Rules of Civil Procedure's requirement that cases be litigated as efficiently as possible. Fed. R. Civ. P. 1.

## BACKGROUND

The parties have known about the schedule in this case, and the limitations built into that schedule, since it was issued on December 6, 2007. Document No. 17 (December 6, 2007 Scheduling Order). Plaintiffs seem to have only lately decided that they want to conduct in excess of the ten depositions each side is permitted under the current scheduling order in this case. Plaintiffs first proposed, in an April 9, 2007 e-mail, the taking of eleven specific depositions during the weeks of April 23, 2007 and April 30, 2007, with at least 7 additional depositions to follow. The undersigned counsel of record was unable to conduct depositions the week of April 23, 2007 due to a scheduling conflict.[1] However, Defendants were able to schedule depositions the week of April 30, 2007. Subsequently, we understood that Plaintiffs did not want to go forward with any depositions absent an agreement on the total number of depositions.[2] That is reflected in Plaintiffs' Motion for Additional Depositions. See Motion at 3, paragraph 5 ("Before commencing depositions . . . plaintiffs require the increase requested herein"). Defendants suggested that Plaintiffs begin conducting the ten depositions permitted by the Court and later seek leave to conduct additional depositions. Defendants also suggested, inter alia, in an effort to compromise on this issue, that Plaintiffs conduct ten days of depositions (seventy hours of testimony), upon the understanding that Plaintiffs could schedule more than one deposition per day. That is, the government initially was willing to allow Plaintiffs to exceed

---

[1] The undersigned counsel of record was assigned to handle any emergency matters in the office that week and could not leave the office to attend depositions that week.

[2] As an initial matter, we again note the cordial relationship between the parties. It is unfortunate that the parties were not able to work out this disagreement. We expect that the parties will be able to cooperatively schedule and manage the depositions in this case, regardless of the ultimate number of depositions permitted.

the limit on the number of depositions in this case (currently ten) only if the total number of days or hours devoted to the depositions would remain the same (that is seventy hours on the record or ten full days of depositions). The government also would want an upward limitation on the number of deponents so that Plaintiffs would not use their ten days of testimony to conduct 35 two-hour depositions, which would be burdensome. Plaintiffs then informed the government that they would be willing to begin depositions the week of April 30, 2007. However, those depositions did not go forward because, on April 25, 2007, Plaintiffs informed the government that they would videotape the depositions and that they want the government witnesses to demonstrate certain equipment, including the mixing of lethal substances, during the depositions. Plaintiffs provided the government with less than five business days of notice of these conditions, which was not sufficient for the parties to address these issues in time for depositions beginning on April 30, 2007.[3]

## ARGUMENT

Since Plaintiffs have yet to conduct any depositions in this case, the Court should deny Plaintiffs' motion without prejudice so that Plaintiffs can take the ten depositions they are

---

[3] The government has serious concerns that the videotaping of depositions in this case will undercut the important public policy, security and privacy interests that supported the entry of the current protective order in this case. As Defendants' motion for a protective order explained, many of those who have participated in, or will be participating in, Federal executions are Federal Bureau of Prisons correctional officers or employees who could be exposed to danger if their roles in the conduct of Federal executions were revealed. Moreover, were their names revealed, those involved in executions, or in creating the Execution Protocol, could experience harassment, embarrassment or retaliation against them. In addition, the provision of equipment and lethal chemicals for demonstration during a deposition is problematic on both practical and legal grounds. We hope that the parties will be able to work out a compromise on these issues. In the event that the parties are unable to reach such a compromise, Defendants expect that they will move for a protective order in the near future.

permitted under the Court's scheduling order and, if necessary, can seek additional depositions at a later date. A motion to exceed the presumptive limit of depositions in the Federal Rules is governed by Fed. R. Civ. P. 26(b)(2). Barrow v. Greenville Ind. School Dist., 202 F.R.D. 480 (N.D. Tex. 2001) (recognizing that resolution of motion for leave to conduct additional depositions is governed by Fed. R. Civ. P. 26(b)(2)). Fed. R. Civ. P. 26(b)(2) provides, inter alia, that the number of depositions "shall be limited" if the Court determines that: (1) the discovery sought is "unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive"; or (2) "the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case . . . the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues."

First, Plaintiffs should have prepared their discovery plan at the outset of this case. According to the Court's scheduling order, all discovery is to close by June 7, 2007. Plaintiff's expert disclosures were due by April 2, 2007. Id. at ¶ 1.[4] Defendants' rebuttal expert report is due by May 2, 2007.[5] Defendants served their initial disclosures and responses to Plaintiffs' discovery requests on March 5, 2007. See Document Nos. 28 (Order) and 29 (Status Report Concerning Discovery). Plaintiffs have had the document they filed as Ex. 1 to their motion for additional depositions since early March, 2007.

---

[4] Plaintiffs have not served Defendants with their expert disclosures. Nor have Plaintiffs moved for an extension of time to do so. Plaintiffs shared a draft motion to enlarge the dates on the schedule with the undersigned counsel of record on April 27, 2007. The parties are continuing to discuss these issues because the Plaintiffs' proposed schedule seemed to assume that they would receive the relief they are seeking in their Motion for Additional Depositions.

[5] At present, there is no report to rebut.

Second, Plaintiffs' requested discovery is burdensome, especially given the unique nature of this case and the logistical arrangements that will need to be made in order to ensure the anonymity of certain deponents as per the protective order in this case. Plaintiffs state that the government has identified "more than 100 persons present at the three federal executions." Pl. Mot. at 1. Of course, as Plaintiffs recognize, that does not mean that they are entitled to depose each of those persons. Pl. Mot. at . Many of the witnesses we expect will be deposed are located outside of this judicial district and, in fact, are spread throughout the county. For that reason, the parties have agreed to conduct certain of the depositions in Terre Haute, Indiana, where the Federal government's execution facility is located.[6] Plaintiffs represent that they expect to take approximately 25 depositions. Even that number of depositions will require considerable time and expense in travel and preparation time. Of course, Plaintiffs' proposed order would allow them to take many more than 25 depositions.

Furthermore, Plaintiffs concede that there are approximately eleven persons total who have been present in the chemical room for the three federal executions by lethal injection. Mot at 2, ¶ 3. They also concede that these persons have "overlapping roles and responsibilities." This is to say that the requested numbers of depositions would be cumulative or duplicative in contravention of Fed. R. Civ. P. 26(b)(2). Plaintiffs also seek to depose "a significant number of the participants, along with a reasonable sampling of the non-participant Government and non-Government witnesses to all three executions." Mot. at 3, ¶ 4. Their proposed schedule would

---

[6] This is important for a number of reasons, including maintaining the anonymity of the witnesses as per the protective order in this case. In the ordinary case these witnesses would have had to have been served with Fed. R. Civ. P. 45 subpoenas. Here, because of the protective order, the Federal government expects to produce the witnesses for depositions, saving Plaintiffs the time and expense that, absent the protective order, they would have incurred.

allow for 60 two-hour depositions. Thus, there is the real possibility that Plaintiffs could conduct dozens of depositions in the 120 hours they have requested, spread over many months. This sort of open-ended request, with its failure to set forth the exact number of depositions sought, led Judge Lamberth to deny in part a motion for leave to conduct additional depositions. Alexander v. FBI, 1999 WL 270024 at *2 (D.D.C. April 21, 1999) (noting that plaintiffs "allude to an ambiguously defined, limitless amount of other people from whom they may also seek testimony"). In that case, Judge Lamberth observed that the result "strikes the proper balance between plaintiffs' right to discovery on their allegations, defendants' right to an expeditious determination . . . and plaintiffs' inefficient discovery practices." Id.

As explained above, Plaintiffs will not be prejudiced if the Court requires them to conduct the ten depositions they are permitted without leave of the Court, before seeking additional depositions. Nat'l Union Fire Ins. Co. v. Hicks, Muse, Tate & Furst, Inc., 2002 WL 1822738, *2 (S.D.N.Y. Aug. 8, 2002) (denying motion for additional depositions and holding that party seeking additional depositions had failed to demonstrate required need); Barrow v. Greenville Ind. School Dist., 202 F.R.D. 480 (N.D. Tex. 2001) (upholding magistrate judge's ruling denying leave to conduct additional depositions). See also Bell v. Fowler, 99 F.3d 262, 271 (8th Cir. 1996) (no abuse of discretion in denying leave to conduct additional depositions).

Finally, Plaintiffs have failed to make the particular showing of need to exceed the limit of ten depositions per side in the Court's order. Barrow v. Greenville Ind. School Dist., 202 F.R.D. 480, 482 (N.D. Tex. 2001) (party challenging magistrate judge's denial of motion to exceed presumptive limit on depositions "must demonstrate the necessity for each deposition"). Plaintiffs simply have pointed to the number of witnesses identified by the government in its

discovery responses. We understand there to be between ten and fifteen principal persons who have either participated in executions, or in developing the Federal government's execution protocol, or both. To the extent that any of the other witnesses' testimony, such as the non-government witnesses, could be obtained through declarations and statements, instead of depositions, they should be. See Migdal v Rowe Price-Fleming International, Inc., 248 F.3d 321, 325(4th Cir. 2001) ("plaintiffs cannot simply promise the court that once they have completed discovery, something will turn up. Rather before they are permitted to proceed to discovery, plaintiffs must have some factual basis for believing that a legal violation has actually occurred."). This requirement serves to prevent costly discovery, of witnesses who are merely tangential to the subject matter of the claims and allegations in the complaint. See DM Research v. College of Am. Pathologists, 170 F.3d 53, 55 (1st Cir. 1999) (discussing "fishing expedition").

    For the foregoing reasons, the Court should deny Plaintiffs' motion.

                                                  Respectfully submitted,

                                                  s/Jeffrey A. Taylor
                                          JEFFREY A. TAYLOR, D.C. BAR # 498610
                                          Interim United States Attorney

                                             s/Rudolph Contreras
                                          RUDOLPH CONTRERAS, D.C. BAR # 434122
                                          Assistant United States Attorney

                                             s/Peter S. Smith
                                          PETER S. SMITH, D.C. BAR # 465131
                                          Assistant United States Attorney
                                          United States Attorney's Office
                                          Civil Division
                                          555 4th Street, N.W.
                                          Washington, D.C. 20530
                                          (202) 307-0372

    s/ Robert J. Erickson
ROBERT J. ERICKSON, D.C. Bar # 220731
Principal Deputy Chief
Criminal Appellate Section
U. S. DEPARTMENT OF JUSTICE
950 Pennsylvania Avenue, NW
Room 1515
Washington, DC 20530
(202) 514-2841

Counsel for Defendants