IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **JAMES H. ROANE, JR., et al.,** | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | Case Number:  1:05-cv-2337 |
| | : | |
| **ALBERTO GONZALES, et al.,** | : | |
| | : | |
| Defendants. | : | |

**PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITION
TO PLAINTIFFS' AMENDED MOTION TO EXTEND
DEADLINES FOR DISCOVERY AND DISPOSITIVE MOTIONS**

Plaintiffs served their First Set of Interrogatories and First Set of Requests for the Production of Documents five months ago, on December 14, 2006, one week after the original Scheduling Order was entered. These included requests for basic information plaintiffs needed to go forward in this action, such as details regarding the federal government's execution protocol and the personnel responsible for drafting and carrying out that protocol (the "Execution Personnel"). Defendants, however, delayed their response by insisting on a protective order far more restrictive than necessary,[1] which authorizes them to withhold *any* identifying information

---

[1] Defendants have maintained that keeping identifying information of key witnesses in this case from plaintiffs' counsel is essential to the security of those witnesses. Plaintiffs' counsel have attempted to oblige the concerns of defense counsel, for example by agreeing not to disclose such information to their clients or to anyone not involved in this case. Increasingly, however, defendants' posture suggests less a genuine concern about safety and more an effort to frustrate plaintiffs' discovery. *First*, defendants still have offered no evidence suggesting that revealing the identities of Execution Personnel presents any safety threat, either in general or in the particular context of disclosing that information only to opposing counsel pursuant to a protective order. *Second*, defendants appear willing to reveal the identities of Execution Personnel in other contexts. For example, an email sent by a Bureau of Prisons (BOP) employee—in which he identified himself by name and as the "coordinator of executions for the federal government"—was sent to Tennessee Department of Corrections personnel, apparently without protection of a court order or other confidentiality requirement. This and numerous

- 1 -

concerning Execution Personnel, excuses them from providing plaintiffs with important background information concerning such persons, and even purports to forbid plaintiffs to conduct their own investigations of such persons whose identities plaintiffs learn through publicly-available sources. Despite the overbreadth of the protection on which the defendants insisted, in the interest of moving discovery forward, plaintiffs agreed, on February 22, 2007, to proceed under defendants' proposed protective order on a temporary basis, so that they might finally obtain at least *some* form of response to the written discovery requests they had served on defendants in December. Two weeks later, and two months after the date contemplated by the Scheduling Order for the beginning of discovery, defendants finally provided a partial response to plaintiffs' initial requests. In that production, defendants provided plaintiffs with not a single email, and very little other correspondence, even though such material clearly exists. *See, e.g.*, Exh. A to Pl. Amen. Mot. to Extend Deadlines (Document No. 43).

Defendants' initial response did identify well over 100 potential witnesses, including more than two dozen persons intimately involved in administering lethal injections on behalf of the United States, and in promulgating the federal execution protocols. However, defendants refused to identify by name several key participants in the execution process, or to provide plaintiffs with critical background information about them. This roadblock forced plaintiffs to return to the Court to obtain at least a modicum of information on the background and qualifications of the Execution Personnel, which was finally produced on April 20, 2007.

---

other emails sent by, and naming, BOP personnel seemingly involved in executions were made public during the course of litigation in Tennessee and plaintiffs have no knowledge of any objection raised by defendants to this disclosure. Plaintiffs attached a sampling of these emails as Exhibit A to Plaintiffs' Amended Motion to Extend Deadlines for Discovery and Dispositive Motions (Document No. 43) (the "Amended Motion").

Plaintiffs moved promptly to depose the Execution Personnel (in fact, plaintiffs had sought their depositions even before defendants finally provided the little background information they did). Defendants, however, derailed *that* process by refusing to agree to a reasonable compromise with regard to the number of depositions plaintiffs would be allowed to take without intervention by the Court, and by adamantly refusing to allow the depositions to be videotaped, despite (a) the Federal Rules' presumption in favor of videotaping; (b) the demonstrated need for videotaping in this case; and (c) the highly-restrictive protective order now in place at defendants' insistence.

In sum, as a result of defendants' intransigence, discovery has barely begun.[2] Defendants' assertion that it should be ended only three weeks from now is grossly unreasonable, and would reward their dilatory tactics.[3]

---

[2] In contrast to the stance defendants have taken in this case, and highlighting the unreasonableness of their position, the defendants in the lawsuit challenging Oklahoma's lethal injection protocol, Anderson, et al. v. Jones, et al., Case No. 05-Civ-825-F (W.D.Okla.), themselves moved for an extension of discovery and other deadlines under facts similar to those at issue here. The Anderson defendants made that motion because, *inter alia*, they recognized that "[p]laintiff's counsel has demonstrated [to defendants' counsel] that various documents have been left unaccounted for and that there remain outstanding discovery issues for [d]efendants to attempt to resolve." Motion to Continue Deadlines at 1 (¶ 3), Anderson, et al. v. Jones, et al., Case No. 05-Civ-825-F (W.D.Okla.) (attached hereto as Exhibit A).

[3] Defendants note that under the current Scheduling Order, plaintiffs' expert designations were due by April 2, 2007, and assert that "[p]laintiffs never specifically moved to extend the deadline, but instead have treated expert deadlines in the pending amended motion." Def. Opp. to Pl. Amen. Mot. at 2-3. In fact, under the terms of the current Scheduling Order, plaintiffs were not required to move the Court to extend the deadline for expert designations. Rather, under the Order, all deadlines, except for the deadline for closure of all discovery, could be changed by agreement of the parties. Plaintiffs contacted defendants during the first week of April regarding the issue of expert designations, and noted that it was unreasonable to insist that plaintiffs experts file reports only a month after plaintiffs received defendants' initial responses to their discovery requests and before a single deposition was taken. Defendants at that time indicated that they were amenable to changing the deadlines for expert designations, with the caveat that they be given sufficient time to conduct discovery of plaintiffs' experts before June 7, 2007.

Defendants fault plaintiffs for "only lately decid[ing] what discovery they want to conduct," Def. Opp. to Pl. Amen. Mot. (Document No. 45), at 1, and claim, remarkably, that "[p]laintiffs could have litigated, or otherwise addressed, the issue of limitations in the [S]cheduling [O]rder, such as the limit on the number of depositions, during the same period that the parties were working out a protective order . . . during February, 2007," *id*. at 2. In reality, plaintiffs could not even begin to consider whom to depose until, *at the earliest*, they received defendants' responses to their first set of discovery requests in March. Prior to that time, due to the secrecy with which defendants have shrouded the entire execution process, plaintiffs had no idea who was responsible for carrying out federal executions and developing the execution protocol. In other words, until defendants turned over a list of more than 100 individuals who have either observed, or been directly involved in, the federal execution process, plaintiffs could not have known that they would need more than 10 depositions, and certainly could not actually have noticed any depositions.[4] Moreover, as defendants themselves acknowledge, only one month after receiving the lengthy list of witnesses and execution participants, and a mere four days after receiving the preliminary results of defendants' background checks on Execution Personnel, plaintiffs informed defendants that they wanted to take "eleven specific depositions during the weeks of April 23, 2007, and April 30, 2007, with at least 7 additional depositions to follow." *See* Def. Opp. to Pl. Amen. Mot. at 1-2.[5]

---

[4] Defendants' contention that plaintiffs should have taken up the issue of deposition limits in February, before plaintiffs even knew the number of individuals involved in the federal execution process, is particularly perplexing, considering that they later complain that plaintiffs should not have raised the issue before the Magistrate Judge at the May 2, 2007, hearing because, according to defendants, plaintiffs could not at that point seek "an informed extension of the discovery schedule having identified a particular need for additional discovery." Def. Opp. to Pl. Amen. Mot. at 3.

[5] Defendants contend that the discovery plaintiffs intend to conduct amounts to a "fishing expedition." Def. Opp. to Pl. Amen. Mot. at 4. As explained in Plaintiffs' Motion for Additional

On top of the delay caused by defendants' refusal to produce *any* responsive information to plaintiffs until their overly-restrictive protective order was put into place, additional delay in the advancement of discovery in this case has resulted primarily from (1) the parties' dispute over the number of depositions and/or deposition hours necessary to allow for reasonable discovery, and (2) defendants' pursuit of a protective order that would prohibit plaintiffs from videotaping depositions and excuse defendants from producing certain equipment at the depositions. As noted *supra* at 4 n. 4, defendants contend that the discovery deadlines should not be altered to take account of the dispute over plaintiffs' request for more depositions because plaintiffs could have taken the 10 depositions allotted to them by the Scheduling Order, and then, if necessary, requested more. Def. Opp. to Pl. Amen. Mot. at 3. As explained in Plaintiffs' Motion for Additional Depositions, however, plaintiffs should not be required to risk exhausting their allotted depositions before seeking to expand the limits, and should not be penalized for declining to take that risk. *See* Pl. Mot. for Additional Depositions (Document No. 37), at 3-4 (¶¶ 5-6).[6]

---

Depositions (Document No. 37), at 1-3 (¶¶ 1-4), however, defendants have revealed that at least forty-six individuals were present in some official capacity at the three federal executions the federal government has performed since 2001. Sixteen of these individuals had vaguely-specified direct participatory roles, and at least an additional ten were involved in developing the execution protocol. Defendants have also identified a number of other official "Government witnesses" to the executions, and there are in addition numerous individuals apparently not yet disclosed by defendants who have conducted and/or attended BOP execution presentations or training sessions. The quantity of key witnesses and the vagueness with which they have been identified has required plaintiffs to seek to depose approximately twenty-five individuals, a reasonable number under the circumstances.

[6] Plaintiffs have set forth their arguments in favor of the need for additional depositions in both their Motion For Additional Depositions, and their Response, filed simultaneously with this Reply, to Defendants' Objections to Magistrate Judge's May 2, 2007 Discovery Ruling (Document No. 46). Plaintiffs note here, however, that defendants' argument that discovery should conclude in three weeks because "it was the government's understanding when filing the joint Local Civil Rule 16.3 Report that discovery in this case would be limited and that the case

Defendants also assert that it was somehow plaintiffs' fault that depositions were postponed at the end of April, stating that plaintiffs provided the government with insufficient notice of their intent to videotape the first scheduled depositions. Def. Opp. to Pl. Amen. Mot. at 2. Of course, plaintiffs had no reason to believe this intention would be such an objectionable point. As Magistrate Judge Robinson found, Rule 30 of the Federal Rules of Civil Procedure presumptively permits the videotaping of depositions. Moreover, the protective order entered in this case at defendants' insistence would prevent any and all dissemination of the videotapes by plaintiffs' counsel (even to their own clients). Finally, that same protective order—while extremely restrictive in almost every other respect—contains no restriction whatsoever on plaintiffs rights to videotape depositions of protected persons.

Defendants also neglect to mention that at the May 2, 2007, hearing before the Magistrate Judge, plaintiffs offered a variety of compromises in the interest of accomodating defendants' desire to maintain the anonymity of deponents, including: (1) agreeing to limit the total number of copies made of the videos; (2) agreeing not to store the videos on a computer (as opposed to a DVD); and (3) agreeing not to transmit the videos via electronic means (such as email). Plaintiffs suggested these compromises in the interest of moving forward with depositions in

---

would be resolved on dispositive motions" is specious. While it is *possible* that this case will be resolved on summary judgment, it will not necessarily be, and the potential for resolution on summary judgment has nothing to do with plaintiffs' right to depose fact witnesses. Nor is the fact that plaintiffs in another jurisdiction were allowed fewer depositions than plaintiffs in this case relevant in any way. Defendants cite to court orders limiting the scope of discovery in Taylor v. Crawford, Civ. No. 05-4173 (W.D. Mo.), but fail to acknowledge the very different procedural posture of that case. The Taylor hearing on execution procedures resulted from a remand from the Court of Appeals under an expedited schedule. That the number of depositions was necessarily limited under those circumstances is not relevant to the issue before this Court. (It might also be noted that the while the defendants in Taylor likewise sought to shroud their depositions in secrecy, investigation ultimately revealed a history of malpractice and professional discipline by at least one deponent that was highly germane to the litigation).

May. Defendants, however, refused to accept any compromise, and insisted on briefing the issues of videotaping and provision of equipment before the Magistrate Judge. As a result, depositions will not begin until June 4, 2007, at the earliest.[7]

     As a result of defendants' unwillingness to provide discovery, plaintiffs have been forced to seek court intervention on almost every discovery issue that has arisen since the Scheduling Order was entered. Defendants insist on maintaining a schedule that was put in place months ago, before discovery difficulties were foreseen. That insistence, in the context of defendants' repeated erection of roadblocks to discovery and their consistent refusal to compromise when disputes arise, is nothing more than an attempt to game the system, and should be rejected. The point of discovery is to permit the parties to develop the facts necessary to achieve a just resolution of the controversy, not to permit one party to deny the other access to those facts through a game of "gotcha." For the foregoing reasons, and for the reasons stated in plaintiffs' Amended Motion, plaintiffs respectfully request that the Court modify the Scheduling Order in the manner outlined in the Amended Motion. Plaintiffs additionally request an oral hearing on the Amended Motion.

---

[7] The parties have agreed tentatively to begin depositions on June 4, 2007, anticipating that the Magistrate Judge will rule on defendants' motion for a protective order regarding videotaping and the provision of equipment at depositions before that date and in the interest of proceeding as efficiently as possible once that ruling is issued.

Respectfully submitted,


/s/ Paul F. Enzinna_____
PAUL F. ENZINNA (D.C. Bar No. 421819)
JEREMY I. LEVIN
TIMOTHY LOPER
RACHEL McKENZIE
Baker Botts LLP
1299 Pennsylvania Avenue, NW
Washington, DC  20004-2400
(202) 639-7752

*Counsel for Plaintiff James H. Roane, Jr.*


/s/ Charles A. Zdebski_____
CHARLES A. ZDEBSKI  (D.C. Bar No. 451075)
Troutman Sanders LLP
401 9th Street, NW
Suite 1000
Washington, DC 20004-2134
(202) 274-2909

STEPHEN A. NORTHUP (D.C. Bar. No. 54587)
Troutman Sanders LLP
1001 Haxall Point
P.O. Box 1122
Richmond, VA 23218-1122
(804) 697-1240

FREDERICK R. GERSON
Robinson & Gerson, P.C.
7102 Three Chopt Road
Richmond, VA 23226

*Counsel for Plaintiff Richard Tipton*


/s/ Charles A. Zdebski_____
CHARLES A. ZDEBSKI  (D.C. Bar No. 451075)
Troutman Sanders LLP
401 9th Street, NW
Suite 1000
Washington, D.C. 20004-2134
(202) 274-2909

- 8 -

BARBARA HARTUNG
700 E. Main Street
Suite 1600
Richmond, VA 23219

EDWARD E. SCHER
Thorsen & Scher, LLP
3810 Augusta Avenue
Richmond, VA 23230

*Counsel for Plaintiff Cory Johnson*


/s/ William E. Lawler III
WILLIAM E. LAWLER III (D.C. Bar No.398951)
GRAHAM E. EDDY (D.C. Bar No. 495794)
Vinson & Elkins LLP
1455 Pennsylvania Avenue, NW
Suite 600
Washington, DC 20004-1008
(202) 639-6676

*Counsel for Plaintiff Bruce Webster*