UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JAMES ROANE, JR., et al., | ) |
| Plaintiffs, | ) |
| BRUCE WEBSTER, | ) |
| Intervenor-Plaintiff, | ) |
| v. | ) Civil Action No. 05-2337 (RWR/DAR) |
| ALBERTO GONZALES, et al., | ) |
| Defendants. | ) |

**PLAINTIFFS' RESPONSE TO DEFENDANTS'
MOTION FOR PROTECTIVE ORDER**

Plaintiffs JAMES ROANE, JR., et al., and Intervenor-Plaintiff BRUCE WEBSTER, by and through the undersigned counsel, respectfully submit this Response to Defendants' Motion for Protective Order filed May 9, 2007 ("Def. Motion").

**I.     INTRODUCTION**

Defendants' motion seeks an order prohibiting the videotaping of the depositions of certain "Protected Persons" and excusing Defendants from providing any execution-related equipment or chemicals at such depositions. The competence of Execution Personnel to carry out executions by lethal injection and the manner in which they carry out their duties are central issues in this case. It is therefore critically important that the finder of fact be able to observe Execution Personnel performing the tasks associated with their execution-related duties. These

individuals, however, appear to be beyond the subpoena power of this Court.[1]  Videotaped depositions are therefore necessary in order to provide the trier of fact with this crucial evidence. In light of these interests, and of the fact that a Privacy Act Protective Order ("Protective Order") is already in place in this case, Defendants' motion fails to meet the burden required for the issuance of a protective order.  The Court should therefore deny the motion.

## II.  ARGUMENT

### A.  Defendants Have Not Established That a Second Protective Order is Necessary to Protect the Anonymity of the Deponents.

Rule 30(b)(2) of the Federal Rules of Civil Procedure explicitly provides that depositions may be videotaped.  See Alexander v. Federal Bureau of Investig., 186 F.R.D. 123, 127 (D.D.C. 1998); Convolve, Inc. v. Compaq Computer Corp., 223 F.R.D. 162, 182 (S.D.N.Y. 2004).  This rule, which was part of the 1993 amendments to the Rules, "confers upon the party taking the deposition the choice of the method of recording, without the need to obtain prior court approval for one taken other than stenographically." Fed. R. Civ. P. 30(b)(2) cmt.  Not only does the rule "recognize[] the routine nature of non-stenographic recording;" courts have shown an "expressed preference for videotaped depositions."  Fanelli v. Centenary College, 211 F.R.D. 268, 269-70 (D.N.J. 2002).  In their motion, Defendants allege that "[c]onducting the depositions in this case by videotape conflicts with the protective order governing this case, which protects certain individuals' anonymity." Def. Motion at 2.  Defendants have not, however, demonstrated to the Court how the Protective Order that already exists in this case is inadequate to protect these individuals' anonymity nor have they offered any specific reason why a second protective order specifically prohibiting videotaped depositions is necessary.

---

[1] Because the defendants refuse to identify these persons, plaintiffs do not know precisely where they are located.  The defendants have requested, however, for the sake of convenience, that the depositions take place in Terre Haute, Indiana.

Most of the concerns raised by Defendants and the cases they cite in support of their motion go to whether a protective order should be entered to protect the identities of the deponents. A Protective Order, however, is already in place in this case to address these concerns. This Protective Order allows for deposition testimony to be designated as "Confidential" and, when so designated, not made part of the public record. Protective Order at ¶ 4(e). The Protective Order also limits the disclosure of "the names and personally-identifying information" of individuals who have participated in past executions or who will participate in the executions of Plaintiffs. Id. at ¶13.

Notwithstanding the existence of this order, Defendants argue that "a number of district courts have recognized the sensitivity of the issues and the important security and privacy concerns of the governmental defendants." Def. Motion at 2. Of course, *this* District Court has also recognized the sensitivity of these issues – and issued the Protective Order to account for it. As further explained below, Defendants have clearly not met their burden of establishing why a second protective order is necessary. Their motion should therefore be denied. See Avirgnan v. Hull, 118 F.R.D. 252, 254 (D.D.C. 1987)("the party seeking a protective order clearly bears the burden of proving its necessity").

Defendants argue that a second protective order specifically prohibiting the videotaping of the depositions of certain individuals is necessary to protect the deponents' anonymity in this case. Their arguments rest on the vague assertion that the video images of the deponents could be disclosed, noting that such images are "easily converted into, manipulated, or copied in, electronic form." Def. Motion at 3. Defendants argue that this copying into electronic form could allow for the videotapes to fall into the hands of prison inmates or others who might seek to harass or otherwise harm the deponents for their involvement in executions. Contrary to

3

established precedent from this Court, however, Defendants have offered the Court no "specific demonstration of facts to support the request" for a protective order, but rather have rested their request on "conclusory [and] speculative statements" about ways in which videotaping could allow for such disclosures to occur and for the existing Protective Order to be violated. See Alexander v. Federal Bureau of Investig., 186 F.R.D. 60, 64 (D.D.C. 1998).

In essence, Defendants are asking this Court for a second protective order based on the presupposition that counsel for Plaintiffs will violate the Court's existing Protective Order by copying and disseminating the videotapes of the depositions. Of course, there is simply no basis in fact to suggest this will happen, and the suggestion that it will demonstrates a lack of appreciation for the professional obligations of Plaintiffs' counsel, and their respect for the rulings of this Court. See Convolve, 223 F.R.D. at 182 (noting that defendant "presented only speculation that the videotaping is intended as harassment … [and] … no evidence that such harassment has occurred or that Convolve is likely to use the videotape for an improper purpose"). Demonstrating the efficacy of the protections afforded by the Protective Order, a federal district court judge in Maryland recently permitted the depositions of execution personnel to be videotaped as part of a lawsuit challenging the lethal injection protocol in that state. Evans v. Saar, Case No. 06-Civ-149; Declaration of Anne Harden Tindall, Pl. Exh. A at ¶ 4. The only parties permitted to view the videotapes were the plaintiff's trial counsel, their trial support team, and expert witnesses. Id. at ¶ 5. There is no indication that the deponents' anonymity was in any way compromised. Id. Similarly, the Protective Order issued by this Court adequately protects the identities of the deponents, and Defendants have offered this Court no evidence to suggest that counsel for Plaintiffs will not continue to abide by and honor its provisions and protections.

The one case to which Defendants cite in support of their argument for an order prohibiting the videotaping of these depositions, Westmoreland v. CBS, 584 F.Supp. 1206 (D.D.C. 1984), is distinguishable on many points. *First*, in Westmoreland, no protective order existed. *Second*, the party to be deposed in Westmoreland was a prominent public figure and the party seeking to take his deposition was a broadcast news organization which refused to say whether it would broadcast the tape, clearly presenting unique facts that are not present here. *Third*, and perhaps most importantly, the case was decided long before the 1993 amendments to the Federal Rules of Civil Procedure that made videotaping a "routine" and even "preferred" means of taking of videotaped depositions. See FED. R. CIV. P. 30(b)(2); Fanelli, 211 F.R.D. 268, 269-70. As explained below, the 1993 amendments to the Rules render this case not only distinguishable, but wholly inapplicable.

But even if Westmoreland were applicable, it does not call for a protective order here. In denying the plaintiffs the right to videotape a particular deposition, the court in Westmoreland specifically stated that it could not "discern an exclusively case-oriented reason" to allow the deposition to be videotaped in the face of the deponent's objections. Here, of course, the Plaintiffs' attorneys have stated that they seek to videotape the depositions for the specific "case-oriented" reason that videotape will be necessary for the Court and Plaintiffs' experts to observe the witnesses and the manner and competence with which they perform their execution-related duties, the adequacy of which is one of the central issues in this case. Notwithstanding this point, however, the 1993 amendments to the Federal Rules of Civil Procedure recognize that the videotaping of depositions is nothing extraordinary, and that a specific reason – "case-oriented" or otherwise – for doing so is not even necessary. See Convolve, 223 F.R.D. at 182 (stating that the party seeking to take a deposition "has no burden to justify the decision to videotape" a

5

deposition, and that the party opposing the videotaping must offer a "compelling argument for overriding [that] choice"). The amendments to Rule 30(b)(2) allowing for videotaping of depositions without leave of the court "reflect[] a belief that the use of such technology enhances parties' presentation at trial, particularly before juries, of deposition testimony which historically was limited in form to readings from cold, printed records." Id. (quoting Flaherty v. Seroussi, 209 F.R.D. 295, 297 n.4 (N.D.N.Y. 2001).

Counsel for Plaintiffs have expressed to Defendants' counsel their belief that information regarding the manner and competence with which deponents carry out their execution-related duties simply cannot be conveyed in a written record and, as such, videotaping is critically important to the preparation and presentation of Plaintiffs' case. See Email Message from Paul Enzinna, Baker Botts LLP, to Peter Smith, U.S. Dept. of Justice, Apr. 25, 2007, Pl. Exh. B. As pointed out in Gillen v. Nissan Motor Corp., a case cited to by Defendants, "[v]ideotaped reenactments and depositions can help parties better understand what occurred in a given action, especially where events cannot be described adequately by stenographic means alone." 156 F.R.D. 120, 122 (E.D. Pa. 1994). Thus, aside from the benefits that videotaping provides to assess witness credibility, in this case videotape will provide the Court with the best evidence available of the manner in which lethal injections are carried out in the federal prison system and the competence of the deponents in carrying out their execution-related duties. In requesting this protective order, the Defendants seek to deny the Court this evidence.

Plaintiffs have a clearly-demonstrated need to videotape the depositions at issue, and the right under the Federal Rules of Civil Procedure to do so. While Plaintiffs recognize that privacy issues may be at stake, it is clear that Defendants have made no specific factual demonstration that the existing Protective Order will be insufficient to protect those interests. Defendants'

6

motion for a protective order prohibiting the videotaping of the depositions of certain "Protected Persons" should therefore be denied.

    **B.    Defendants' Ability to Safely and Properly Handle the Basic Apparatus of the Lethal Injection Protocol is a Critical Fact that is Clearly Relevant to Plaintiffs' Claim; Defendants have Provided no Practical or Legal Justification for a Protective Order.**

        1.    The Presence of the Lethal Injection Apparatus is Both Appropriate and Safe.

Defendants' only objection to the actual presence of equipment and drugs used in a lethal injection procedure during depositions is that those materials "are, or could be, dangerous." Def. Motion at 7. However, Defendants make no attempt to explain to the Court why these materials are dangerous, nor do Defendants offer any evidence supporting their claim. Such a vague and conclusory assertion, supported by no facts, completely fails to meet the burden necessary for a protective order – good cause shown. See Alexander, 186 F.R.D. at 64; FED. R. CIV. P. 26(c).

Moreover, such equipment has been used in proceedings in at least two cases challenging a state's lethal injection procedure. In Oklahoma, equipment and supplies to be used in a lethal injection execution were requested and made safely available in depositions involving a lethal injection challenge. Anderson, et al. v. Jones, et al., Case No. 05-Civ-825-F (filed July 20, 2005). Declaration of Lisa S. McCalmont, Pl. Exh. C ¶ 5. In a federal district court in Maryland, lethal injection apparatus was presented in open court during trial proceedings in Evans. Tindall Declaration, Pl. Exh. A at ¶ 6. Accordingly, Defendants' Motion for Protective Order should be denied.

        2.    Demonstrations Involving the Use Of the Lethal Injection Apparatus In a Deposition is a Relevant and Effective Means of Discovering Facts Critical To This Case.

Defendants have further requested that this Court enter a protective order preventing Plaintiffs from asking deponents in this case to demonstrate their use of the basic materials

involved in the lethal injection procedure.  Once again, Defendants fail to satisfy the burden necessary for a protective order.

Defendants argue that such demonstrations would be irrelevant and unnecessary. However, the only case cited by Defendants, Gillen v. Nissan Motor Corp., 156 F.R.D. 120 (E.D. Pa. 1994) (alleging a defective car seatbelt), flatly contradicts these contentions.  In Gillen, the defendant requested that the plaintiff bring her car to the deposition and participate in a videotaped demonstration of the alleged seatbelt defect.  The plaintiff refused, and the court considered a motion to compel the videotaped demonstration.

In granting the motion, the court held:  "Videotaped reenactments and depositions can help parties better understand what occurred in a given action, especially where events cannot be described adequately by stenographic means alone."  Id at 122.  See also Brown v. General Instrument Corp., 1995 U.S. Dist. LEXIS 5472, at *2 (S.D.NY 1995) (granting a request by defendant to require plaintiffs to demonstrate operation of machines used in their work during videotaped depositions.) ("As for demonstrative testimony at the depositions, again plaintiffs' position cannot be sustained.  The information is unquestionably relevant, and plaintiffs have demonstrated no harm … Not surprisingly, the courts have repeatedly recognized the utility of such demonstrative testimony and directed the witness to cooperate."); Roberts v. Homelite Division of Textron, Inc., 109 F.R.D. 664, 668 (N.D. Ind. 1986) (holding that a videotaped re-enactment of the plaintiff's use of a lawn mower "will assist the parties in a better understanding of what occurred.")

The example of the industrial accident cited by Defendants for support is noted in Gillen as an exception that did not apply because there was no concern regarding the accuracy of the reenactment.  Id at 123.  The same is true here. Plaintiffs are not requesting reenactment of an

8

accident, but a demonstration of discrete tasks. These tasks are assigned to specific individuals, who are apparently trained in performing them, and who practice them. Demonstration of these tasks will help the Court better understand what the execution participants actually do in an execution by bringing the procedure to life, adding valuable information that words alone cannot provide.

In allowing the demonstration to go forward in Gillen, the court also noted that the proposed demonstration "concern[ed] discovery of the central issue of the dispute." Id. Similarly, demonstration of assigned execution-related tasks implicates one of the central issues in this case: the competence of prison personnel to perform their execution-related duties. Their ability or inability to do so is a critically relevant fact in this case. Defendants contend that these demonstrations fail the relevance test because the actual execution is performed by a team, not any one member, and that the demonstrations therefore would not reflect the actual conditions of an execution. This claim ignores the basic rule that information is discoverable "if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." FED. R. CIV. P. 26(b)(1). The execution team apparently consists of individual participants performing assigned tasks. Where the lethal injection protocol requires each team member to physically perform certain acts in order to carry out an execution safely and humanely, nothing could be more relevant to a fact-finder than a demonstration of those participants' abilities or inabilities to carry out their required tasks.

Defendants' further contend that demonstrations are unnecessary because Plaintiffs can simply ask the execution participants about their training and qualifications. While the execution participants' ability to recite their responsibilities in an execution may be important in some contexts, it is meaningless if they are not physically able to perform these responsibilities. The

9

administration of intravenous chemicals involves numerous technical medical procedures; they are learned not just by studying, but by practice with real equipment.  This demonstration is necessary to aid the Court in its fact-finding and to inform the opinion of Plaintiffs' expert.  Mere recitation of the procedures is insufficient.  Thus, the protective order sought by Defendants will deny this Court the best available evidence of the ability of execution personnel to competently carry out their duties.

Finally, Defendants assert no knowledge of any authority for conducting demonstrations during a deposition in any challenge to a State government's lethal injection procedures.  In Anderson, however, the plaintiff not only requested that the equipment and supplies used in the lethal injection process be made available in the deposition, but also that they be used for demonstration and/or explanation.  McCalmont Declaration, Pl. Exh. C at ¶ 5.  This occurred without objection.  Moreover, in Evans, physical demonstrations of execution equipment were conducted at trial.  Tindall Declaration, Pl. Exh. A at ¶ 6.

The demonstration in a deposition of assigned tasks required to carry out an execution by lethal injection is both relevant and useful to the discovery of critical facts in this case.  Relying only on sweeping conclusory assertions, Defendants have offered the Court no adequate factual or legal justification for granting an additional protective order preventing such demonstrations.  The primary consequence of such an order would be to deny the Court the best evidence available regarding the capabilities of execution participants to carry out their duties.  Consequently, the Court should deny Defendants' motion.

**III. CONCLUSION**

For the reasons set forth above, Plaintiffs respectfully request that the Court deny Defendants' Motion for Protective Order.

**DATED:**   May 16, 2007

/s/ William E. Lawler III_____
WILLIAM E. LAWLER III (D.C. Bar No.398951)
GRAHAM E. EDDY (D.C. Bar No. 495794)
Vinson & Elkins LLP
1455 Pennsylvania Avenue, NW
Suite 600
Washington, DC 20004-1008
(202) 639-6676

*Counsel for Intervenor-Plaintiff Bruce Webster*

s/ Paul F. Enzinna_____
PAUL F. ENZINNA (D.C. Bar No. 421819)
JEREMY I. LEVIN
TIMOTHY LOPER
RACHEL McKENZIE
Baker Botts LLP
1299 Pennsylvania Avenue, NW
Washington, DC  20004-2400
(202) 639-7752
Fax:  (202) 639-7980

*Counsel for Plaintiff James H. Roane, Jr.*

/s/ Charles A. Zdebski_____
CHARLES A. ZDEBSKI  (D.C. Bar No. 451075)
Troutman Sanders LLP
401 9th Street, NW
Suite 1000
Washington, D.C. 20004-2134
(202) 274-2909

STEPHEN A. NORTHUP (D.C. Bar. No. 54587)
Troutman Sanders LLP
1001 Haxall Point
P.O. Box 1122
Richmond, Virginia 23218-1122
(804) 697-1240

FREDERICK R. GERSON
Robinson & Gerson, P.C.
7102 Three Chopt Road
Richmond, Virginia  23226

*Counsel for Plaintiff Richard Tipton*


/s/ Charles A. Zdebski
CHARLES A. ZDEBSKI  (D.C. Bar No. 451075)
Troutman Sanders LLP
401 9th Street, NW
Suite 1000
Washington, D.C. 20004-2134
(202) 274-2909

BARBARA HARTUNG
700 E. Main Street
Suite 1600
Richmond, Virginia 23219

EDWARD E. SCHER
Thorsen & Scher, LLP
3810 Augusta Avenue
Richmond, Virginia  23230

*Counsel for Plaintiff Cory Johnson*