UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JAMES ROANE, JR., et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| BRUCE WEBSTER, ) | |
| ) | |
| Intervenor-Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 05-2337 (RWR/DAR) |
| ) | |
| ALBERTO GONZALEZ, et al., ) | |
| ) | |
| Defendants. ) | |

**DEFENDANTS' REPLY TO PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER**

Defendants respectfully submit this reply to Plaintiffs' Response to their motion for a protective order concerning: (1) Plaintiffs' expressed intention to conduct videotaped depositions of the Protected Persons in this case; and (2) Plaintiffs' request that the government make available for use during the depositions certain equipment and chemicals.  Document No. 50 (Plaintiffs' response).

A.   Videotaping Depositions of Protected Persons in this Case Conflicts with the Protective Order and the Limitations on Discovery in the Federal Rules of Civil Procedure.

The Federal Rules of Civil Procedure empower the Court to enter, for "good cause shown" and when "justice [so] requires," protective orders designed to prevent "a party or person from annoyance, embarrassment, oppression, or undue burden or expense."  Fed. R. Civ. P. 26(c). The Privacy Act protective order governing this case, which protects certain individuals' anonymity, states that "the names and personally-identifying information of any officers,

employees, agents and contractors involved in past executions or expected to be involved in the executions of plaintiffs or in the development of the protocol(s) for the same shall not be revealed in connection with the litigation of this lawsuit to anyone other than counsel for defendants." Document No. 30, ¶ 13 (emphasis added); May 2, 2007 Minute Entry.  In a number of well known Freedom of Information Act and Privacy Act cases, the Court of Appeals has ruled that a person's voice or image is personally-identifying.  See, e.g., Accuracy in Media v. Nat'l Park Serv., 194 F.3d 120 (D.C. Cir. 1999) (privacy right with respect to death scene images).  See also New York Times Co. v. NASA, 782 F.Supp. 628, 631-32 (D.D.C. 1991) (sustaining withholding of audiotape of Space Shuttle Challenger astronauts' last words on privacy grounds).  Thus, there can be no dispute that videotaped images are personally-identifying and covered by the protective order in this case.  The dispute is whether, as Plaintiffs contend, the protective order simply governs the maintenance and use of the tapes, or, whether videotaping the depositions is precluded by the protective order.  The protective order, at paragraph 13, states that personally-identifying information will not be revealed.  That provision prohibits the videotaping of depositions.

   The Court entered the protective order to protect the anonymity of those who carry out the sensitive task of Federal executions by lethal injection, and who developed the protocol for those executions.  Many of those persons work in prisons and are exposed to the inmate population on a daily basis.  As have other courts across the country in challenges to the states' lethal injection procedures, the Court entered a restrictive protective order in this case.  That order is designed to protect BOP employees, BOP contractors, and others from, inter alia, danger and potential harassment, and to maintain the efficacy and integrity of the Federal Government's execution

procedures insofar as participation in executions for BOP employees and contractors is voluntary. See United States v. Battle, 173 F.3d 1343 (11th Cir. 1999) (murder of correctional officer).[1]  In connection with volunteering to participate, Federal correctional staff and contractors participating in executions or creating the Execution Protocol were assured that their identities will not be disclosed.  Those who currently participate may not continue to do so if they are concerned that their identities will become public.

      Plaintiffs argue that videotaping depositions is "routine."  Document No. 50 at 2.  Of course, this is far from a routine case.  Plaintiffs next argue that Defendants have adequate protections in the existing protective order.  Id. at 3.  Setting aside the fact that the order itself precludes videotaping the depositions, there is a risk of error in the transmission and handling of videotaped deposition testimony that is too great to be offset by Plaintiffs' purported need to videotape the depositions.  Plaintiffs construe Defendants' position to be that Plaintiffs' counsel will not comply with the terms of the protective order.  Id. at 4.  On the contrary, our position is that there is such a great risk of disclosure of the identities of the deponents associated with videotaping the depositions, that it cannot be permitted.  Moreover, Plaintiffs have not addressed the separate point that the BOP employees and contractors might simply refuse to participate in any future execution due to fear that their identities will be disclosed.  These concerns are far from "conclusory" and "speculative" as Plaintiffs maintain.  Document No. 50 at 4.  The undersigned counsel of record has met with persons who specifically have expressed these concerns.

---

[1] See also http://www.odmp.org/agency.php?agencyid=1252 (listing corrections officers killed in the line of duty).

Plaintiffs argue that The United States District Court for the District of Maryland allowed videotaped depositions in a similar case pending in that district. Id. at 4. Of course, as Defendants' motion explained, some courts have not. Plaintiffs argue that Westmoreland v. CBS, Inc., 584 F.Supp. 1206 (D.D.C. 1984), reversed on other grounds, 770 F.2d 1168 (D.C. Cir. 1985), is inapplicable because it was decided prior the change in the 1993 Federal Rules of Civil Procedure explicitly allowing videotaped depositions. Id. at 5. Contrary to Plaintiffs' simplistic assertion, the rationale for the court's decision still obtains. In Westmoreland, the district court recognized the privacy interests of witnesses in their own image.

Plaintiffs further argue that they have set forth a "case oriented" reason for videotaping the depositions and thus that they escape the court's holding in Westmoreland. Here, Plaintiffs expose a fatal flaw in their argument: Plaintiffs' professed reason for videotaping the depositions - - that the Court will be able to assess the witnesses' credibility - - is inapplicable. The issues in this case primarily are legal and could be resolved on summary judgment. Plaintiffs take no issue with the fact that only the written deposition transcript can be considered by the Court on summary judgment. Instead, Plaintiffs pin their hopes on the prospect that a witness will be unavailable for any trial in this case. Plaintiffs ignore Defendants' point that such a situation could be dealt with at a later time, either by rearranging the order of witnesses or by conducting videotaped *de benne esse* depositions prior to any trial.

Plaintiffs also argue that videotaping the depositions is "critically important to the preparation and presentation of Plaintiffs' case." Document No. 50 at 6. That argument is belied by the fact that Plaintiffs waited until April 25, 2007, well into the discovery period, to propose this "critical" part of their case. Id. (citing April 25, 2007 e-mail). Moreover, Plaintiffs act as

4

though the execution process is a complete mystery to them. On the contrary, Plaintiffs are represented by savvy and competent counsel who can use, and have used, the many challenges to State lethal injection procedures as blueprints for litigating this case. That is demonstrated by their own exhibit, a declaration from an attorney on one such case. The Federal Government's lethal injection protocol and its implementation in past executions, as well as the training of the staff all can be explained on a written record.

Finally, Plaintiffs' contention that videotaped depositions are necessary so that the Court can observe the witnesses conducting demonstrations is inapplicable, since such demonstrations could not be considered on summary judgment, and also for the reasons set forth below. Plaintiffs identify a myriad of persons whom they seek to depose, including media witnesses to executions, BOP employees, and others. Plaintiffs propose to videotape all of the depositions, even though only certain witnesses actually perform executions and would be in a position to demonstrate anything with respect to the execution process.

B.      <u>Demonstrations of the Mixing of Lethal Substances During a Deposition Could be Dangerous, Misleading or Impracticable</u>.

With respect to Plaintiffs' request that certain equipment and chemicals be present for the depositions, such as IV tubing, surgical kits, syringes, and lethal chemicals, the Court should enter a protective order that Defendants are not obligated to provide, for purposes of depositions in this case, any of the aforementioned equipment or chemicals. The Court also should enter a protective order that the deponents in this case will not be required to physically demonstrate the use of IV tubing, surgical kits, syringes, lethal chemicals and similar equipment used in executions.

Plaintiffs argue that in a challenge to Oklahoma's lethal injection procedures, the government witnesses supplied and demonstrated certain equipment during depositions. Document No. 50, Declaration of Lisa McCalmont. However, the declaration does not say that the equipment demonstrated included lethal substances or chemicals. The declaration also specifically says that the demonstrations were conducted without objection, so the court presumably was not asked to rule on this issue. Furthermore, Ms. McCalmont does not describe the "equipment" utilized in the demonstrations. The fact that the demonstrations occurred without objection would lead one to believe that the "equipment" employed in those demonstrations was different from what is at issue in this case (lethal chemicals, surgical supplies, needles, etc.).

Defendants also object to any proposed demonstration on the basis that such would not be discoverable under the relevancy test set forth at Fed. R. Civ. P. 26 because it would not reflect the actual conditions of an execution, the focus of Plaintiffs' challenge. Plaintiffs argue that the proposed demonstration would be both "relevant" and "effective." Document No. 50 at 7. Plaintiffs try to distinguish the Gillen case on extremely narrow grounds. Gillen v. Nissan Motor Corp., 156 F.R.D. at 123 (citation omitted) (noting case in which "the court refused to permit a videotaped reenactment of an industrial accident where the accuracy of the reenactment, and hence its utility in ascertaining what occurred, was suspect."). Plaintiffs argue that they are not asking for the demonstration of an accident, but instead of "discrete tasks." Document No. 50 at 9. Of course, Defendants' point is that, just as in Gillen, because of the lack of context, the "tasks" persons will be asked to perform will be misleading. That is, Plaintiffs' requested demonstrations will not reflect accurately the actual tasks conducted in the execution facility.

6

This is exactly the issue in Gillen.

Plaintiffs further argue that describing the process on a written transcript is insufficient because "the administration of intravenous chemicals involves numerous technical medical procedures." Document 50 at 10. That argument is misleading at best. Plaintiffs have stated that they will not ask anyone to demonstrate the establishment of an IV line in another person, nor could they under the Federal Rules. Yet presumably that is one of the "technical medical procedures" to which they are referring. As we explained previously, no demonstration of any "discrete task" would reflect the actual conditions of an execution, where a team of persons conducts those tasks. There is little value in asking an individual witness to conduct tasks during a deposition that they do not conduct during an execution. In fact, any such demonstration would be fundamentally misleading and thus the Court should follow Gillen in rejecting Plaintiffs' requests.

                        Respectfully submitted,

                          s/Jeffrey A. Taylor
                        JEFFREY A. TAYLOR, D.C. BAR # 498610
                        Interim United States Attorney

                          s/Rudolph Contreras
                        RUDOLPH CONTRERAS, D.C. BAR # 434122
                        Assistant United States Attorney

                          s/Peter S. Smith
                        PETER S. SMITH, D.C. BAR # 465131
                        Assistant United States Attorney
                        United States Attorney's Office
                        Civil Division
                        555 4th Street, N.W.
                        Washington, D.C. 20530
                        (202) 307-0372

       s/ Robert J. Erickson
ROBERT J. ERICKSON, D.C. Bar # 220731
Principal Deputy Chief
Criminal Appellate Section
U. S. DEPARTMENT OF JUSTICE
950 Pennsylvania Avenue, NW
Room 1515
Washington, DC 20530
(202) 514-2841

Counsel for Defendants