# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|   |   |
|---|---|
| JAMES ROANE, JR., et al., | ) |
| Plaintiffs, | ) |
| BRUCE WEBSTER, | ) |
| Intervenor-Plaintiff, | ) |
| v. | ) Civil Action No. 05-2337 (RWR/DAR) |
| ALBERTO GONZALEZ, et al., | ) |
| Defendants. | ) |

**FEDERAL DEFENDANTS' REPLY TO PLAINTIFFS' RESPONSE TO DEFENDANTS' OBJECTIONS TO MAGISTRATE JUDGE'S MAY 2, 2007 DISCOVERY RULING**

Pursuant to Local Civil Rule 72.2(b), Defendants file this reply to Plaintiffs' response to their objections to the Magistrate Judge's May 2, 2007 oral ruling and the Magistrate Judge's May 8, 2007 Minute Entry vacating the limit on the number of depositions and substituting in the place of that limit a total of 84 hours of deposition testimony, without regard to the ultimate number of depositions. Document No. 51 (Plaintiffs' response to Defendants' Objections).

Plaintiffs first complain about the level of secrecy associated with the conduct of executions and the development of the Federal Government's execution protocol. The Magistrate Judge considered briefs and heard argument on this issue and rightly concluded, as has, to our knowledge, every other court to consider the question, that a restrictive confidentiality order should be entered in this case due to the sensitive nature of the issues raised in a Constitutional challenge to a governmental entities' procedures for execution by lethal injection and the serious privacy and public policy grounds explained in Defendants' motion for a

protective order, Document No. 31 and reply in support thereof. Document No. 33. These include protecting the privacy, safety and security of those involved, many of whom work in prisons among the inmate population, and ensuring the security and integrity of the execution procedures.

      Plaintiffs then repeat their arguments to the Magistrate Judge that Defendants have identified "more than 100 individuals" during the course of discovery. Document 51 at 1-2. The Magistrate Judge correctly rejected this as a basis for a fishing expedition. Our only quibble with the Magistrate Judge's careful work in this case is that the Magistrate Judge's order leaves open the possibility of dozens of depositions in this case, for which the undersigned and others will have to travel to conduct preparation and depositions. This was the subject of discussion during the hearing on this issue and Plaintiffs represented, as they do in their briefs, that they have no desire to conduct 84 one-hour depositions. Document 51 at 6. While we certainly accept their representations to the Court, that is all the more reason for the Court to enter a cap on the ultimate number of depositions. The Court should rule that Plaintiffs must take the ten depositions to which they are entitled before seeking more. Even if the Court is inclined to revise upward the number of depositions that Plaintiffs can conduct in this case, the reasonable limit on the total number of depositions in this case is 15. That number is sufficient for Plaintiffs to depose all of the key personnel involved in the Federal Government's executions and the development and implementation of the Federal Government's execution protocol.

      Of course, Plaintiffs are not entitled to depose every conceivable witness. More significant for the issue before the Court is the fact that Defendants' initial disclosures identify approximately 15 persons as being those primarily involved in performing the Federal

Government's executions and developing the protocol for those executions. Thus, the Defendants' suggested limit of 15 depositions in this case is reasonable, and as opposed to Plaintiffs' expansive claim to be entitled to depose almost anyone in any way connected with any of the Federal Government's executions, Defendants' proposed limit on the number of depositions has a direct basis in the record of this case.

Next, in a seeming effort to bolster their argument that they know very little about the Federal Government's execution procedures, Plaintiffs argue that Defendants have not provided Plaintiffs with information about a recent execution training and further argue that certain purportedly relevant and responsive information concerning that training was made public in Tennessee. First, the electronic mail Plaintiffs reference, Ex. A to Plaintiffs' Amended Motion to Extend deadlines for Discovery and Dispositive Motions, is dated <u>after</u> the Defendants' discovery responses were served. Defendants have a duty to seasonably supplement their responses and they will do so within the requirements and limitations of the Federal Rules of Civil Procedure. Second, the Defendants were unaware of the release of this information until Plaintiffs filed their exhibit on the public record. To our knowledge, the Federal Government is not a party to the "litigation in Tennessee" Plaintiffs reference; in fact, Plaintiffs do not specifically identify what "litigation" they are referencing or how and why the materials were released.[1]

---

[1] The e-mail chain that constitutes Plaintiffs' exhibit specifically says that it is for "official use and may contain sensitive information" and it was directed to the Tennessee Department of Corrections in the normal course of BOP's operations. BOP would not have had any expectation that its communication with Tennessee would be made public (apparently by Tennessee) beyond the protective order governing this case. Thus, to the extent that Plaintiffs are arguing that Defendants in any way allowed or countenanced any public release of information covered by the Privacy Act Protective Order in this case, they are incorrect. <u>See</u> Document 51 at

Plaintiffs then argue that they are "'starting from scratch' in understanding the process by which executions are carried out by defendants." Document No. 51 at 3. This is misleading at best. Plaintiffs have a number of savvy, experienced and competent counsel who have numerous similar lawsuits brought against state governments as a blueprint to work from. The physician who we understand Plaintiffs will use as an expert witness, Dr. Mark Heath, has testified in numerous legal challenges involving execution by lethal injection. Far from stumbling around in the dark, Plaintiffs have a significant amount of information from Defendants upon which they can begin depositions in this case, including descriptions of the roles each witness performs in executions. See Document 51, exhibits. Those exhibits explicitly state, with respect to the Federal Government's prior executions by lethal injection, inter alia: who established IV access, who monitored the inmate's vital signs and consciousness, who prepared the lethal substances, who prepared the syringes, who administered the lethal substances, and who supervised the operation of the Chemical Room (where the lethal substances are prepared and administered). Document 51 at Ex. 1. The Court should reject Plaintiffs' contention that Defendants have put them in the position of simply guessing about who to depose. Document 51 at 9 (claiming that only Defendants "know who the participants are and what each does"). Defendants have done an exceptional job of providing Plaintiffs with information subject to the protective order in this case, which is founded on legitimate and real concerns for the safety, security and privacy of those involved and the integrity of the process itself.

Plaintiffs complain that the above-mentioned descriptions are redundant or inadequate. Document 51 at 4. While false, this argument also ignores several facts about the process of

---

3.

litigation. First, discovery itself is a process. Plaintiffs will learn from even one deposition much about Defendants' procedures, and who is involved. All litigants have to face constraints and make decisions about who they will depose and when. Plaintiffs, however, have turned this process on its head, refusing even to begin depositions until the Court enters an order considerably expanding the scope of the discovery permitted, limits to which Plaintiffs agreed during the initial scheduling stages of this case.

Plaintiffs also complain that they do not have information about the training and qualifications of those involved. Defendants have provided Plaintiffs with information in this regard, which Plaintiffs grudgingly concede in another filing. Document 49 at 2. Regardless, Plaintiffs can ask the witnesses these questions during depositions. At bottom, Plaintiffs' argument that they have been unable to begin depositions, or even plan discovery due to Defendants' purported "secrecy," is not credible.[2]

Defendants explained that the Magistrate Judge's ruling could lead to a situation that would be both burdensome and cumulative, in conflict with Fed. R. Civ. P. 26(b)(2). Plaintiffs assert that setting a limit on the number of depositions would be unfair and would not be burdensome. Document No. 51 at 7. Plaintiffs use the example of a case in which high-ranking government officials have been deposed. Id. Of course, the Court has to apply the limitations of

---

[2] The parties have known about the schedule in this case, and the limitations built into that schedule, since it was issued on December 6, 2006. Document No. 17 (December 6, 2006 Scheduling Order). However, Plaintiffs seem to have only lately decided that they want to conduct in excess of the ten depositions each side is permitted under the current scheduling order in this case. See Document No. 37 (motion for additional depositions).

Fed. R. Civ. P. 26 to Plaintiffs' request.[3]  Plaintiffs do not state otherwise.  Plaintiffs' argument, thus, is beside the point.  Surely the Court should not, and cannot, allow an unlimited number of depositions in this case, simply because in another case not involving a challenge to execution by lethal injection, James Carville, Paul Begala and others were deposed.  This says nothing about Defendants' specific burdensomeness objections, including, inter alia, travel time and expense, preparation time, witness availability, and the prospect of a multitude of short, cumulative depositions.

Plaintiffs take issue with the Defendants' reliance on Alexander v. FBI, 1999 WL 270024 at *2 (D.D.C. April 21, 1999) (noting that plaintiffs "allude to an ambiguously defined, limitless amount of other people from whom they may also seek testimony").  Plaintiffs argue that the court in that case ultimately allowed more depositions than Plaintiffs are seeking here.  Document No. 51 at 6, note 3.  That is misleading and shows the need for the Court to enter a specific cap on the number of depositions.  Plaintiffs may use their 84 hours of deposition time to depose a greater or lesser number of witnesses than in Alexander.  Also, in Alexander, plaintiff already had taken depositions and then sought more.  That is important, because here, Plaintiffs are seeking a large number of depositions from the Court, in advance of taking even one.  Defendants explained to the Magistrate Judge that Plaintiffs will not be prejudiced if the Court

---

[3] Barrow v. Greenville Ind. School Dist., 202 F.R.D. 480 (N.D. Tex. 2001) (recognizing that resolution of motion for leave to conduct additional depositions is governed by Fed. R. Civ. P. 26(b)(2)).  Fed. R. Civ. P. 26(b)(2) provides, inter alia, that the number of depositions "shall be limited" if the Court determines that: (1) the discovery sought is "unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive"; or (2) "the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case . . . the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues."

requires them to conduct the ten depositions they are permitted without leave of the Court, before seeking additional depositions. Barrow v. Greenville Ind. School Dist., 202 F.R.D. 480 (N.D. Tex. 2001) (upholding magistrate judge's ruling denying leave to conduct additional depositions). See also Bell v. Fowler, 99 F.3d 262, 271 (8th Cir. 1996) (no abuse of discretion in denying leave to conduct additional depositions).

      Finally, Plaintiffs do not seem to have addressed Defendants' point that to the extent that any of the other witnesses' testimony, such as the non-government witnesses, could be obtained through declarations and statements, instead of depositions, they should be. See Migdal v Rowe Price-Fleming International, Inc., 248 F.3d 321, 325(4th Cir. 2001) ("plaintiffs cannot simply promise the court that once they have completed discovery, something will turn up. Rather before they are permitted to proceed to discovery, plaintiffs must have some factual basis for believing that a legal violation has actually occurred."). This requirement serves to prevent costly discovery of witnesses who are merely tangential to the subject matter of the claims and allegations in the complaint. See DM Research v. College of Am. Pathologists, 170 F.3d 53, 55 (1st Cir. 1999) (discussing "fishing expedition").

**CONCLUSION**

For the foregoing reasons, the Court should deny Plaintiffs' motion, or, in the alternative, the Court should enter an order clarifying that the 84 hours of depositions cannot be used to depose in excess of 15 witnesses.[4]

Respectfully submitted,

    s/Jeffrey A. Taylor
JEFFREY A. TAYLOR, D.C. BAR # 498610
Interim United States Attorney

    s/Rudolph Contreras
RUDOLPH CONTRERAS, D.C. BAR #  434122
Assistant United States Attorney

    s/Peter S. Smith
PETER S. SMITH, D.C. BAR # 465131
Assistant United States Attorney
United States Attorney's Office, Civil Division
555 4th Street, N.W.
Washington, D.C. 20530
(202) 307-0372

    s/ Robert J. Erickson
ROBERT J. ERICKSON, D.C. Bar # 220731
Principal Deputy Chief
Criminal Appellate Section
U. S. DEPARTMENT OF JUSTICE
950 Pennsylvania Avenue, NW
Room 1515
Washington, DC 20530
(202) 514-2841

---

[4] In a separate filing, Plaintiffs have sought an extension of the discovery schedule. The issues of the limits on depositions and the need for any extension of the schedule are necessarily linked, which is in part why Defendants opposed Plaintiffs' amended motion to extend the schedule. Defendants agree that the schedule for this case will need to be extended if Plaintiffs are allowed the extensive number of depositions they have sought from the Court.