UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JAMES ROANE, JR., et al., | ) |
| Plaintiffs, | ) |
| v. | ) Civil Action No. 05-2337 (RWR/DAR) |
| ALBERTO GONZALES, et al., | ) |
| Defendants. | ) |

**DEFENDANTS' REPLY TO PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO STAY THE CONDUCT OF DISCOVERY**

Defendants hereby reply to Plaintiffs' opposition to Defendants' motion to stay discovery. See Document No. 71 (Plaintiffs' Opposition). Plaintiffs' Opposition is long on rhetoric and short on legal or factual authority. In their Opposition, Plaintiffs inappropriately try to shift the blame for delays in this case onto Defendants. As discussed below, Plaintiffs waited until nearly the close of the discovery period under the Court's December 6, 2006 Scheduling Order to formulate their discovery plan for this case. For example, Plaintiffs waited until the end of April, 2007, to notify Defendants of their intention to videotape the depositions in this case, including of the anonymous witnesses who actually perform the Federal government's executions.

1. The Pendancy of a Dispositive Motion Addressing Threshold Issues Warrants a Stay of Discovery.

Plaintiffs spend the vast majority of their Opposition arguing that any delays in this case have been caused by the conduct of the Defendants. Plaintiffs essentially ignore the legal reasons supporting entry of a stay of discovery in this case. For example, Plaintiffs do not take issue with the fact that trial courts are vested with broad discretion to manage the conduct of discovery.

Chavous v. District of Columbia Financial Responsibility and Management Assistance Auth., 201 F.R.D. 1, 2 (D.D.C. May 21, 2001) (DAR)(citing Brennan v. Local Union No. 639, Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen and Helpers, 494 F.2d 1092, 1100 (D.C. Cir. 1974) and Fed. R. Civ. P. 26).

Plaintiffs never argue that they need discovery to oppose Defendants' dispositive motion. Chavous, 201 F.R.D. at 5 (granting motion for stay of discovery and observing that "a trial court properly exercises its discretion to stay discovery where a motion which would be entirely dispositive if granted is pending; the discovery is not needed to permit the party who seeks discovery to oppose the pending dispositive motion; and the party who seeks discovery would not be prejudiced by a stay."). Likewise, Plaintiffs do not take issue with the fact that "'[i]t is well settled that discovery is generally considered inappropriate while a motion that would be thoroughly dispositive of the claims in the Complaint is pending.'" Chavous, 201 F.R.D. at 2 (quoting Anderson v. United States Attorneys Office, No. CIV. A. 91-2262, 1992 WL 159186, at *1 (D.D.C. June 19, 1992)).

Plaintiffs argue that the Court should deny Defendants' motion because, in their view, the chance that Defendants' dispositive motion will be granted "is slim." Pl. Opp. at 5. On the contrary, Defendants' motion is predicated upon the United States Supreme Court's decision in Hill v. McDonough, 126 S.Ct. 2096 (2006), and several recent court of appeals decisions. In Workman v. Bredesen, 2007 WL 1311330 (6th Cir., May 7, 2007), the United States Court of Appeals for the Sixth Circuit held that the plaintiff had raised his challenge to his method of execution, lethal injection, "too late in the day." That court noted that the "Supreme Court has never invalidated a State's chosen method of execution. No court has invalidated the three-drug

protocol used by Tennessee (and 29 other jurisdictions)." Workman v. Bredesen, supra at *8. In addition, other courts considering the constitutionality of various lethal injection protocols have rejected Eighth Amendment challenges predicated on the claim that the protocols used by certain States constitute cruel and unusual punishment. See, e.g., Taylor v. Crawford, 2007 WL 1583874 (8th Cir., June 4, 2007). And other courts have rejected challenges to lethal injection protocols using the same three-chemicals used by the Federal government. See, e.g., Aldrich v. Johnson, 388 F.3d 159, 161 (5th Cir. 2004) (lethal injection in Texas); People v. Snow, 30 Cal.4th 43, 132 Cal. Rptr.2d 271, 65 P.3d 749, 800-01 (Cal. 2003); Sims v. State, 754 So.2d 657, 668 (Fla. 2000); State v. Webb, 252 Conn. 128, 750 A.2d 448, 453-57 (Conn. 2000); LaGrand v. Stewart, 133 F.3d 1253, 1265 (9th Cir. 1998) (lethal injection in Arizona). Given this body of law, and the fact that there have been no decisions on the Federal government's lethal injection protocol, Plaintiffs cannot credibly establish a likelihood of success in attacking the Federal government's lethal injection protocol when that same theory has been rejected as against the States.

    2.    <u>The Burden of the Requested Discovery Requests and Privilege Issues.</u>

Defendants explained in their motion that a stay would promote judicial economy and conserve the parties' resources. Plaintiffs respond in their Opposition that "there are no pending discovery issues for the Court to resolve." Pl. Opp. at 3.[1] As has been apparent from this case thus far, given the importance of, and novel legal nature of, many of the discovery issues in this case, this case has raised and will continue to raise, contentious and burdensome disputes. Magistrate Judge Robinson has held three hearings on contested discovery issues to date. Thus,

---

[1] As explained below, that remains unclear.

Plaintiffs' argument that there are no pending discovery motions does not undercut Defendants' point. This case involves a great deal of confidential and sensitive information relating to security procedures instituted by Defendants or to the identity of persons performing tasks in connection with the execution of condemned prisoners, or creating the Federal government's Execution Protocol. Given the nature of this case, it is in the parties' and the Court's interest, in conserving time and resources, to stay discovery pending resolution of the dispositive motion.

Plaintiffs argue that "neither plaintiffs' second set of discovery requests nor their plan for taking depositions can be considered overly burdensome." Pl. Opp. at 3. On the contrary, and by way of example, Plaintiffs served Defendants with a second request for entry upon land to re-inspect the Federal government's execution facility in Terre Haute, Indiana. That request is unreasonably cumulative or duplicative since Plaintiffs had ample opportunity to obtain the information sought during their March 10, 2007 inspection of the Federal government's execution facility. Plaintiffs had two attorneys present along with an expert witness, a photographer and a videographer, who spent several hours in the facility. The execution facility is within a highly secured Federal correctional complex. The execution facility itself is highly secured. Any re-inspection of the execution facility would be extremely burdensome, requiring the Federal Bureau of Prisons to make special arrangements for the inspection, including special security precautions, set-up of the facility and the provision of additional staff.

Moreover, the first inspection was the subject of an exchange of correspondence prior to the inspection laying out the contours of the conduct of the inspection. Plaintiffs inspected the Federal government's execution facility pursuant to the terms specified in the undersigned counsel's letters dated February 23, 2007 and March 2, 2007. Plaintiffs knew at that time what

the limitations were and chose to go forward with the March, 2007 inspection.

In addition to their extremely burdensome request to re-inspect the Federal government's execution facility, the rest of Plaintiffs' second set of discovery requests are extremely cumulative and burdensome as well. Plaintiffs served, <u>inter alia</u>, sixty-five additional requests for production of documents and thirty-two requests for admissions. When Plaintiffs served their second set of requests, Defendants already had supplemented their earlier responses and were in the process of additional supplementation of those responses. Plaintiffs argue that Defendants had failed to "produce relevant documents known to be within their possession," Pl. Opp. at 3, but we understand their vague reference to be to materials that were created <u>after</u> Defendants served their responses to Plaintiffs' first set of discovery requests. As noted, Defendants were in the process of supplementing their responses when Plaintiffs served the extremely burdensome second set of requests. Plaintiffs seem to recognize this problem and argue that "most if not all of the documents requested in their second set were called for in their first set of discovery requests." Pl. Opp. at 3. This is simply to concede that the second set of requests were unreasonably cumulative and duplicative. If Plaintiffs truly believed that Defendants' discovery responses and supplements had been "anemic," as they argue in their Opposition, their remedy would have been to move to compel.

In addition, the taking of the approximately twenty-five depositions in this case, which Plaintiffs have said they are seeking, would be burdensome given the unique nature of this case and the logistical arrangements that will need to be made in order to ensure the anonymity of certain deponents as per the protective order. Plaintiffs respond that they are willing to conduct depositions at any place of Defendants' choosing. That is not responsive, because the counsel for

the parties are here and the witnesses are located throughout the country. No matter where the depositions are held, the vast majority of the depositions will involve significant travel and preparation time. In addition, the vast majority of the witnesses would be called away from their critical corrections duties during the time devoted to preparation and depositions.

Plaintiffs' only response to an important reason supporting the grant of a stay in this case, that discovery in this case raises important privilege issues, is that the discovery disputes have been resolved. It is not clear that all discovery disputes have been resolved. In any event, Plaintiffs' argument is non-responsive. In Chavous, Judge Robinson has expressly held that the significant privilege issues presented by the plaintiffs' discovery requests in that case warranted the conclusion that permitting discovery before the need for such discovery ultimately was determined would be wasteful and inefficient. Chavous, 201 F.R.D. at note 4 (citing Coastal States Gas Corp., 84 F.R.D. at 282 and Maljack Prod., Inc. v. Motion Picture Ass'n of Am., No. CIV. A. 90-1121, 1990 WL 157900, at *1 (D.D.C. Oct. 3, 1990) ("avoidance of potentially unnecessary discovery is warranted" where a motion to dismiss is pending and plaintiff would not be prejudiced by a stay of discovery pending determination of the motion to dismiss)). Were discovery to go forward in this case, significant issues are sure to arise as to the conduct of the depositions in this case. Thus, a stay of discovery pending the determination of a dispositive motion "is an eminently logical means to prevent wasting the time and effort of all concerned, and to make the most efficient use of judicial resources." Coastal States Gas Corp. v. Department of Energy, 84 F.R.D. 278, 282 (D. Del. 1979) (citations omitted).

    3.    <u>Plaintiff Inmates Will Not Be Prejudiced by a Stay of Discovery</u>.

Defendants' motion for stay explained that Plaintiffs will not be prejudiced by the entry

of a stay of discovery at this time. Plaintiffs are federal death row inmates. If Defendants' dispositive motion were to be denied, the parties simply can pick up with discovery where they left off, which, at this juncture, is much more efficient for the parties and the Court. Plaintiffs' response simply is to set up a speculative straw argument, asserting that if the Court were to stay discovery and then deny Defendants' dispositive motion, that discovery in this case could have closed in the interim, which, they argue, would be "grossly unfair." Pl. Opp. at 4-5. First, Plaintiffs' argument is wrong on the facts. Plaintiffs squandered their opportunity to conduct discovery as explained above, for example by taking the position that they could not begin <u>any</u> depositions until they had obtained an order from the Court enlarging the number of depositions permitted.[2] Defendants' opposition reasonably argued that Plaintiffs could take the ten depositions they are permitted under the Court's scheduling order and, if necessary, could seek additional depositions at a later date. The Magistrate Judge ruled on the issue concerning the deposition limits in a May 2, 2007 Minute Entry, allowing the Plaintiffs to conduct 84 hours of depositions, without any limit on the number of witnesses or depositions. Defendants objected to that ruling. Document No. 46. Those objections remain pending before the Court.[3] Given the

---

[2] Without having conducted a single deposition, on April 27, 2007, Plaintiffs moved for the taking of "additional depositions," Document No. 37, beyond the limit of ten depositions established in the Court's scheduling order of December 6, 2006. Throughout their Opposition, Plaintiffs try to shift the blame for any delay in this case to Defendants, arguing that negotiations over the Privacy Act protective order caused a delay. First, the parties knew about the need for such an order at the outset of this case. Second, Plaintiffs could have conducted discovery after the Magistrate Judge entered a protective order governing the confidentiality of certain information, including the names and other identifying information of those who perform the Federal government's executions and who participated in developing the protocols for those executions.

[3] Plaintiffs argue that "it appears that the Court endorsed the Magistrate Judge's ruling on this point in its June 4, 2007, decision . . . ." Pl. Opp. at 3. That remains an open question.

Court's broad discretion over the conduct of discovery, the Court "should not hesitate to exercise appropriate control over the discovery process." Herbert v. Lando, 441 U.S. 153, 177 (1979).

Second, Plaintiffs are simply speculating that should that contingency arise (discovery is stayed, closes, and then Defendants' dispositive motion is denied) that Defendants would not consent to any extension of the discovery period and the Court would not grant any such extension. There is no basis for Plaintiffs' argument. In fact, Defendants' motion to stay discovery explicitly stated that "[s]hould Defendants' motion be denied, the parties could simply pick back up with discovery where they left off." Def. Mot. at 6. Defendants will, of course, cooperate with Plaintiffs in that event.

    4.    <u>The Original Schedule in This Case did not Contemplate the Far-Reaching Discovery Plaintiffs have Sought</u>.

Plaintiffs next argue that Defendants should have waited until after discovery to file a dispositive motion. Pl. Opp. at 5, n.4. Defendants' pending motion does not address the merits of this case but instead speaks only to threshold issues. As we previously explained, it was appropriate to file that motion at this time and we will not repeat that explanation here. Intervenor-Plaintiffs Hall and Battle then argue that Defendants "lured" them into this case, only to then "change tactics." Pl. Opp. at 5, n.5. Of course, it was Hall and Battle who moved to intervene. Defendants did not request them to do so. If Hall and Battle truly believe that their chances are better in another district, they can withdraw from this case and file their claims in the districts where their criminal cases were tried or in the district where they are incarcerated.

---

There is no order on the docket of this case linked to Defendants' objections and the Court's June 4, 2007 Order does not mention Defendants' objections.

For these reasons, a stay of the conduct of discovery in this case is warranted.

Respectfully submitted,

   s/Jeffrey A. Taylor   
JEFFREY A. TAYLOR, D.C. BAR # 498610
Interim United States Attorney

   s/Rudolph Contreras   
RUDOLPH CONTRERAS, D.C. BAR #  434122
Assistant United States Attorney

   s/Peter S. Smith   
PETER S. SMITH, D.C. BAR # 465131
Assistant United States Attorney
United States Attorney's Office
Civil Division
555 4th Street, N.W.
Washington, D.C. 20530
(202) 307-0372