UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| JAMES ROANE, JR., et al., | ) | |
| Plaintiffs, | ) | |
| ANTHONY BATTLE, ORLANDO HALL, BRUCE WEBSTER, | ) | |
| Plaintiff-Intervenors, | ) | Civil Action No. 05-2337 (RWR) |
| v. | ) | |
| ALBERTO GONZALES, et al., | ) | |
| Defendants. | ) | |

**DEFENDANTS' REPLY TO PLAINTIFFS' OPPOSITION TO DEFENDANTS' CORRECTED MOTION FOR JUDGMENT ON THE PLEADINGS AND MOTION TO LIFT THE STAYS CURRENTLY IN PLACE**

Each of the Plaintiffs and Plaintiff-Intervenors have been incarcerated under a sentence of death for more than ten years. Nonetheless, despite their numerous appeals conducted over many years, Plaintiffs and Plaintiff-Intervenors waited until the setting of their execution dates were imminent to file or intervene in this lawsuit and seek a stay of their execution dates. Defendants' Motion for Judgment on the Pleadings explained that Plaintiffs' and Plaintiff-Intervenors' (hereinafter "Plaintiffs") delay in bringing these claims requires the dismissal of this lawsuit. First, this lawsuit should be dismissed on equitable grounds, as an "eleventh-hour" challenge to their imminent executions, ultimately coming "too late in the day." Hill v. McDonough, 126 S.Ct. 2096, 2104 (2006). Second, this lawsuit should be dismissed because it is barred by the applicable statute of limitations. Defendants also moved to lift the stays of Plaintiffs' executions, and the Court should grant that motion.

Plaintiffs' arguments in response to Defendants' motions are unconvincing. In fact, Plaintiffs raise many of the same merits arguments recently rejected by the United States Court of Appeals for the Eight Circuit in Taylor v. Crawford, 487 F.3d 1072 (8th Cir. 2007).

A.   Plaintiffs' Eleventh Hour Challenge to the Federal Government's Method of Execution is Barred.

The United States Supreme Court observed in Hill v. McDonough, that "a number of federal courts have invoked their equitable powers to dismiss suits they saw as speculative or filed too late in the day." 126 S.Ct. 2096, 2104 (2006) (citing, inter alia, Hicks v. Taft, 431 F.3d 916 (6th Cir. 2005) and White v. Johnson, 429 F.3d 572 (5th Cir. 2005)). Plaintiffs construe these decisions to be applying the doctrine of laches. Opp. at 5. However, the decisions Defendants have cited discuss the district courts' equitable powers generally and do not refer to this basis for dismissal as a "laches" affirmative defense.

That fact notwithstanding, Plaintiffs claim that Defendants are asserting the affirmative defense of laches and that Defendants waived that defense, inter alia, by failing to raise the defense in their answer to the Amended Complaint. First, in certain instances, an affirmative defense can be raised by motion. See generally 61 A Am. Jur. 2d Pleading § 288. Second, regardless, amendment of pleadings should be freely granted. Fed. R. Civ. P. 8. Third, in the context of this case, the parties had reached an agreement that the Plaintiffs would file an omnibus amended complaint conforming their claims and that Defendants would answer that amended complaint. Document No. 39. Thus, Defendants cannot possibly have waived a defense when their obligation to answer the omnibus complaint has not yet arisen. This stands in stark contrast to the fact that Plaintiffs have failed to amend their complaint as set forth in the

parties' stipulation.  Document No. 39.  Moreover, as noted above, Plaintiffs take no issue with the cases cited by Defendants in the specific context of challenges to methods of execution.  For example, in Workman v. Bredesen, 2007 WL 1311330 (6th Cir., May 7, 2007), the United States Court of Appeals for the Sixth Circuit held that the plaintiff had raised his challenge to his method of execution, lethal injection, "too late in the day."  Workman, supra at *13 (citing Hill v. McDonough, 126 S.Ct. at 2104).  See also Harris v. Johnson, 376 F.3d 414, 417 (5th Cir. 2004).  Instead, they rely generally on cases discussing laches.  See Opp at 5-7, 13.  Plaintiffs thus seem to have ignored the weight of authority specifically on point.

  In contravention of their laches arguments, Plaintiffs then argue that they did not unduly delay in bringing their suit.  Opp. at 8.  Plaintiffs also argue that the government has "misread" Neville v. Johnson, 440 F.3d 221, 222 (5th Cir. 2006), holding that a "challenge to a method of execution may be filed at any time after the plaintiff's conviction has become final on direct review."  See Opp. at 8.  Plaintiffs argue that a claim may be ripe, but not have accrued.  Id.  Plaintiffs seem to believe that they can bring their challenge at any time.  It is Plaintiffs who are confusing the issues.  When a claim "accrues" is relevant to the Court's statute of limitations inquiry.  Plaintiffs simply are conflating Defendants' equitable arguments with the statute of limitations arguments.  See, e.g., Opp. at 12 (discussing statute of limitations cases when addressing Defendants' equitable argument).

  Plaintiffs then claim that the government is estopped from raising any equitable arguments, because, they argue, the United States took a different position previously in Section 2255 proceedings in unrelated cases.  First, the Court of Appeals has observed "the Supreme Court's powerful cautions against application of the doctrine [of equitable estoppel] to the

government." Rann v. Chao, 346 F.3d 192 (D.C. Cir. 2003) (citing OPM v. Richmond, 496 U.S. 414, 419-24 (1990)), cert. denied, 543 U.S. 809 (2004).  Second, Plaintiffs claim that the government filed papers in § 2255 proceedings stating that the inmates' claims were not ripe. See Pl. Ex. 1.  The government's argument in this case concerns the fact that nothing prevented Plaintiffs from bringing this civil action much earlier, and, in fact, they should have.  See Opp. at 8 and Ex. 1 (government's papers in § 2255 proceedings).

Plaintiffs then argue that it would have been a "waste of time and resources" to have brought these claims at the time they exhausted their direct appeals.  Opp. at 9.  Plaintiffs rely upon the dissent of a denial of rehearing en banc in Cooey v. Strickland, 489 F.3d 775 (6th Cir. 2007).  The majority in that case rejected the arguments Plaintiffs are raising.  See also Nooner v. Norris, 2007 WL 1964649 (8th Cir. July 9, 2007) (vacating a stay of execution on the basis that the inmate could have brought the challenge to the State's lethal injection protocol years earlier, once the conviction and sentence were final on direct review).

Plaintiffs next maintain that, even if they delayed in bringing this lawsuit, the Defendants cannot show any prejudice occasioned by their delay.  First, the United States Supreme Court has unequivocally stated otherwise.  Hill, 126 S.Ct. at 2104.  Second, Plaintiffs analysis would lead to absurd results.  Plaintiffs in cases such as this one could bring suit at any time up to the moment of their execution.  That is exactly what the courts have rejected.

Plaintiffs' opposition evidences a fundamental tension throughout.  They claim that even now they know very little about the specifics of the Federal lethal injection protocol, Opp. at 10, yet they filed this lawsuit in 2005.  As we explained in our opening brief, the Federal execution

of Timothy McVeigh, which was conducted in 2001 by lethal injection, was highly publicized.[1] Plaintiffs have failed to identify anything that they learned in 2005, when they filed their complaint, that they did not know, or could not have known, as of June, 2001. First, as explained, the McVeigh execution was widely and publicly reported.[2] The media coverage of the McVeigh execution specifically noted the use of the three-chemical protocol Plaintiffs challenge in this case and some reported additional details of the execution. Id. Second, each of the complaints in this case cites examples of alleged problems in executions by lethal injection conducted by the States going back to the 1970s and 1980s, a point Plaintiffs do not address and cannot deny. See Battle Compl. at ¶¶ 40 (alleging failure of IV lines in state executions by lethal injection), 41 (alleging problems with access to inmate's veins during execution by lethal injection); Hall Compl. at ¶ 43 (referring to Webster's Complaint); Webster Compl. at ¶ 41 (alleging failure of equipment in executions by lethal injection dating back to 1977); Am. Compl. at ¶ 45 (same). Moreover, during that same time period, numerous challenges to State lethal injection protocols were going forward. See, e.g., Sims v. State, 754 So.2d 657, 668 (Fla. 2000); State v. Webb, 252 Conn. 128, 750 A.2d 448, 453-57 (Conn. 2000). In Hill, the Supreme Court held that "in light of this context [other pending challenges to lethal injection], Hill cannot claim that it was impossible for him to initiate his federal suit any earlier." 126 S.Ct. at 2158.

Rather than taking any action at that time, Plaintiffs' Amended Complaint makes clear that they filed their complaint approximately two weeks before their execution dates were set. Am. Compl. at ¶ 22. Plaintiff-Intervenor Webster actually had an execution date scheduled when

---

[1] See  http://archives.cnn.com/2001/LAW/06/11/mcveigh.02.index.html.

[2] See http://archives.cnn.com/2001/LAW/06/11/mcveigh.02.index.html.

he intervened in this lawsuit. Webster Compl. at ¶ 20 (execution scheduled for April 16, 2007). Hall and Battle moved to intervene shortly before their execution dates would have been scheduled. As in the Workman case, Plaintiffs and Intervenor-Plaintiffs had opportunities to avoid the situation in which the only way to litigate the validity of the Federal government's execution protocol would be to stay their executions.[3]

Thus, this is the kind of "dilatory" suit from which "federal courts can and should protect" the government, which has a strong interest in carrying out Plaintiffs' and Plaintiff-Intervenors' judicial sentences. Hill, 126 S.Ct. at 2104. See also Jones v. Allen, 485 F.3d 635, 2007 WL 1225393 at *3 n.3, cert. denied, 127 S.Ct. 2160 (May 3, 2007) (noting that delay in filing lethal-injection challenge could not be justified on ground that inmate knew little about the procedure because the thrust of the challenge went to the impermissibility of the same three-chemical procedure that most States use). Plaintiffs, and Plaintiff-Intervenors, all of whom are inmates sentenced to death, have an obvious and strong motive to delay the implementation of their Federal judicial sentences.

C.     Plaintiffs' Claims Are Barred by the Applicable Statute of Limitations.

There is no dispute that since Plaintiffs and Plaintiff-Intervenors have abandoned any claims against Defendants in their individual capacities, their claims are subject to the general six-year statute of limitations on lawsuits against the Federal government. See 28 U.S.C. § 2401

---

[3] As the United States Court of Appeals for the Fifth Circuit ruled in Neville v. Johnson, 440 F.3d 221, 222 (5th Cir. 2006): "A challenge to a method of execution may be filed at any time after the plaintiff's conviction has become final on direct review." For the Plaintiffs, that was in 1997. 520 U.S. 1253 (1997); Am. Compl. at ¶ 22. For Webster and Hall, that was in 1999. United States v. Hall, 526 U.S. 1117 (1999); United States v. Webster, 528 U.S. 829 (1999). For Battle, that was during 2000. Battle Compl. at ¶ 19.

("Every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues"). Plaintiffs do not claim that they were unaware that they would be executed by lethal injection. Instead, they argue that they are challenging the process by which their executions will be carried out.

In response to Defendants' motion, Plaintiffs first make the surprising argument that statutes of limitations do not apply to suits seeking injunctive relief to bar an alleged violation of their Constitutional rights. Opp. at 14. See also Opp. at 15 (arguing statutes of limitations inapplicable because Plaintiffs' injuries have yet to occur). For these propositions, Plaintiffs rely upon, inter alia, Grayson v. Allen, 2007 WL 1491009 (M.D. Ala. May 21, 2007). Opp. at 15. However, the Grayson case actually supports Defendants' position. In Grayson, the district court dismissed the inmate's Section 1983 action challenging Alabama's lethal injection protocol because the inmate had unreasonably delayed in bringing the claim. That decision was affirmed on appeal to the United States Court of Appeals for the Eleventh Circuit. Grayson v. Allen, – F.3d – (11th Cir. July 16, 2007), cert. denied, (July 26, 2007). The district court held, inter alia, that the inmate could have filed a Section 1983 action earlier and that the confidentiality of the state's execution protocol did not impede the inmate from filing the claim earlier. Significantly, Grayson's knowledge of technical lethal injection matters, the court held, was based upon the expert opinion of Dr. Mark Heath. 2007 WL 1491009 at * 5. The district court noted that the Eleventh Circuit recently had held that death row inmate Jones should have known about substantially similar lethal injection challenges because the expert upon whom Jones relied, Dr. Heath, has been opining about the alleged risks of lethal injection since at least 2002. Id. (citing Jones v. Allen, 485 F.3d 635 (11th Cir.), cert. denied, 127 S.Ct. 2160 (2007)). The same can be

said for the Plaintiffs in this case.

Moreover, Plaintiffs rely on United States Supreme Court cases dating to 1945 and 1946 that are inapposite. See, e.g., Holmberg v. ArmBrecht, 327 U.S. 392 (1946). Holmberg concerned a suit in equity; the Federal Rules of Civil Procedure have done away with such suits. Fed. R. Civ. P. 1. Furthermore, in Holmberg, there was no specific legislative statute of limitations to apply. The Court observed that when "Congress explicitly puts a limit upon the time for enforcing a right which it created, there is the end of the matter." Id. at 395. Similarly, in Chase Securities Corp. v. Donaldson, 325 U.S. 304 (1945), unlike the instant case, the Court stated that "[t]his is not a case where appellant's conduct would have been different if the present rule [statute of limitations] had been known and the change foreseen." Id. at 316. The Court so held because the issue in that case involved a change of the applicable law during the pendency of the suit. Id. at 306. Finally, these two Supreme Court cases were decided prior to the enactment of the APA, which occurred in the 1970s.

It is now settled that Constitutional claims are applicable to Federal government through the APA, which is subject to the general six-year statute of limitations. Giel v. Winter, 2007 WL 2298238 (D.D.C. Aug. 10, 2007). That provision is jurisdictional and cannot be waived. Fed. R. Civ. P. 12(h); Daingerfield Island Protective Society v. Babbitt, 40 F.3d 442 (D.C. Cir. 1995) (citing National Treasury Employees Union v. IRS, 765 F.2d 1174, 1176 n.1 (D.C. Cir. 1985) (noting that under the usual rule an affirmative defense is deemed to be waived if it has not been raised in a pleading, by motion, or at trial)); Kroot v. District of Columbia, 800 F.Supp. 976, 980 n.6 (1992).

Plaintiffs then claim that they fall under the "continuing violation" exception to a statute

of limitations. First, that argument conflicts with their earlier argument that they do not know much about the Federal government's lethal injection protocol. Second, that doctrine is of dubious vitality in this Circuit. In fact, recent Supreme Court cases seem to have significantly cabined the doctrine. For their argument, Plaintiffs do not rely on any cases concerning challenges to the lethal injection method of execution. Instead, Plaintiffs cite Heard v. Sheahan, 253 F.3d 316, 320 (7th Cir. 2001) and Pitts v. City of Kankakee, Illinois, 267 F.3d 592 (7th Cir. 2001). The latter case refers to the then pendency of the known well-known Morgan case, which ultimately was decided by the Supreme Court. 267 F.3d at 595 (discussing Morgan). See National Railroad Passenger Corp. v. Morgan, 536 U.S. 101, 110 (2002). In Morgan, an employment discrimination case, the Supreme Court held that discrete acts of discrimination or retaliation that occur outside the statutory time period "are not actionable if time barred, even when they are related to acts alleged in a timely filed charge." 536 U.S. at 113. As the Court of Appeals observed, Morgan "foreclosed the use of the "continuing violation" doctrine to restore an untimely claim . . . ." Shea v. Rice, 409 F.3d 448, 451 (D.C. Cir. 2005). Plaintiffs rely upon cases that were decided prior to the Supreme Court's decision in Morgan. See Opp. at 16 (citing, e.g., Gonzales v. N. Township of Lake County, 800 F.Supp 676, 684 (N.D. Ind. 1992) (involving First Amendment challenge to stone monument)). Plaintiffs next argue that they were not on notice of the manner and means of their executions. That argument was dealt with above.

     Plaintiffs next argue that statute of limitations issues cannot be resolved at this stage of the proceedings. Opp. at 17 (citing Richards v. Mileski, 662 F.2d 65, 73 n.13 (D.C. Cir. 1981) and Jones v. Rogers Mem. Hosp., 442 F.2d 773, 775 & n.2 (D.C. Cir. 1971)). The Court of Appeals specifically has held that it is at the initial stage of the case that these issues should be

addressed and that they may be resolved even prior to discovery. See, e.g., Smith-Haynie v. District of Columbia, 155 F.3d 575, 579 (D.C. Cir. 1998) (concerning whether Title VII's "statute of limitations should have been equitably tolled"). Plaintiffs cite Cobell v. v. Babbitt, 30 F.Supp.2d 24, 44 (D.D.C. 1998), in which Judge Lamberth simply declined to rule on the issue, there was no suggestion that he could not have done so.

   Plaintiffs then argue that Defendants have waived the statute of limitations defense. Opp. at 18. Defendants have asserted the defense by motion, as is their right. Moreover, for the reasons set forth above, Defendants will be able to file an answer or other response to the as-yet-unfiled amended complaint setting forth this defense. Plaintiffs then argue that their claims could not have accrued until they had actual notice of the manner and means of their executions. Opp. at 18-19. However, a claim accrues for purposes of a statute of limitations when a plaintiff has actual or constructive knowledge. Stokes v. United States Postal Service, 937 F.Supp. 11, 17 (D.D.C. 1996) (discussing accrual of FTCA claims as when plaintiff knew or reasonably should have known about the alleged injury and the injury's cause). Plaintiffs again argue that they are not challenging the "fact of execution by lethal injection," but instead the "manner and means by which their executions by lethal injection will be carried out." Opp. at 19. First, Plaintiffs knew, or reasonably should have known about the Federal government's lethal injection protocol well before they filed suit in 2005. In an effort to avoid this outcome, Plaintiffs define the "protocol" at issue in a very fact intensive way, as including the "certifications, training or licensure for those who participate in executions." Opp. at 19. Court have rejected that argument. See, e.g., Grayson v. Allen, – F.3d – (11th Cir. July 16, 2007), cert. denied, (July 26, 2007). Contrary to the arguments in their brief, Plaintiffs did, or could have known, about the three chemicals used

in Federal executions by lethal injection, the general process, and the method of IV access long before 2005.[4] Moreover, unlike in Cristwell v. Veneman, 224 F.Supp.2d 54, 58 (D.D.C. 2002), which Plaintiffs cite on page 20 of their Opposition, the Federal government has not "taken active steps to prevent plaintiff[s] from litigating [their] claim[s]." Opp. at 20.

As explained in Defendants' motion, the claims advanced in this lawsuit accrued no later than the exhaustion of Plaintiffs' and Plaintiff-Intervenors' direct appeals. Anthony Battle was the last inmate in this case to exhaust his direct appeal, in 2000, more than six years before he intervened in this litigation in 2007. Battle Compl. at ¶ 19 (Battle's direct appeals ended in 2000). See Neville v. Johnson, 440 F.3d 221, 222 (5th Cir. 2006) ("A challenge to a method of execution may be filed at any time after the plaintiff's conviction has become final on direct review."). Plaintiffs filed this lawsuit in December, 2005. Document No. 1. Their direct appeals had been exhausted in 1997, eight years earlier. Plaintiff-Intervenors Webster and Hall moved to intervene in 2007, more than six years after their direct appeals had been exhausted in 1999.

D.    The Court Should Lift the Stay of Executions.

Plaintiffs devote the majority of their opposition to Defendants' motion to making emotional appeals arguing the merits of their claims as they relate to the government's motion to lift the stays. Although Plaintiffs argue that they require additional discovery before responding to the government's motion, they have not filed a Fed. R. Civ. P. 56(f) affidavit. Opp. at 4. Plaintiffs claim that Defendants have made no showing that continuing the stays "would harm

---

[4] In fact, Plaintiffs claim that they could not have known about the Federal government's method of IV access until June 26, 2007 when they assert that "information became available for the first time." Opp. at 20 (emphasis omitted). That information was publicized in connection with the execution of Timothy McVeigh.

them or the public interest." Opp. at 21. In <u>Hill v. McDonough</u>, the Supreme Court observed that filing "an action that can proceed under § 1983 does not entitle the complainant to an order staying the execution as a matter of course. Both the state and the victims of crime have an important interest in the timely enforcement of a sentence." <u>Hill</u>, 126 S.Ct. at 2104 (citing <u>Calderon v. Thompson</u>, 523 U.S. 538, 556 (1998)).

Plaintiffs first argue that the government is estopped from moving to lift the stays. Opp. at 22. The basis of this argument is difficult to understand. The referenced stipulation, Document 39, at Paragraph 1, says that: "Defendants do not intend to take any action inconsistent with the proposed orders for preliminary injunction sought by Movants Hall and Battle until the Court has ruled on the associated motions for a preliminary injunction." The Court granted Hall and Battle's motions. <u>See</u> Opp. at 23 (conceding that the representation in the stipulation "continued unaltered on the record through the time when the Court granted the preliminary injunctions for Battle and Hall on June 11, 2007."). It is odd that Plaintiffs would argue <u>detrimental</u> reliance, when their requested preliminary injunctions were, in fact, entered by the Court. And we are confused as to what detriment Battle and Hall have suffered. Accordingly, Plaintiffs' extended discussion of estoppel is irrelevant. <u>See, e.g.</u>, Opp. at 24. If Plaintiffs are arguing that they detrimentally relied on the expectation that the government would never move to lift the stays, that is neither an explicit term of the stipulation nor a reasonable expectation.

Plaintiffs stretch their credibility in arguing that Defendants did not correctly set forth the standard for the issuance of preliminary injunctive relief. Plaintiffs claim that Defendants did so by "implying that the Court should weigh all four elements of the standard equally." Opp. at 26. In fact, Defendants made clear that the Court must balance the various factors. Def. Memo. at 18

(citing CityFed Fin. Corp. v. Office of Thrift Supervision, 58 F.3d 738, 747 (D.C. Cir. 1995)). Moreover, Plaintiffs ignore specific law governing the issuance of stays of executions. A stay of execution is warranted only when an inmate satisfies "all of the requirements for a stay, including a showing of a significant possibility of success on the merits." Hill, 126 S.Ct. at 2104 (citing Barefoot v. Estelle, 463 U.S. 880, 895-96 (1983) and Mazurek v. Armstrong, 520 U.S. 968, 972 (1997) (per curiam) (preliminary injunction not granted unless the movant, by a clear showing, carries the burden of persuasion)). The Hill Court also observed that a "court considering a stay must also apply 'a strong equitable presumption against the grant of a stay where a claim could have been brought at such a time as to allow consideration of the merits without requiring entry of a stay.'" Id. (quoting Nelson, supra, at 650). See also Gomez v. United States Dist. Ct. for the N. Dist. of Cal., 503 U.S. 653, 654 (1992) (per curiam) (noting that the "last-minute nature of an application" or an applicant's "attempt at manipulation" of the judicial process may be grounds for denial of a stay).

The government argued that Plaintiffs have little likelihood of success on the merits. Plaintiffs rely in their response on many of the same arguments, based upon the same expert, that were rejected by the United States Court of Appeals for the Eighth Circuit in Taylor v. Crawford, supra. At bottom, Plaintiffs' allegations are speculative, which is in part why they were rejected by the Eighth Circuit. Moreover, there have been no problems documented to date in Federal executions, and none are listed in Plaintiffs' complaints.

Plaintiffs complain that the Federal government will fail to assure that they are adequately anesthetized, Opp. at 29, and will fail to continually monitor "anesthetic depth." Opp. at 30. Plaintiffs also argue that the Court should apply the medical standard of care to the execution

procedures, Opp. at 32, that the Federal government's record-keeping, training, and preparation and delivery of lethal substances are flawed, Opp. at 33, 36, and they complain about the government's method of IV access. Opp. at 45.

First, there is no legal requirement for many of the above-stated practices and procedures that Plaintiffs' allege are required. As previously noted, many of these same points recently were rejected by Eighth Circuit. In his testimony in the trial court, see Ex. 1 attached, the State's expert, Dr. Mark Dershwitz testified that Missouri had sufficient checks and balances against error because it used labeled syringes and followed a protocol. Ex. 1 at 13. Dr. Dershwitz opined that 5 grams of Sodium Pentothol would put the average person to sleep for 13 hours. Id. at 19. He also testified that the mixing of Sodium Pentothol is not difficult, id. at 27, and that the placing a femoral line is "pretty painless." Id. at 29. In addition, he explained that the femoral vein is the easiest vein to access and that once the line is placed it is likely to stay in place. Id. at 30-31. In addition, the BOP protocol addendum, Pl. Ex. 4 (R), Paragraph J, requires that the condemned individual be unconscious as determined by qualified personnel prior to the second and third lethal substances being administered. In addition, qualified personnel are defined as having the necessary training or experience in the specific function they will be performing in the execution. Id. at Paragraph D.

Plaintiffs do not dispute that "[t]he Supreme Court has never invalidated a State's chosen method of execution. No court has invalidated the three-drug protocol used by Tennessee (and 29 other jurisdictions)." Workman v. Bredesen, supra at *8. See also Taylor v. Crawford, 2007 WL 1583874 (8th Cir., June 4, 2007); Beardslee v. Woodford, 395 F.3d 1064, 1075 (9th Cir. 2005); Cooper v. Rimmer, 379 F.3d 1029, 1033 (9th Cir. 2004); Walker v. Johnson, 2006 WL

2619857 (E.D. Va. 2006); Crowe v. Head, 426 F. Supp.2d 1310, 1353 (N.D. Ga. 2005); see also Abdur'Rahman v. Bredesen, 181 S.W.3d 292 (Tenn. 2005); State v. Webb, 750 A.2d 448 (Conn. 2000); Sims v. State, 754 So.2d 657 (Fla. 2000).

Instead, they level the same criticisms at issue in Taylor v. Crawford, 487 F.3d 1072 (8th Cir. 2007) and rejected by the United States Court of Appeals for the Eighth Circuit. The inmate in that case relied on the same expert, Dr. Mark Heath, who has testified for Plaintiffs in this case. Id. at 1076 (describing Dr. Heath's criticisms as including the alleged lack of a written protocol, purported lack of chemical logs, and the need for an anesthesiologist or nurse trained in that field to oversee the execution). The Eighth Circuit noted that Dr. Heath admitted that either a 2.5 gram or a five gram dose of Sodium Pentothal would be sufficient for a humane execution. Id. See also Abdur'Rahman v. Bredesen, 181 S.W.3d 292 (Tenn. 2005) (same). The court then summarized the testimony of the State's expert, Dr. Mark Dershwitz, an anesthesiologist, who testified that rapid sequence inducement of unconsciousness is achieve in approximately 45 seconds with a dose of as little as 0.3 to 0.4 grams of Sodium Pentothal. Id. He also testified that mixing Sodium Pentothal is not a difficult task, and that putting the inmate to sleep is easy. Id. The Eighth Circuit specifically rejected the inmate's argument that it should consider the risk of accident as Constitutionally significant. Id. at 1080.

The Eighth Circuit upheld Missouri's protocol, stating that it provides medical personnel with discretion to determine the best place to insert the IV lines and requires that the personnel be qualified. Id. at 1083. The court specifically rejected Plaintiffs' argument in this case that continuous monitoring of "anesthetic depth" is constitutionally required. Id. at 1084 (because of large dose, there is no need for continuing careful monitoring by an anesthesiologist or one

trained in that field).  The court held that the "Constitution does not require the use of execution procedures that may be medically optimal in clinical contexts."  Id. at 1084 (citation omitted).

In addition, Plaintiffs do not dispute that the Supreme Court has never invalidated a State's (or the Federal government's) chosen method of execution.  Workman, supra at *8 (citing, inter alia, Wilkerson v. Utah, 99 U.S. 130, 134-35 (1878) (holding that the use of a firing squad was not cruel and unusual); In re Kemmler, 136 U.S. 436, 446-49 (1890) (declining to apply the Eighth Amendment to the States); State of La. ex rel. Francis v. Resweber, 329 U.S. 459, 464 (1947) (plurality) ("We cannot agree that the hardship imposed upon the petitioner rises to that level of hardship denounced as denial of due process because of cruelty.")).

As explained in the government's motion, various courts have rejected challenges to lethal injection protocols using the same three-chemicals used by the Federal government.  See, e.g., Abdur'Rahman, 181 S.W.3d at 297-98; Aldrich v. Johnson, 388 F.3d 159, 161 (5th Cir. 2004) (lethal injection in Texas); People v. Snow, 30 Cal.4th 43, 132 Cal. Rptr.2d 271, 65 P.3d 749, 800-01 (Cal. 2003); Sims v. State, 754 So.2d 657, 668 (Fla. 2000); State v. Webb, 252 Conn. 128, 750 A.2d 448, 453-57 (Conn. 2000); LaGrand v. Stewart, 133 F.3d 1253, 1265 (9th Cir. 1998) (lethal injection in Arizona).

Finally, the public interest prong of the test for an injunction supports the government's request to lift the stays.  Plaintiffs argue otherwise, but the Supreme Court clearly has stated that "A State's interests in finality are compelling when a federal court of appeals issues a mandate denying federal habeas relief."  Calderon v. Thompson, 523 U.S. 538, 556 (1998).

**CONCLUSION**

WHEREFORE, Defendants request that the Court lift its stay on the executions of Plaintiffs and Plaintiff-Intervenors and dismiss this lawsuit with prejudice. A proposed order is included.

Respectfully submitted,

   s/Jeffrey A. Taylor
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney

   s/Rudolph Contreras
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney

   s/Peter S. Smith
PETER S. SMITH, D.C. BAR # 465131
Assistant United States Attorney
United States Attorney's Office
Civil Division
555 4th Street, N.W.
Washington, D.C. 20530
(202) 307-0372

   s/Robert J. Erickson
ROBERT J. ERICKSON, D.C. Bar No. 220731
Principal Deputy Chief
Criminal Appellate Section
U. S. DEPARTMENT OF JUSTICE
950 Pennsylvania Avenue, NW
Room 1515
Washington, DC 20530
(202) 514-2841