UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JAMES ROANE, JR., *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> MICHAEL B. MUKASEY, *et al.*, <br><br> Defendants. | Civil Action No. 05-2337 (RWR/DAR) <br><br> **ORAL ARGUMENT REQUESTED** <br><br> **FILED UNDER SEAL** |

**REDACTED VERSION OF PLAINTIFFS' AND INTERVENOR PLAINTIFFS'
MOTION TO MODIFY THE PROTECTIVE ORDER AND
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

When discovery began in this case nearly one year ago, the Court, at the Defendants' request, entered an extraordinarily restrictive Protective Order, which allows the Defendants to shield from discovery information that is routinely discoverable in civil litigation, and which is potentially central to the Plaintiffs' case. The Court did so on the basis of representations by the Defendants with respect to steps they would take to ensure that the accommodation granted them would not impair the Plaintiffs' ability to obtain factual information necessary to litigate this case. It now appears, however, that the Defendants have reneged on their promises, and have used the Protective Order to gain a tactical advantage, by withholding from the Plaintiffs information that is (a) normally discoverable; (b) information that they agreed to provide; and (c) critical to Plaintiffs' case. Plaintiffs and Intervenor Plaintiffs (collectively "Plaintiffs") therefore respectfully request that the Court modify the Protective Order, vacating the Protective Order entered on February 23, 2007 (Doc. 30), and replacing it with the Protective Order attached

1

hereto as Exhibit 1 (*see* Ex. A to Ex. 1).[1]  Doing so would provide the Defendants with the protection they seek, while still allowing Plaintiffs to obtain information like that which has been wrongfully withheld from them.

Pursuant to Local Civil Rule 7(m), Plaintiffs have conferred with Defendants, who oppose this Motion.

## FACTS

As Plaintiffs have previously stated:

> There is little, if any, dispute that, if administered properly, [the drugs used by the defendants to execute condemned inmates] can end an individual's life in a manner consistent with the Eighth Amendment.  However, in case after case and jurisdiction after jurisdiction, these drugs have been administered by persons lacking necessary qualifications to deliver them appropriately, and in ways that cause severe pain and suffering to condemned inmates.  Thus, the training and qualifications of the persons who have devised the Execution Protocols, and who carry them out, are critical to plaintiffs' case.

Plaintiffs' Opposition to Defendants' Motion for Protective Order (Mar. 6, 2007) [Exh.1] at 2.  Recognizing that the three drugs generally used in lethal injection *can* be used in a constitutionally-permissible manner, the court in *Morales v. Tilton*, 465 F. Supp. 2d 972, 978 (N.D. Cal. 2006), found that a determination whether California's execution protocol was constitutionally sufficient "turn[ed] on a single factual question: whether [that protocol] *as implemented*, provides constitutionally adequate assurance that condemned inmates will be unconscious when they are injected with" those drugs (emphasis added).

Finding the record before it "replete with evidence that in actual practice [California's execution protocol] does not function as intended", the *Morales* court ultimately found California's execution protocol constitutionally defective.  One "critical deficienc[y]" it identified was "inconsistent and unreliable screening of execution team members." *Id.* at 979.

---

[1] This protective order was originally proposed by Plaintiffs.

Thus, it is clear that information concerning the qualification of the persons who administer lethal injection on behalf of the Defendants—including information regarding their arrest and disciplinary records—not only is relevant, but may be crucial to Plaintiffs' case. Given the importance of the qualifications of execution team members to the Plaintiffs' claims, Plaintiffs in this case sought to discover background information concerning those team members, including information about arrests and criminal background and disciplinary actions. However, Defendants, in order to preclude Plaintiffs from being able to conduct the routine background investigation ordinarily contemplated and allowed in most civil litigation, claimed that disclosure of the identities of execution team members could raise privacy and security concerns, potentially subjecting those team members to harassment and reprisals.

Sensitive to the concerns raised by the Defendants, Plaintiffs proposed a two-tiered protective order, under which Defendants could designate certain information—including information identifying execution team members—as "Highly Confidential," in which case that information would be available only to Plaintiffs' counsel and others, including investigators, working with them. *See* Ex. A to Ex. 1. The information would not be disclosed to the public, or even to the Plaintiffs themselves. Plaintiffs' proposed protective order would, however, allow Plaintiffs' counsel and investigators to conduct background investigations of the execution team members, subject to the restraints of the protective order. This would allow Plaintiffs' counsel to obtain information not only relevant, but potentially crucial, to Plaintiffs' claims, including information concerning the arrest and disciplinary records of execution team members.

Defendants, however, complained that even the extraordinary limits on disclosure of execution team members' identities contemplated by Plaintiffs' proposed protective order would jeopardize their privacy and safety. Defendants therefore insisted on a protective order under

3

which they would not be required to make *any* disclosure of execution team members' identities. Moreover, the protective order proposed by Defendants expressly forbade Plaintiffs from conducting any investigation concerning execution team members. In other words, Defendants' proposed protective order would give Defendants *complete* control over the information available to Plaintiffs concerning execution team members' qualifications.

Apparently recognizing the extraordinary nature of the restrictions they proposed, Defendants sought to lessen their impact by offering to "provide sufficient information about the participants in executions and the development of the Execution Protocol to permit the Court and the parties to evaluate the training, qualifications, experience and competency of those persons." Defendants' Motion for Protective Order and Memorandum of Points and Authorities in Support Thereof (Doc. 31) at 8. Defendants asserted that Plaintiffs could obtain all the information they needed through "anonymous interrogator[ies] or deposition[s]" and that "the government could do the search for plaintiffs and redact the names." Defendants' Reply to Plaintiffs' Opposition to Defendants' Motion for Protective Order (Doc. 33) at 9.

To resolve this issue, and to permit discovery to proceed, the parties ultimately entered into and the Court approved, a two-tiered compromise Stipulated Protective Order pursuant to which Defendants were required to supply the following information concerning those individuals identified by plaintiffs:

(a)   arrest record information;

(b)   performance-related employment history, including reasons for leaving prior jobs;

(c)   any disciplinary actions taken against each individual by any licensing authority or professional organization, or by BOP or any BOP contractor; and

(d)   any malpractice actions against each individual.

4

Stipulated Order (Doc. 35) ¶ 1. In addition to agreeing to "search[] BOP files and question[] the Relevant Individuals for information responsive to" these categories, Defendants also agreed to "attempt to obtain any available Background Information from all relevant licensing authorities and professional organizations." *Id.* at ¶ 3.

    Pursuant to the terms of the Stipulated Order, Plaintiffs immediately provided Defendants with a list of individuals for whom Plaintiffs sought this information. ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████





## ARGUMENT

Throughout discovery in this case, Defendants have struggled to prevent Plaintiffs from learning information concerning the qualifications of execution team members that is clearly relevant and discoverable, and to which Plaintiffs are clearly entitled. For example, in depositions, defense counsel instructed execution team members not to answer questions going to their experience and qualification. The Court later found these instructions to be "entirely groundless and without merit," and ordered that the witnesses be brought to the District of Columbia for redeposition. Tr. (Sept. 6, 2007) at 72-73.

Now, however, it appears that the Defendants have gone even further in their efforts to obfuscate than previously imagined. The Protective Order on which they insisted makes it impossible for the Plaintiffs to conduct their own investigation of execution team members' backgrounds and qualifications, and requires that Plaintiffs rely upon Defendants' good faith in

obtaining this necessary information. ████████████████████
████████████████████████████████████████████████
████████████████████████████████████ indicate that Plaintiffs cannot rely on Defendants' good faith, and that Plaintiffs cannot, and will not, obtain the information to which they are entitled, and which may be crucial to their case, unless they are permitted to conduct their own investigations, as would be the case in any other civil or criminal litigation.

What has occurred in this case is extraordinary. As a result of the Protective Order entered at the behest of the Defendants, Plaintiffs cannot investigate the Defendants' backgrounds. They cannot make investigative telephone calls; they cannot use internet search engines; Plaintiffs cannot undertake the very type of investigation that any other civil or criminal litigant can, under normal conditions, undertake. Reliance on the restrictive Protective Order was defensible when there was no reason to believe that the Defendants were not providing Plaintiffs with all relevant background information, but now it is readily apparent that the Defendants have not been reliable in this regard. It is time for the Court to revisit the overly restrictive terms of the Protective Order.

In assessing the need for, and terms of, a protective order, the Court must balance the Plaintiffs' need for the information Defendants seek to shield from discovery against "the harm which disclosure would cause." *AMFAC Resorts, LLC v. U.S. Dep't of Interior*, 143 F. Supp. 2d 7, 14 (D.D.C. 2001) (citation omitted). Under Rule 26(c), a protective order may be granted

_____

████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████

only upon a showing of "good cause," and before a party may be relieved of the obligation to produce otherwise-discoverable information, "it must be shown that disclosure will work a *clearly defined and serious injury* . . . and that the party resisting disclosure 'will indeed be harmed by disclosure.'" *Zenith Radio Corp. v. Matsushita Elec. Indus. Co.*, 529 F. Supp. 866, 891 (E.D. Pa. 1981) (citations omitted) (emphasis added). "The moving party must present a factual showing of *a particular and specific need for the protective order*. . . . '*Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test.*'" *Welsh v. City of San Francisco*, 887 F. Supp. 1293, 1297 (N.D. Cal. 1995) (citations omitted) (emphasis added).

The Defendants have failed to make a "particular and specific" showing of any "clearly defined and serious injury" that would result from disclosure, and the "[b]road allegations of harm" they made in support of their request for a protective order are "unsubstantiated by specific examples or articulated reasoning." *See generally* Plaintiffs' Opposition to Defendants' Motion for Protective Order (Doc. 32). Moreover, it now seems clear that the Defendants have improperly used the extraordinary protection granted them by the Protective Order in order to prevent, by deception, the Plaintiffs from obtaining critical information.

In order to permit Plaintiffs to obtain this necessary information, while at the same time protecting any legitimate privacy and security interests, Plaintiffs respectfully request that the Court vacate the current Protective Order and adopt instead the proposed protective order attached as Exhibit A to Exhibit 1. That protective order would require the Defendants to identify execution personnel, while allowing them to designate their identities as Highly Confidential information, thereby allowing Plaintiffs' counsel to conduct investigations, and obtain the information they need, while barring them from publicizing those identities, even to

their own clients. Because those identities would provide the Plaintiffs with highly relevant information, without implicating any of the "security" or "privacy" concerns relied upon by the Defendants, no good cause exists to continue the current regime, which permits Defendants to conceal the identities of execution personnel, and bars Plaintiffs' counsel from conducting any investigation. Moreover, Defendants' apparent misuse of the current Protective Order constitutes good cause for the modification Plaintiffs now seek.

## CONCLUSION

For all the foregoing reasons, Plaintiffs respectfully request that the Court vacate the current Protective Order and adopt instead the proposed protective order attached as Exhibit A to Exhibit 1.

Respectfully submitted,

/s/ Paul F. Enzinna

PAUL F. ENZINNA (D.C. Bar No. 421819)
JEREMY I. LEVIN
RACHEL McKENZIE
Baker Botts LLP
1299 Pennsylvania Avenue, NW
Washington, DC  20004-2400
(202) 639-7752

*Counsel for Plaintiff James H. Roane, Jr.*

/s/ Charles A. Zdebski
CHARLES A. ZDEBSKI  (D.C. Bar No. 451075)
Troutman Sanders LLP
401 9th Street, NW
Suite 1000
Washington, DC 20004-2134
(202) 274-2909

STEPHEN A. NORTHUP (D.C. Bar. No. 54587)
Troutman Sanders LLP
1001 Haxall Point
P.O. Box 1122
Richmond, VA 23218-1122
(804) 697-1240

FREDERICK R. GERSON
Robinson & Gerson, P.C.
7102 Three Chopt Road
Richmond, VA 23226

*Counsel for Plaintiff Richard Tipton*


/s/ Charles A. Zdebski
CHARLES A. ZDEBSKI  (D.C. Bar No. 451075)
Troutman Sanders LLP
401 9th Street, NW
Suite 1000
Washington, D.C. 20004-2134
(202) 274-2909



BARBARA HARTUNG
700 E. Main Street
Suite 1600
Richmond, VA 23219

EDWARD E. SCHER
Thorsen & Scher, LLP
3810 Augusta Avenue
Richmond, VA 23230

*Counsel for Plaintiff Cory Johnson*

/s/ William E. Lawler III
WILLIAM E. LAWLER III (D.C. Bar No.398951)
GRAHAM E. EDDY (D.C. Bar No. 495794)
Vinson & Elkins LLP
1455 Pennsylvania Avenue, NW
Suite 600
Washington, DC 20004-1008
(202) 639-6676

*Counsel for Plaintiff Bruce Webster*

/s/ Joshua C. Toll
JOSHUA C. TOLL (D.C. Bar No. 463073)
King & Spalding LLP
1700 Pennsylvania Avenue, NW
Washington, DC 20006
(202) 737-0500

/s/ Margaret O'Donnell
MARGARET O'DONNELL (Kentucky Bar No. 83889)
McNally and O'Donnell P.S.C.
513 Capitol Avenue
P.O. Box 1243
Frankfort, KY 40601
(502) 227-2142

*Counsel for Plaintiff Anthony Battle*

/s/ Owen Bonheimer
MATTHEW HERRINGTON (D.C. Bar No. 452364)
OWEN BONHEIMER (D.C. Bar No. 484984)
Steptoe & Johnson LLP
1330 Connecticut Avenue, NW
Washington, DC 20036
(202) 429-3000

ROBERT C. OWEN
Texas Bar No. 15371950
Owen & Rountree, LLP
P.O. Box 40428
Austin, TX 78704
(512) 804-2661

MARCIA A. WIDDER
Louisiana Bar No. 23367
636 Baronne Street

13

                          New Orleans, LA  70113
                          (504) 558-9867

                          *Counsel for Plaintiff Orlando Hall*

Dated:  June 3, 2008