UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JAMES ROANE, JR., et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| ANTHONY BATTLE, ORLANDO HALL, ) | |
| BRUCE WEBSTER, ) | |
| ) | Civil Action No. 05-2337 (RWR/DAR) |
| Plaintiff-Intervenors, ) | PUBLIC VERSION |
| ) | |
| v. ) | |
| ) | |
| MICHAEL B. MUKASEY, et al., ) | |
| ) | |
| Defendants. ) | |
| ) | |

**DEFENDANTS' REPLY TO PLAINTIFFS' AND INTERVENOR PLAINTIFFS'
OPPOSITION TO DEFENDANTS' RENEWED MOTION FOR
JUDGMENT ON THE PLEADINGS AND RENEWED MOTION TO LIFT THE STAY
OF THE PLAINTIFFS' EXECUTIONS**

As noted in Defendants' previously filed reply to Plaintiffs' opposition to Defendants'

initial Motion for Judgment on the Pleadings and Motion to Lift the Stays (R. 105), incorporated

herein by reference, each of the Plaintiffs and Plaintiff-Intervenors (collectively "Plaintiffs") have

been incarcerated under a sentence of death for more than ten years, yet waited until after

execution dates were set or about to be set to file or intervene in this lawsuit and seek a stay of

their executions.  Thus, their lawsuit should be dismissed on equitable grounds, as an "eleventh

hour" challenge to their imminent executions, ultimately coming "too late in the day."  Hill v.

McDonough, 547 U.S. 573, 584 (2006).  Further, the lawsuit should be dismissed as barred by

the applicable statute of limitations.  Additionally, the stay of Plaintiffs' executions should be

lifted. Critically, nothing in Plaintiffs' opposition memorandum undermines the propriety of granting the relief requested by Defendants.

## I.    DEFENDANTS ARE ENTITLED TO JUDGMENT ON THE PLEADINGS.

### A.    Plaintiffs' Argument That Defendants Waived the Affirmative Defense of Laches Lacks Merit.

Plaintiffs argue that Defendants' failure to plead laches as an affirmative defense prevents Defendants from arguing that Plaintiffs' challenge to the lethal injection procedure is untimely. As explained below, Plaintiffs' argument in this regard fails to account for the procedural posture of this case, and besides, is legally incorrect. In Defendants' original Motion for Judgment on the Pleadings and Motion to Lift the Stay of the Plaintiffs' Executions (R. 60), filed June 7, 2007, Defendants argued that Plaintiffs' eleventh hour challenge to the Federal Government's method of execution is barred. The motion was directed at all six death sentenced inmates and was filed three days after the Court's order granting Hall and Battle's motion to intervene. In their Motion, Defendants relied on the Supreme Court's decisions in Nelson v. Campbell, 541 U.S. 637 (2004), and Hill v. McDonough, cited supra, that Federal courts are authorized to invoke their equitable powers to dismiss lawsuits challenging methods of execution that are either speculative or "filed too late in the day". Hill, 547 U.S. at 584, citing Hicks v. Taft, 431 F.3d 916 (6th Cir. 2005); see also White v. Johnson, 429 F.3d 572, 573 (5th Cir. 2005) (affirming sua sponte dismissal of complaint by district court); Boyd v. Beck, 404 F.Supp.2d 879 (E.D.N.C. 2005).

Defendants next addressed Plaintiffs' delay in challenging the method of execution in Defendants' Reply to Plaintiffs' Opposition to Defendants' Corrected Motion for Judgment on the Pleadings and Motion to Lift the Stays Currently in Place filed August 17, 2007 (R. 105). In

2

that Reply, Defendants noted that an affirmative defense such as laches can be raised by motion, and by amended pleading and that such amendments should be freely granted, Fed. R. Civ. P. 8. See R. 105, Defs.' Reply Pls.' Op. Defs.' Corrected Mot. J. Pleadings & Mot. Lift Stays, at 2. Defendants additionally noted that Plaintiffs had agreed to file an omnibus amended complaint within 30 days of the court ruling on the Intervenors' motion to intervene.[1] See R. 39, Joint Stipulation Concerning Intervention of Webster, Hall and Battle, ¶ 3, April 27, 2007. The Court granted Intervenors Hall and Battle's motion to intervene on June 4, 2007. Plaintiffs' omnibus amended complaint has never been filed, and thus Defendants ability to raise the defense of laches *by pleading* has not arisen.[2]

    While Defendants' first Motion for Judgment on the Pleadings was pending, other jurisdictions decided cases on last minute challenges to execution methods in light of the Supreme Court's decision in Nelson and Hill. The timeliness of a death sentenced inmate's constitutional litigation challenging methods of execution (and requests for stays of execution) is not measured by the traditional standards of laches, but by *specialized equitable principles.*

---

[1] Affirmative defenses may be raised in pre-answer motions. Smith-Haynie v. District of Columbia, 155 F.3d 575, 577-79 (D.C. Cir. 1998).

[2] Laches is an equitable doctrine founded on the notion that equity aids the vigilant and not those who delay. The elements of an equitable laches defense are (1) lack of diligence by the party against whom the claim is asserted; and (2) prejudice to the party asserting the defense. National Rail Road Corp. v. Morgan, 536 U.S. 101, 121-122 (2002); Pro-Football Inc. v. Harjo, 415 F.3d 44, 47 (D.C. Cir. 2005).

3

Grayson v. Allen, 248 Fed. Appx. 128, 130 (11th Cir. Sept. 17, 2007)[3]; Arthur v. Allen, Civil Action No. 07-0342-WS-C, 2007 WL 2320069, *5 (S.D. Ala. Aug. 10, 2007).

Since Hill, the Eleventh Circuit has joined the Fifth and Sixth Circuits in holding district courts have equitable power to dismiss untimely challenges to execution procedures. Rutherford v. McDonough, 466 F.3d 970, 973 (11th Cir. 2006) (stay of execution denied by U.S. Supreme Court, 127 S.Ct. 465 (2006))[4]. A court may use its equitable powers to dismiss an untimely method of execution action on a motion to dismiss. Arthur v. Allen, 2007 WL 2320069, at * 5. This is because such a motion may be decided on the complaint, the procedural history, and publicly available resources. Id.

**B.    Defendants' Argument of Equitable Undue Delay Can Be Resolved on a Motion for Judgment on the Pleadings or To Dismiss.**

Courts may resolve a motion for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c) or Fed.R.Civ.P. 12(b)(6), by considering the motion based on the complaint standing alone, or the complaint supplemented by undisputed facts evidenced in the record, plus the court's resolution of disputed facts. Herbert v. Nat. Academy of Science, 974 F.2d 192, 197 (D.C.Cir. 1992); Bowman v. District of Columbia, --- F.Supp. 2d ----, 2008 WL 2461035, * 1 (D.D.C. June 19, 2008). While there may be some legal dispute over whether Defendants' Motion for Judgment on the Pleadings raising equitable concerns over the timing of Plaintiffs' action sounds

---

[3] In Grayson v. Allen, 499 F. Supp.2d 1228, 1235-36 (MD Ala. 2007), aff'd, Grayson v. Allen, 491 F.3d 1318 (11th Cir. 2007), cert. denied, 128 S.Ct. 6 (2007), the district court granted the defendants' motion to dismiss based on the equitable defense of laches which had been raised in the state's answer and answer to amended complaint.

[4] Mr. Rutherford was executed by the state of Florida on October 17, 2006. http://www.deathpenaltyinfo.org/getexecdata.php

in laches or instead the more refined *doctrine of specialized equitable principles*, it is clear that federal courts have dismissed similar claims for equitable relief on motions to dismiss, and the dismissals have been affirmed by the respective courts' of appeal. See e.g., Grayson v. Allen, 499 F.Supp. 2d 1228 (M.D. Ala. 2007), aff'd, 491 F.3d 1318 (11th Cir. 2007); Berry v. Epps, 506 F.3d 402, 405 (5th Cir. 2007), cert. denied, 128 S.Ct. 2048 (U.S. April 21, 2008); see also Rutherford v. McDonough, 466 F.3d 970, 974 (11th Cir. 2006)(listing cases dismissing challenges to lethal injection procedures as too speculative or filed too late); Hill v. McDonough, 464 F.3d 1256, 1257 (11th Cir. 2006), cert. denied, 127 S.Ct. 465 (2006)[5](denying death sentenced inmate's motion for injunctive relief based on the Court of Appeals' "independent analysis of the equities"); Lenz v. Johnson, 443 F.Supp. 2d 785 (E.D.Va 2006) (granting state's motion to dismiss in part on death sentenced inmate's delay in bringing challenge to Virginia's lethal injection procedures).   Accordingly, Defendants' motion for judgment on the pleadings can and should be granted.

## C.    Plaintiffs' Challenges to the Lethal Injection Protocol Were Filed Too Late.

Death sentenced inmates, like Plaintiffs here, may pursue equitable relief in a challenge to a purported unconstitutional method of execution.  However, because equity disfavors those who sleep on their rights, plaintiffs are required to raise their equitable claims in a timely fashion.

---

[5]This is a continuation of the case of Hill v. McDonough, 547 U.S. 573 (2006). Following remand from the Supreme Court, Hill filed an amended complaint on September 1, 2006 to which the state responded.  The district court dismissed the amended complaint on the same day. Hill, 464 F.3d at 1257. While the Supreme Court noted in its June 12, 2006 opinion that the Court was not addressing the lower courts' equitable power to dismiss suits that were filed too late in the day, when that opportunity came, the Court declined to grant a stay of execution and declined to grant *certiorari*. Hill v. McDonough, 127 S.Ct. 34 (Sept. 20, 2006)(application of stay of execution denied); Hill v. McDonough, 127 S.Ct. 465 (Oct. 16, 2006)(petition for *certiorari* denied).

The date on which a conviction and death sentence becomes final on direct appeal triggers the

equitable considerations applicable to filing challenges to procedures for carrying out the death

sentences. Neville v. Johnson, 440 F.3d 221, 222 (5th Cir. 2006); Cooey v. Strickland, 479 F.3d

412, (6th Cir. 2007); McNair v. Allen, 515 F.3d 1168, 1177-78 (11th Cir. 2008).

> *1.    Facts as Alleged in Plaintiffs' Complaints Evidence that Defendants are Entitled to Judgment on the Pleadings.*

Here, Plaintiffs' initial complaint filed December 6, 2005 establishes that (1) Plaintiffs'

convictions were affirmed on direct appeal in 1996, Compl. ¶ 22; (2) Plaintiffs would be

executed using a lethal injection combination of three substances, sodium thiopental or sodium

penthothal, pancuronium bromide and potassium chloride, Compl. ¶ 23; (3) the Department of

Justice ("DOJ") promulgated a rule under the Administrative Procedures Act ("APA") in 1993

providing that lethal injection shall be the method of carrying out death sentences imposed by

United States District Courts, Compl. ¶ 30; and (4) there had been publicized concerns with

lethal injections carried out by states between 1988 and 2000, Compl. ¶¶ 45, 46.

Intervenor Webster filed his complaint for equitable relief on January 29, 2007. Webster

alleged that: (1) he was to be executed using a lethal injection combination of three substances,

i.e., sodium thiopental or sodium penthothal, pancuronium bromide and potassium chloride,

Compl. ¶ 21; (2) the DOJ promulgated a rule under the APA in 1993 providing that lethal

injection shall be the method of carrying out death sentences imposed by United States District

Courts, Compl. ¶ 27; and (3) there had been publicized concerns with lethal injections carried out

by states between 1988 and 2000, Compl. ¶¶ 41, 42. Plaintiff Intervenor Bruce Webster moved

to intervene on January 29, 2007. R. 23. The Court granted his motion to intervene on February

14, 2007. Webster moved for a preliminary injection seeking a stay of his scheduled April 16, 2007 execution on February 14, 2007. The court granted the unopposed motion for a stay on February 21, 2007. R. 27.

Intervenor Orlando Hall filed his complaint for equitable relief on April 26, 2007. Like Roane, Tipton, Johnson and Webster, Hall alleged that (1) he was to be executed using a lethal injection combination of three substances, sodium thiopental or sodium penthothal, pancuronium bromide and potassium chloride, Compl. ¶ 22 and (2) the DOJ promulgated a rule under the APA in 1993 providing that lethal injection shall be the method of carrying out death sentences imposed by United States District Courts, Compl. ¶ 28. Hall moved to intervene on April 26, 2007, R. 38, and the Court granted his motion on June 4, 2007. Hall moved for a preliminary injunction enjoining the Bureau of Prisons ("BOP") from setting an execution date on June 4, 2007. R. 63. On June 11, 2007, the Court granted the unopposed motion to enjoin the BOP from setting an execution date. R. 67.

Intervenor Anthony Battle filed his complaint for equitable relief on April 26, 2007. Like Roane, Tipton, Johnson, Webster, and Hall, Battle alleged that (1) he was to be executed using a lethal injection combination of three substances, sodium thiopental or sodium penthothal, pancuronium bromide and potassium chloride, Compl. ¶ 20; (2) the DOJ promulgated a rule under the APA in 1993 providing that lethal injection shall be the method of carrying out death sentences imposed by United States District Courts, Compl. ¶ 26; and (3) there had been publicized concerns with lethal injections carried out by states between 1988 and 2000, Compl. ¶¶ 40, 41. Battle moved to intervene on April 26, 2007. R. 36. This Court granted Battle's motion on June 4, 2007. On June 4, 2007, Battle moved for a preliminary injection enjoining the

BOP from setting an execution date. R. 65. On June 11, 2007, the Court granted Battle's
unopposed motion. R. 68.

As early as 1993, Plaintiffs Roane, Tipton, and Johnson were aware they were to be
executed by lethal injection when the DOJ published its rule (28 C.F.R. § 26.1, et seq.) on lethal
injection in the Federal Register. Additionally, each of the complaints confirms that Plaintiffs
had sufficient knowledge of the lethal injection procedures to have allowed them to initiate their
actions long before they did.

The first complaint was filed on December 6, 2005 by Plaintiffs Roane, Tipton and
Johnson, over eight years after their convictions became final when the U.S. Supreme Court
denied *certiorari* on June 2, 1997 in their direct appeals. Plaintiff/Intervenor Webster's
conviction and death sentence became final on direct appeal when the U.S. Supreme Court
denied *certiorari* on October 4, 1999. Yet Webster waited over seven years to file his complaint.
Plaintiff/Intervenor Hall's conviction and sentence of death became final on direct appeal when
the U.S. Supreme Court denied *certiorari* on May 17, 1999. Plaintiff/Intervenor Battle's
conviction and sentence became final on direct appeal when the U.S. Supreme Court denied
*certiorari* on March 20, 2000. Yet, like Webster, he waited over seven years to file his complaint
(April 26, 2007).[6]

A motion to dismiss is a suitable tool to dismiss a dilatory action when on the face of the
complaint the action is conclusively time barred. Strong-Fischer v. Peters, --- F.Supp. 2d ----,

_____

[6]Notably, for Federal Death Penalty Act cases, method of execution was determined by
state practice. 18 U.S.C. § 3596. Texas has used the lethal injection method since the 1980's,
and thus, Hall and Webster knew of such method by the time their convictions were final. Battle
was on notice of Georgia's protocol once that state switched to lethal injection in 2001.

2008 WL 2138161,*1 (May 22, 2008). Because Plaintiffs' pleadings reflect that each had sufficient facts necessary to initiate their complaints for equitable relief long before they actually did, dismissal of their complaints as untimely is appropriate. The equitable defense of laches (or alternatively, specialized equitable principles) is clearly established by Plaintiffs' failure to diligently investigate and assert their claims related to execution procedures.

> 2.    *Defendants Have Been Prejudiced by Plaintiffs' Undue Delay in Filing Their Challenges.*

Contrary to Plaintiffs' argument, Defendants have been prejudiced by Plaintiffs' unreasonable delay in filing their challenges. Indeed, the Supreme Court has recognized that the government has an interest in carrying out the lawful sentences of United States Courts. See generally Nelson v. Campbell, 541 U.S. at 650 (government has a significant interest in enforcing its criminal judgments); Hill v. McDonough, 547 U.S. at 584 (". . .a stay of execution is an equitable remedy. It is not available as a matter of right, and *equity must be sensitive to the State's strong interest in enforcing its criminal judgments without undue interference from the federal courts.*")(emphasis added). This litigation has delayed the carrying out of the sentences of Roane, Tipton and Johnson by over two years (executions had been scheduled for May, 2006); the carrying out of Webster's sentence has been delayed over 14 months (execution scheduled for April, 2007), and the carrying out of the sentences of Hall and Battle has been delayed a year (since order staying setting of execution date entered in June, 2007).

> 3.    *Plaintiffs Fail to Justify Their Untimely Action.*

Plaintiffs' argument that their actions are timely because they were filed when execution became a real possibility (Pls.' Op. at 9) has already been rejected by the Courts. First, the

argument is in contravention to the very purpose of statute of limitations which are designed to promote judicial economy, and second, the accrual date advanced by Plaintiffs adds a significant period of delay in the government's ability to carry out the judicially imposed sentence. See Cooey, 479 F.3d at 419; see also Grayson v. Allen, 499 F.Supp. 2d at 1239 (rejecting notion that claim becomes ripe when execution becomes "imminent").

Plaintiffs' contention that an earlier presentation of their claims concerning legal challenges to methods of execution would be denied or deferred as being unripe (Pls.' Op. at 9) also lacks merit. The argument is speculative at best since Plaintiffs did not file their legal challenges to lethal injection either in or during their § 2255 proceedings. Ripeness is a justiciability doctrine directing courts to avoid premature adjudication in abstract disagreements. National Park Hospitality Assoc. v. Dept of Interior, 538 U.S. 803, 807 (2003). In determining whether an issue is ripe, courts consider (1) the fitness of the issues for judicial decision; and (2) the hardship to the parties of withholding judicial consideration. Id. at 808.

Once Plaintiffs had been sentenced to death and their convictions and sentence had become final on direct appeal, their claims of possible injury caused by the specific method of execution became ripe for judicial determination. Gomez v. U.S. District Court for the Northern District of California, 503 U.S. 653 (1995) (denying suit for equitable relief when plaintiff's challenge to constitutionality of California's lethal gas procedures "could have been brought more than a decade" earlier; Nooner v. Norris, 491 F.3d 804, 808 (8th Cir. 2007)(once inmate's death sentence becomes final on direct appeal, there is no impediment to filing a constitutional challenge to the method of execution when the method and procedures are known); Cooey v. Strickland, 479 F.3d at 421-422 (6th Cir. 2007) (same); see also Walker v. Epps, Civil Action

10

No. 4:07CV176-P-B (N.D. Miss. July 15, 2008)(Mem. Op., at 5)(plaintiffs' cause of action accrues upon their respective sentences becoming final on direct review)(attached hereto as Ex. 10). Plaintiffs' delay in bringing their actions is evident on the face of their complaints as noted supra, and thus, their actions should be dismissed.

Perhaps realizing that their arguments attempting to justify their undue delay lack merit, Plaintiffs/Intervenors urge that Defendants should be estopped from "changing" their position on the stays of executions to which Defendants consented. Pls.' Op. at 22. Defendants contend, however, that the agreement to the stay was based on the possibility that Hill might be dispositive of Roane, specifically, if the Supreme Court held that challenges to methods of execution were not controlled by Nelson v. Campbell, cited supra, and must be brought in a habeas proceeding. Because the § 2255 petition of Roane had already been denied, such a holding would have precluded Roane, Tipton and Johnson from litigating the issues in a successive habeas case. Notwithstanding this point, Defendants' agreement to the stays does not mitigate the issue of Plaintiffs' untimeliness. The petition for *certiorari* in Hill was not granted until after Roane, Tipton and Johnson had filed their civil complaints. Thus, the grant of *certiorari* in Hill in January, 2006 cannot be used to justify the Plaintiffs' unreasonable delay.

## II.    PLAINTIFFS' ACTIONS ARE BARRED BY THE APPLICABLE STATUTE OF LIMITATIONS.

A statute of limitations begins to run when a claim accrues. Webb v. United States, 535 F.Supp. 2d 54, 58 (D.D.C. 2008). What constitutes an accrual of a claim is a question of law, but the actual date of the accrual is a question of fact. Id. A cause of action accrues even though the full extent of the injury is not known or predictable. Wallace v. Kato, 127 S.Ct. 1091, 1097

(2007). Plaintiffs' reliance on Jones v. Allen, 483 F.Supp. 2d 1142, 1147- 1150 (M.D. Ala. 2007) to establish that the statue of limitations for claims challenging future injuries caused by method of execution do not accrue for statute of limitations purposes until the future injury is complete, which in the present case is when the inmate is executed, is misplaced. In Jones, the District Court denied the state's motion for summary judgment on statute of limitations grounds, and also denied a motion to stay Jones's execution on equitable grounds concluding that he had delayed too long in bringing his suit. The inmate appealed the denial of the stay of execution, and the district court's denial was affirmed on appeal. Jones v. Allen, 485 F.3d 635 (11th Cir. 2007), cert. denied, 127 S.Ct. 2160 (2007). Inmate Jones was executed by the state of Alabama on May 3, 2007. http://www.deathpenaltyinfo.org/getexecdata.php. The state did not cross appeal the denial of its motion for summary judgment on statute of limitations grounds, and the Court of Appeals expressly declined to consider the statute of limitations portion of the District Court's order. 485 F.3d at 638, n. 1.

Notably though, the district court's analysis in Jones regarding statute of limitations in lethal injection cases is no longer good law, even in the Middle District of Alabama. In McNair v. Allen, 515 F.3d 1168 (11th Cir. 2008)[7], cert. denied, 128 S.Ct. 2914 (June 9, 2008), the Eleventh Circuit expressly rejected the rationale utilized by the district court in Jones, holding that the statute of limitations for challenges to methods of execution accrues on the later of the date the condemned inmate's conviction becomes final on direct appeal, or when the jurisdiction's lethal injection protocol becomes applicable to him. 515 F.3d 1176-78. The 11th

---

[7]After the Court of Appeals vacated the stay of execution, inmate Callahan asked and received a stay of execution from the U.S. Supreme Court. Callahan v. Allen, 128 S.Ct. 1138 (2008).

Circuit noted that a statute of limitation for a future injury can accrue prior to a future injury because the future ultimate injury, execution by lethal injection, is "reasonably likely and wholly foreseeable." 515 F.3d at 1174. The Eleventh Circuit joined the Fifth, Sixth and Eighth Circuits in finding that methods of execution claims do have statute of limitations, and the statute of limitations accrues when the conviction and sentence become final on direct appeal.

Notably, in Nooner v. Norris, No. 5:06CV00110 SWW, 2006 WL 4958988, * 4 (E.D. Ark. June 19, 2006), the district court denied the state's motion to dismiss on statute of limitations grounds and issued a stay of execution. The Court of Appeals vacated the stay because the district court had abused its discretion in granting the stay because it had applied an incorrect legal standard relating to accrual of a cause of action. Nooner v. Norris, 491 F.3d 804, 807 (8th Cir. 2007), cert. denied,128 S.Ct. 1275 (February 19, 2008). The Court of Appeals approvingly cited Cooey v. Strickland and Neville v. Johnson for the proposition that, once an inmate's sentence and conviction become final on direct appeal, there is no impediment to filing a civil challenge to the method of execution. 491 F.3d at 808.

Plaintiffs note that a district court in Oklahoma denied a motion to dismiss a challenge to Oklahoma's lethal injection procedures as the plaintiff's complaint did not reflect the limitation period had expired. See Pls.' Op., at 18 and 20, citing Anderson v. Evans, No. Civ. A. 04-2035, 2006 WL 83093 (W.D. Ok. January 11, 2006). The facts in Anderson are evidently distinguishable from this case. Plaintiffs here have stated in their complaints when their convictions and sentences became final on direct review, information about the federal lethal injection procedures, and published accounts of purported problems with lethal injection procedures. The facts in each of the complaints provide a sufficient factual basis to allow this

13

Court to conclusively determine that Plaintiffs' actions were not commenced within the applicable six year statute of limitations. Indeed, Defendants respectfully submit that this Court should be guided by the more recent legal opinions of four Circuits (the Fifth, Sixth, Eighth, and Eleventh) that the statute of limitations for challenges to lethal injection procedures accrue when the condemned inmate's conviction and sentence are affirmed on direct appeal. Neville v. Johnson, Cooey v. Strickland, Nooner v. Norris, McNair v. Allen, cited, supra.

## III.    THE STAYS OF EXECUTION SHOULD BE LIFTED.

On February 2, 2006, the Plaintiffs filed a motion for an order enjoining the Defendants from executing them until the United States Supreme Court decided Hill v. Crosby, No. 05-8794, 2006 WL 171583 (U.S. Jan. 25, 2006). R. 2. Defendants did not oppose the Court imposing a preliminary injunction to bar Roane, Tipton and Johnson's scheduled May, 2006 executions pending a decision by the Supreme Court in Hill v McDonough. (R. 4). The District Court entered an order granting a preliminary injunction. After Hill was decided in June, 2006, the District Court sua sponte continued the preliminary injunctions without requiring Plaintiffs to establish their entitlement to such extraordinary relief. R. 7.

### A.    Plaintiffs Bear the Burden of Establishing Their Entitlement to a Preliminary Injunction.

In the District of Columbia, a preliminary injunction is an extraordinary remedy and is to be sparingly granted. Sandoz v. FDA, 439 F.Supp. 2d 26, 30 (D.D.C. 2006). The relief should only be granted when the party seeking relief, by clear showing, carries the burden of persuasion. Chaplaincy of Full Gospel Churches v England, 454 F.3d 290. 297 (D.C. Cir. 2006), citing, Cobell v. Norton, 391 F.3d 251, 258 (D.C. Cir. 2004).   A district court is required to balance the

strength of the requesting party's arguments in favor of the areas of (1) substantial likelihood of success on the merits, (2) a showing of irreparable harm in the absence of an injunction, (3) the injunction would not substantially harm other parties; and (4) the injunction would not substantially harm the public interest. Taylor v. Resolution Trust, 56 F.3d 1497, 1505-1506 (D.C. Cir. 1995). In the present case, Plaintiffs have never established their entitlement to a preliminary injunction. As the Supreme Court noted in both Nelson and Hill, stays of execution are equitable remedies, are not available as a matter of right, and equity must be sensitive to the state's strong interest in enforcing its criminal judgments. Hill, 547 U.S. at 584.

Assuming arguendo that Plaintiffs in some form established their entitlement to a continued stay of their executions in June, 2007, a court granting such equitable relief may recognize subsequent changes in either statutory or decisional law in considering whether equitable relief should be modified. Agostini v. Felton, 521 U.S. 203, 215 (1997). Changes to injunctive relief are appropriate when changed circumstances make continuation of the injunction inequitable. Merrell-National Labor, Inc. v. Zenith Labor, Inc, 579 F.2d 780, 791 (3d Cir. 1978).

Plaintiffs' ability to show a substantial likelihood of success on the merits is virtually nil. As the Sixth Circuit noted in Workman v. Bredesen, 486 F.3d 896, 906 (6th Cir. 2007), "[n]o court. . .has issued a final decision declaring a state's lethal injection protocol unconstitutional[,] thus, "[o]ne cannot credibly establish a likelihood of success in attacking a death penalty procedure when the theory of success has yet to succeed in a considerable number of cases over a considerable number of years." Accord Walker v. Epps, Mem. Op. at 14 (attached hereto as Ex. 10).

The Supreme Court's recent decision in Baze v. Rees, 128 S.Ct. 1520 (2008) further undercuts Plaintiffs' ability to demonstrate a substantial likelihood on the merits, and casts significant doubt on Plaintiffs' ability to demonstrate the second element for a preliminary injunction, specifically, irreparable harm. While Plaintiffs may argue that they would suffer irreparable harm by their executions, the harm is not in the carrying out of their lawfully imposed death sentences, but that they might suffer unconstitutional pain and suffering in the process. State of La. ex. rel. Francis v. Resweber, 329 U.S. 459, 464 (1947). Baze holds that the procedures utilized by Kentucky, and jurisdictions with "substantially similar" procedures to those used by Kentucky would not create a significant risk of unnecessary pain or suffering. Because the lethal injection protocol and procedures used by the Defendants are substantially similar to those approved by the Supreme Court in Baze (See Ex. 1, Addendum to BOP Execution Protocol, Federal Death Sentence Implementation Procedures, Effective August 1, 2008), Plaintiffs cannot demonstrate irreparable harm. See also Workman v. Bredesen, cited supra.

As to the third factor, the substantial harm to other interested parties, including Defendants, the public, and the families and friends of Plaintiffs' victims, the harm is the same – i.e., further delay in the timely execution of criminal sentences. As indicated above, there is a strong public interest in the timely implementation of criminal sentences which is undermined by the continuation of an unsupported and unsupportable stay.

16

**B.    Defendants Are Not Equitably Estopped from Seeking Dissolution of the Preliminary Injunction Staying the Execution of Webster and Staying Setting Execution Dates for Hall and Battle.**

Contrary to Plaintiffs' argument, Defendants are not equitably estopped from seeking dissolution of the preliminary injunction. Pls.' Op. at 22-25.  Plaintiff Intervenors argue that they have forgone certain rights in reliance upon Defendants' representation that Defendants did not oppose the interventions or the preliminary injunctions staying the setting of the execution dates. Id. at 23-24.  This argument was addressed  in Defendants' original Reply to Plaintiffs' Opposition to Defendants' Corrected Motion for Judgment on the Pleadings and Motion to Lift the Stays Currently in Place ( R. 105, at 12).  In that Reply, Defendants noted that the stipulation for intervention expressly stated that Defendants would not "take any action inconsistent with the proposed orders for preliminary injunction sought by Movants Hall and Battle until the court has ruled on the associated motions for a preliminary injunction." R. 39, Stipulation, ¶ 1.  The Court did in fact enter orders granting a preliminary injunction so it is unclear how Hall and Battle have been prejudiced.  Importantly, the stipulation expressly reserved Defendants' right to present objections and arguments on the merits of the issues in this litigation, including the right to seek dissolution of the preliminary injunction. Id. ¶ 2.

Plaintiffs Hall and Battle also argue that they were prejudiced by their inability to participate in the initial inspection of the Terre Haute execution facility (without giving any indication how this inspection was insufficient). Pls.' Op. at 24.  The initial inspection took place on March 10, 2007, some six weeks before Hall and Battle sought to intervene in the action on April 26, 2007, but a second inspection occurred on September 20, 2007 *after their intervention*.  Since fact discovery did not close until October 11, 2007, Hall and Battle had more

17

than sufficient time within the discovery period to express any concern regarding the inspections, but did not. Hall and Battle additionally do not explain how they were prevented from pursuing discovery related to the United Nations Commission on Torture, nor indeed, how such discovery is likely to lead to the discovery of admissible evidence. Pls.' Op. at 24. This subject matter was expressly made part of Plaintiffs' 30(b) (6) Notice (page 4), Ex. 2, though it does not appear it was the subject of any questioning of the 30 (b)(6) witness, ███████████ by the Plaintiffs.

Hall and Battle's final argument is that they were required to agree to waive an Answer by Defendants. This argument is entirely devoid of merit. First, Plaintiffs make no showing of any detriment resulting from such agreement. Pls.' Op. at 24. More pointedly, they ignore that part of the stipulation wherein Plaintiffs agreed to amend their complaint in this action within thirty days of the Court's decision on the motions to intervene. As the Court granted the motion to intervene on June 4, 2007, over one year has passed, and there has been no amended Complaint filed by Plaintiffs.

In addition to the arguments above, it is not clear if the doctrine of equitable estoppel is even applicable against the federal government, but to the extent the doctrine is, estoppel against the federal government is not on the same terms as other litigants. Heckler v. Community Health Serv., 467 U.S. 51, 60 (1984). The "rigid and sparing use" of the doctrine against the government must be under compelling circumstances. ATC Petroleum Inc. v. Sanders, 860 F.2d 1104, 1111 (D.C. Cir. 1988). Further, Plaintiffs' recitation of the elements of equitable estoppel against the government stated in Hertzburg v. Veneman is incomplete. Pls.' Op. at 22. In addition to the traditional elements of estoppel referenced by Plaintiffs, a party asserting the doctrine against the federal government must make a "showing of an injustice, . . . and lack of

18

undue damage to the public interest." Hertzburg v. Veneman, 273 F.Supp. 2d 67, 83 (D.D.C. 2003), citing, ATC Petroleum, Inc., supra, quoting, Int'l Org. of Masters, Mates & Pilots v. Brown, 698 F.2d 536, 551 (D.C.Cir.1983) (internal quotation marks omitted). The plain language of the stipulation refutes Plaintiffs' allegation that the Defendants made a "definite representation" they would not seek to lift the stays. R. 39, Stipulation. Plaintiffs' allegations of detrimental reliance fall far short of the additional required showing of "an injustice" and "undue damage to the public interest."

### C.    Defendants Have Correctly Stated the Standard for Obtaining Preliminary Injunctive Relief.

In their Opposition, Plaintiffs argue that Defendants applied an incorrect standard as related to the requests for preliminary injunctive relief. Pls.' Op. at 25-26. The phrasing of the elements by the parties seem to differ only as to the fourth element – the injunction will not substantially harm the public interest (Taylor v. Resolution Trust, 56 F.3d at 1505-1506) compared to Plaintiffs' statement of the fourth element, i.e., the public interest will be furthered by the injunction (accurately citing Serano Labs., Inc. v. Shalala, 158 F.3d 1313, 1317-18 (D.C. Cir. 1998)).  The difference may relate to whether a party seeking a preliminary injunction must demonstrate a substantial likelihood of success on the merits, and in the absence of such a showing, must make a very strong showing with respect to the other factors. See Emily's List v. FEC, 362 F.Supp. 2d 43, 51 -52 (D.D.C. 2005) . Plaintiffs appear to argue that the analysis requires the granting of a preliminary injunction where there is a particularly strong showing in one element (without regard to what element it is) although proof of the other elements is weak. Pls.' Op. at 26, citing, Ramirez v. United States Custom & Border Protection, 477 F.Supp.2d

19

150, 155 (D.D.C. 2007).[8] The language from <u>Taylor</u> and <u>Serano Labs, Inc.</u>, however, is not

irreconcilable, and indeed, to the extent Plaintiffs rely on <u>Ramirez</u> for the principle that

establishing a single element will be sufficient, Plaintiffs have taken the language of the district

court in <u>Ramirez</u> out of context. The full quotation is as follows:

> When the balance of hardships tips decidedly toward the movant, it will
> "'ordinarily be enough that the Plaintiff has raised questions going to the merits so
> serious, substantial, difficult and doubtful, as to make them a fair ground for
> litigation and thus for more deliberative investigation.' " <u>Wash. Metro. Area
> Transit Comm'n v. Holiday Tours, Inc.</u>, 559 F.2d 841, 844 (D.C.Cir.1977)
> (quoting <u>Hamilton Watch Co. v. Benrus Watch Co.</u>, 206 F.2d 738, 740 (2d
> Cir.1953)). "An order maintaining the status quo is appropriate when a serious
> legal question is presented, when little if any harm will befall other interested
> persons or the public and when denial of the order would inflict irreparable injury
> on the movant." <u>Id.</u> at 844.

<u>Ramirez</u>, 477 F.Supp.2d at 155.

Ramirez does not de facto collapse the four elements into a single one, and in fact,

reflects that a weighing of all four elements is necessary to obtain the relief sought. In the

<u>Washington Metro</u> case relied upon by the court in <u>Ramirez</u>, the D.C. Circuit noted that

> a court, when confronted with a case in which the other three factors strongly favor
> interim relief may exercise its discretion to grant a stay if the movant has made a
> substantial case on the merits. . . . The necessary "level" or "degree" of possibility of
> success will vary according to the court's assessment of the other factors.

<u>Washington Metro. Area Transit Comm'n</u>, 559 F.2d at 844; <u>see also</u> <u>Hill</u>, 547 U.S. at 584

---

[8] Both the <u>Ramirez</u> and <u>Emily's List</u> case were decided by Judge Kollar-Kotelly, and both
positions are supported by accurately cited Circuit law. At least one district court judge has
noted this apparent inconsistency in circuit precedent. <u>Adair v. England</u>, 217 F.Supp.2d 1, n. 7
(D.D.C. 2002) (Urbina, Judge).

(". . .like other stay applicants, inmates seeking time to challenge the manner in which the State plans to execute them must satisfy all of the requirements for a stay, *including a showing of a significant possibility of success on the merits*.")(emphasis added).

**D.    Plaintiffs Have Failed to Establish that Equities Weigh Strongly In Favor of Maintaining the Preliminary Injunctions.**

Plaintiffs' arguments concerning the balancing of the equities fail for a number of reasons. Legal questions over the constitutionality of the three substance drug formula were expressly resolved by the Supreme Court in <u>Baze</u>. 128 S.Ct. at 1532-33. As indicated above, Plaintiffs have little chance of prevailing on the merits in a constitutional challenge to a procedure the Supreme Court has expressly held not to violate the Eighth Amendment. <u>See also</u> <u>Workmen v. Bredesen</u>, and <u>Walker v. Epps</u>, cited <u>supra</u>; <u>Emmett v. Johnson</u>, --- F.3d ----, 2008 WL 2736034 (4th Cir. July 10, 2008).

Nor can Plaintiffs establish a substantial likelihood of success on the merits that the federal execution protocol fails to ensure the inmate is unconscious prior to administering the second and third lethal substances (Pancuronium Bromide and Potassium Chloride). The Supreme Court has rejected a requirement that execution procedures have a formal procedure for assessing the "anesthetic depth" of a condemned inmate because a "proper dose of thiopental obviates the concern that a prisoner will not be need sufficiently sedated." <u>Baze</u>, 128 S.Ct. at 1536. Federal procedures require two more grams of thiopental (a total of five grams, Addendum ¶ H, attached hereto as Ex. 1) than the three grams utilized by the state of Kentucky. 128 S.Ct. at 1528. The federal procedure always required that the condemned inmate be determined to be unconscious before administering the pancuronium bromide and potassium

21

chloride. The current written protocol has added an additional requirement that the inmate be clinically assessed to determine consciousness prior to the administration of the second and third lethal substances. Ex. 1, Addendum to Execution Protocol, ¶ J (After the first lethal substance has rendered the condemned individual unconscious as determined by qualified personnel utilizing one or more standard of assessment of consciousness techniques, including, but not limited to response to verbal command, gentle shaking, vigorous shaking or noxious stimuli such as pinching, supervisory personnel will direct personnel to administer the remaining lethal substances.)

Plaintiffs additionally allege that this litigation establishes some partial success as Defendants have produced a written protocol solely for the purpose of remedying flaws in their protocols and procedures. Pls.' Op. at 35. This argument implies that any change by a jurisdiction to its lethal injection procedures establishes that the old procedure was inadequate or unconstitutional. However, Baze itself involved a protocol that was amended during litigation, a matter apparently of no moment to the Supreme Court in holding Kentucky's protocol constitutional. Baze, 128 S.Ct. at 1528 ("In 2004, as a result of this litigation, [Kentucky's Department of Corrections] chose to increase the amount of sodium thiopental from 2 grams to 3 grams.") (citation omitted) and 1538 ("The broad framework of the Eighth Amendment has accommodated [the] progress toward more humane methods of execution, and our approval of a particular method in the past has not precluded legislatures from taking the steps they deem appropriate, in light of new developments, to ensure humane capital punishment. There is no reason to suppose that today's decision will be any different.") Further, the federal government

22

and many jurisdictions[9] have made modifications to their execution protocols not because the former procedures were unconstitutional, but because the new procedures are thought to make the protocol even more likely to provide a humane death for the condemned inmate. The Supreme Court's opinion in Baze states that an execution procedure is unconstitutional only when the procedure poses a substantial risk of serious bodily harm. The risk must be "sure or very likely" to cause serious illness and needless suffering, and give rise to sufficiently imminent dangers. Baze, 128 S.Ct. at 1530-5131, citing, McKinney v. Helling, 509 U.S. 25, 33, 34-35 (1993). Taking Plaintiffs' argument to its logical extension, any change in an execution protocol would entitle a death sentenced inmate to a stay of execution because the "change" is evidence the protocol was unconstitutional. This argument lacks merit.

The Eighth Circuit has found Missouri's lethal injection procedures to be constitutional. Taylor v. Crawford, 487 F.3d 1072 (8th Cir. 2007), cert. denied, 128 S.Ct. 2047 (April 21, 2008). The federal procedures outlined in the Execution Protocol are substantially similar to the Missouri procedures found to be constitutional by the Eighth Circuit in Taylor and the Kentucky procedures approved by the Supreme Court in Baze. See also Clemons v. Crawford, Case No. 07-4129-CV-C-FJG (W.D.Mo. July 15, 2008)(Order)(attached hereto as Ex. 11). Finally, the issues raised in Brown v. Beck, Pls.' Op. at 34, have been rendered moot by the Supreme Court's opinion in Baze that constitutional execution by lethal injection does not require an assessment of anesthetic depth.

---

[9] In the past two years, a number of jurisdictions have modified their lethal injection procedures, most notably Florida, California, Tennessee, and Missouri. Other states have done so with less public notice, including Delaware, Georgia, Indiana and Texas.

Plaintiffs spend thirteen pages of their Opposition addressing speculative concerns which do not address the issue of success on the merits in obtaining a preliminary injunction. Plaintiffs allege that the federal government uses as a resource a person associated with the Diaz execution in Florida. Pls.' Op. at 37. The witness in the Florida Governor's Commission on the Administration of Lethal Injection testified anonymously and the Defendants (and probably the Plaintiffs) have no knowledge of who this individual is, or what is meant by the witness stating the person serves as a resource to the federal government. While Defendants have no knowledge of any person who would be on the federal execution protocol team for the executions of the Plaintiffs that provide execution related services to Florida[10], mere association with Florida executions does not establish success on the merits. To the contrary, Florida's lethal injection procedures have been approved by the state Supreme Court. Lighbourne v. McCollum, 969 S.2d 326 (Fla. 2007), cert denied ,128 S.Ct. 2485 (2008).

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

████████████████████ Ex. 3, ██████████████ (filed under seal);

Ex. 4, ████████████████████ (filed under seal).

Plaintiffs' reference to comments by Dr. Mark Dershwitz, Defendants' expert witness in this case, is also unavailing. Pls.' Op. at 40. In the excerpt, Dr. Dershwitz discusses the risks and benefits of the three substance formula, and using a single substance. As the Supreme Court

---

[10]During the depositions of the medically trained personnel utilized by the BOP, each was asked if they participated in Florida executions and each answered no. The individuals either stated that Florida was not one of the states, or listed states that did not include Florida.

has already ruled in <u>Baze,</u> the use of the three substance formula of sodium pentothal, pancuronium bromide and potassium chloride, does not violate the Eighth Amendment.

Additionally, Plaintiffs misread Judge Gaitan's June 26, 2006 order in <u>Taylor v. Crawford</u> concerning utilization of the femoral vein. Judge Gaitan's opinion references femoral venous access several times, but he makes no judgment reversing his earlier decision in the same case that femoral access does not violate the Eighth Amendment. No. 05-4173-CV-C-FJG, 2006 WL 1779035, *1 (W.D.Mo. June 26, 2006).[11] Nor did Judge Gaitan enjoin or bar Missouri from utilizing femoral venous access, but only ordered the state to implement a procedure where the state, in conjunction with the anesthesiologist who was required by the Judge's order to be there, would have discretion to determine the most appropriate location on the inmate's body to inject drugs. 2006 WL 1779035, *9. The Eighth Circuit reversed the district court's conclusion concerning presence of an anesthesiologist. <u>Taylor v. Crawford</u>, 487 F.3d 1072, 1084 (8th Cir. 2007); <u>see also</u> <u>Baze</u>, 128 S.Ct. at 1536 (rejecting argument that anesthesiologist required to participate in procedure). BOP venous access procedures utilize a similar process as the one approved in Missouri - i.e., intravenous access is dependent upon a number of factors, including the training and experience of the personnel, specific orders of federal courts, and/or the recommendation of medical personnel. Ex. 1, Addendum ¶ H; <u>see also</u> <u>Clemons v. Crawford,</u> Case No. 07-4129-CV-C-FJG (W.D.Mo. July 15, 2008)(Order)(granting state's motion for judgment on the pleadings and holding Missouri's revised protocol constitutional). Plaintiffs

_____

[11]On January 31, 2006, Judge Gaitan issued an order in the Taylor litigation, WD Mo. Case 05-4173-cv-C-FJG concluding that the use of the femoral vein for the administration of the lethal injection did not violate the Eighth Amendment. <u>Taylor v. Crawford</u>, No. 05-4173-CV-C-FJG (W.Mo. Jan. 31, 2006)(Order, at 9)(attached hereto as Ex. 5)..

have not even suggested that femoral access used in the three previous federal executions produced any problems.

Plaintiffs correctly state that BOP execution procedures require that the IV access site be covered by a sheet. This step is done when femoral venous access is obtained and is premised on promoting the dignity of the condemned inmate and the process as the IV is inserted in the inmate's groin area.  Ex. 6, ███████████████████████████████ (filed under seal). Previous BOP practice required that the intravenous access be inspected after it is inserted. The protocol was recently revised to require medically trained personnel to assess the point of IV access to the extent practicable, at the time the consciousness of the inmate is assessed. Ex. 1, Revised Addendum Effective August 1, 2008, ¶ I.

The procedures utilized by the BOP to carry out lethal injections from 1999 - present require the use of five grams of sodium pentothal.  In the first three federal lethal injections, all five grams were administered in a single syringe.  The reconstitution of the sodium pentothal was done by a board certified surgeon under the observation of another physician and other chemical room personnel.  Current policy requires the five grams of sodium pentothal be administered in four syringes.  Addendum, ¶ H.  BOP policy requires the preparation of the lethal substances to be done by "qualified personnel" Addendum ¶ F. Qualified personnel includes currently licensed physicians, nurses, EMTs, Paramedics, Phlebotomists and other medically trained personnel, including those trained in the United States Military having at least one year experience and other personnel with necessary training and experience in a specific execution related function. Addendum, August 1, 2008 ¶ D.

26

The Supreme Court in <u>Baze</u> approved Kentucky's procedures and the findings of the trial court that "if the manufacturer's instructions for reconstitution of Sodium Thiopental are followed . . . there would be minimal risk of improper mixing despite converse testimony that a layperson would have difficulty performing the task." 128 S.Ct. at 1533. Plaintiffs cannot establish a probability of success on the merits when medically licensed or otherwise trained personnel perform a function such as mixing a powdered drug with diluent, a task which the courts have recognized as being able to be accomplished by a layperson.

Plaintiffs' allegation concerning documentation reflecting custody and control of the lethal substances are simply inaccurate. Pls.' Op. at 44. ████████████████████ ████████████████████████████████████████████████ ████████████████ Ex. 12 (filed under seal). ████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ███████████████ Ex. 6, ████████████████████████ (filed under seal). The BOP Addendum effective July 1, 2007 required that the "fact, time and order of administration of each substance shall be documented and the documentation retained." Ex. 7, ¶ J. That Addendum also included a checklist (not included in Plaintiffs' attachment to their Opposition) that implements ¶ J by documenting the contents of each syringe, whether the contents of the syringe were administered or destroyed, and requires the preparation of the

syringes and administration of its contents to be witnessed by a second person.[12] Id. Georgia's

record keeping forms are not required by the Constitution, and Plaintiffs do not even allege that

the record keeping procedures utilized by the Defendants are substantially different from

Georgia's or are in any way inadequate. Pls.' Op. at 44. Instead, Plaintiffs appear to argue,

mistakenly, that such record keeping is constitutionally required.

Perhaps most perplexing is Plaintiffs' arguments that BOP executions are too fast. Pls.'

Op. at 45. ████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████ See, e.g. Emmett v. Johnson, --- F.3d ----, 2008 WL

2736034, *8-10 (4th Cir. July 10, 2008)(Fourth Circuit notes that times may be imprecise based

on the position of the second hand when the injection starts and stops.)████████████████

██████████████████████████████████████████████████

████████████████████ However, "burst suppression" is not required to make an

execution constitutional, and indeed, "burst suppression" has been found by the courts to be a

deeper level of sedation than required for surgery. See Taylor, 487 F.3d at 1076.

██████████████████████████████████████████████████

██████████████████████████████████████████████████

---

[12]The August 1, 2008 Addendum also includes this requirement. Ex. 1, ¶ J.

28

 Ex. 8,

filed under seal). Under the procedures

in place for future executions, the condemned inmate must be *physically* assessed and determined

to be unconscious prior to administering the second and third lethal substances.[13] This step,

however, is not constitutionally required.

As noted above, Plaintiffs' argument concerning assessment of "anesthetic depth" also

fails. The Supreme Court has expressly rejected a requirement of a separate assessment of

unconsciousness since a proper dose of thiopental obviates the concern that a condemned inmate

will not be sufficiently sedated. Baze, 128 S.Ct. at 1536. The Eighth Circuit has expressly

rejected a constitutional requirement that an anesthesiologist be in attendance at an execution, or

that the "anesthetic depth" of a condemned inmate be monitored. Taylor, 487 F.3d at 1084-85.

This is in part because Missouri requires the administration of five grams of sodium pentothal

and because qualified medical personnel are required to ensure that the inmate is unconscious

prior to administering the second and third lethal substances. These same procedures are present

in the BOP execution procedure.

**E.     Public Interest is Served by the Timely Enforcement of Criminal Judgments**.

Each Plaintiff was tried and convicted of capital offenses which occurred over ten years

ago. Their convictions and death sentences have been affirmed on direct appeal. Despite

---

[13]Indeed, the practice for the first three federal executions was to ensure inmate
unconsciousness by observation by personnel in the execution room and by a professional in the
Chemical room before beginning pancuronium.

knowing, or having the ability to obtain the necessary knowledge, of the very procedures they now challenge as unconstitutional long before they initiated their lawsuits, they claim equity entitles them to a stay of execution.  To continue the stays is inconsistent with the holdings of the Supreme Court that there are strong equitable presumptions against granting a stay of an execution where the claim could have been brought during a period when the merits could have been considered without requiring a stay.  Hill, 547 U.S. at 584.  In addition to the interests of the Defendants in this case, the families and friends of the victims of the crimes committed by Plaintiffs have an important interest in the timely enforcement of a criminal sentence.  Id. at 584.

Plaintiffs also note that Judge Sue L. Robinson, U.S. District Court for the District of Delaware, has scheduled an evidentiary hearing to determine whether Delaware's execution protocol is substantially similar to Kentucky's.  Pls.' Op. at 48.  However, there are two points worth noting here.  The first is that the evidentiary hearing is limited – specifically, each side is limited to two hours to conduct the examination of their witnesses and to cross examine opposing witnesses.  Ex. 9, Jackson v. Danberg, Civ. No. 06-300-SLR (D.Del. June 27, 2008)(Order).  Second, and perhaps more critically, as indicated above, other courts throughout the country have decided cases like Plaintiffs' without such a hearing on the merits because those plaintiffs waited too long to bring their claims for relief.  In such cases, the plaintiffs were found to have brought their suits outside of the limitations period or were otherwise not entitled to equitable relief.  As noted by the 11th Circuit Court of Appeals, "each delay, for its span, is a commutation of a death sentence to one of imprisonment."  Rutherford v. McDonough, 466 F.3d at 978, citing, Thompson v. Wainwright, 714 F.2d 1495, 1506 (11th Cir. 1983).  By failing to bring their claims when there was sufficient time to resolve them on the merits without a stay of

30

execution, Plaintiffs have used, in the words of the late Justice Rehnquist, the "hydraulic

pressure" of a last minute filing, Evans v. Bennett, 440 U.S. 1301 1307 (1979), to obtain a

temporary commutation (over two years for Roane, Tipton and Johnson, and over one year for

Webster, Hall and Battle) of their death sentences.

## IV.    CONCLUSION

For reasons stated in their renewed Motion and this Reply, Defendants respectfully

request that the Court grant Defendants' Renewed Motion for Judgment on the Pleadings and

Renewed Motion to Lift the Stay of the Plaintiffs' Executions.

Date: July 18, 2008

Respectfully Submitted,


/s/ Jeffrey A. Taylor /mj

JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney


/s/ Rudolph Contreras

RUDOLPH CONTRERAS, D.C. BAR #  434122
Assistant United States Attorney


/s/ Beverly M. Russell

BEVERLY M. RUSSELL, D.C. BAR # 454257
Assistant United States Attorney
United States Attorney's Office, Civil Division
555 4th Street, N.W., Room E-4915
Washington, D.C. 20530
Ph: (202) 307-0492


/s/ Robert J. Erickson

ROBERT J. ERICKSON, D.C. Bar # 220731
Principal Deputy Chief
Criminal Appellate Section
U. S. DEPARTMENT OF JUSTICE
950 Pennsylvania Avenue, NW, Room 1515
Washington, DC 20530
Ph: (202) 514-2841

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that service of the foregoing public version of *Defendants' Reply to Plaintiffs' and Intervenor Plaintiffs' Opposition to Defendants' Renewed Motion for Judgment on the Pleadings and Renewed Motion to Lift the Stay of the Plaintiffs' Executions* was sent by first class, postage-prepaid mail, this 18th day of July 2008, to:

William E. Hoffman, Jr.
King & Spalding LLP
1180 Peachtree Street, NE
Atlanta, GA 30309

Jeanne Vosberg Sourgens
Vinson & Elkins, LLP
The Willard Office Building
1455 Pennsylvania Avenue, N.W., Suite 600
Washington, D.C. 20004

**All other counsel were served via the Court's Electronic Case Filing System.

/s/ Beverly M. Russell

_____

BEVERLY M. RUSSELL
Assistant United States Attorney