## IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MISSOURI
## CENTRAL DIVISION

MICHAEL ANTHONY TAYLOR    )
                        )
            Plaintiff,    )
                        )    No. 05-4173-CV-C-FJG
vs.                     )
                        )
LARRY CRAWFORD, et al.,    )
                        )
        Defendants. )

## ORDER

### I. BACKGROUND

Plaintiff filed the instant complaint on June 3, 2005, and an amended complaint was filed on September 12, 2005 (Doc. #36)[1]. On December 28, 2005, the Court issued an Order denying defendant's Motion to Dismiss and ruling that the case presented factual issues which would likely be resolved by either a motion for summary judgment or through a hearing (Doc. # 54). On January 3, 2006, the defendants notified the Court that the Supreme Court of Missouri had set plaintiff's execution date for February 1, 2006. On January 18, 2006, plaintiff filed an Application for a Court Order requesting that the Court issue an Order directing that Taylor not be executed until further order of the Court to be issued within a reasonable time after a hearing on the merits which was scheduled for February 21, 2006. On January 19, 2006, Judge Scott Wright issued an Order staying the execution until the Court could conduct the hearing (Doc. # 62). The

---

[1] Richard Clay was previously granted leave to intervene in this action. On January 30, 2006, the Court orally granted Mr. Clay's Motion to Dismiss this action as to him without prejudice. Reginald Clemons also had a pending Motion for Leave to Intervene in this action. He has now moved to withdraw from this action.

Roane v. Mukasey,
Civil Action No. 05-2337(RWR/DAR)
Defs.' Ex. 5

same day, defendants appealed Judge Wright's ruling to the Eighth Circuit. On January 29, 2006, the Eighth Circuit entered an Order reversing and vacating Judge Wright's January 19, 2006 Order. The Eighth Circuit remanded the case to the Western District and directed that the Court reassign the case to another judge for an immediate hearing. The Eighth Circuit directed that an Order shall be issued no later than 12:00 Noon on Wednesday, February 1, 2006. This case was assigned to this Court on Monday, January 30, 2006. The Court conducted a telephonic hearing on January 30-31, 2006 and now addresses the issues which were presented.

In his First Amended Complaint plaintiff seeks a declaratory judgment that Missouri's method of execution by lethal injection violates the Eighth, Thirteenth and Fourteenth Amendments because it would inflict on him cruel and unusual punishment, would deprive him of life, liberty or property without due process of law and would inflict upon him a badge of slavery, in that the three drug sequence using a procedure whereby the drugs are administered through the femoral artery creates a foreseeable risk of the infliction of gratuitous pain. Plaintiff also argues that the physician's role in the execution violates medical ethics.

## II. EVIDENTIARY HEARING

During the telephonic hearing, the Court heard the testimony of the following individuals: Dr. Mark Dershwitz, Dr. Jonathan I. Groner, Dr. Mark Heath and Terry W. Moore, the Director of Adult Institutions for the Missouri Department of Corrections.

Mr. Moore testified that when an inmate is executed, the procedure is accomplished through the use of three drugs which are administered by a board

2

certified physician. The physician first administers five grams of sodium pentothal, also known as thiopental, which is a substance that produces anesthesia. Thereafter, the physician administers a syringe of saline to flush the IV line. Next, the physician administers pancuronium bromide, also referred to as pancuronium. This drug is a paralytic agent which prevents any involuntary movement of the body. The physician then again administers the saline solution. Finally, the third drug which is administered is potassium chloride, which is a drug which stops the electrical activity of the heart. Mr. Moore testified that the average time to complete administration of the drugs is between two and five minutes and the average time of death from when the drugs are administered until the time of death was between two and five minutes. Dr. Dershwitz testified that if the above outlined protocol is followed, there is no chance that an inmate would experience pain or suffering.

Plaintiff presented the testimony of Dr. Groner. Dr. Groner is a pediatric surgeon. However, he is not an anesthesialogist, nor does he administer anesthesia. Dr. Groner testified that the pancuronium bromide does not have any function in bringing about the death of an inmate, but that the sole affect of this drug is to relax the inmate's muscles. Additionally, he testified that the potassium chloride also is not necessary because the first drug which is administered, thiopental, is lethal in the amount in which it is given. He also testified that the administration of these drugs through the femoral venous catheter is unnecessary and that the drugs could easily be administered through peripheral veins located in the arms. Dr. Groner testified that he believes there is a significant risk that an inmate would experience pain and suffering under the current

3

protocol.

Plaintiff also presented the testimony of Dr. Mark Heath. Dr. Heath is a board certified anesthesiologist. Dr. Heath testified that Missouri is unique in its requirement that the drugs be administered through the femoral vein. He does not believe that it is reasonably necessary and that a safer alternative would be to administer the drugs through a peripheral artery located in the arm. He agreed with the testimony of Dr. Groner that five grams of sodium pentothal would be a lethal dose. However, he stated that the length of time in which death would occur would vary from person to person. On the low end the drug could cause death in one to two minutes or it might take up to twenty minutes. He also agreed with Dr. Groner that there is no need for the use of pancuronium bromide to bring about the death of an inmate. Dr. Heath also testified that he does not believe that the use of potassium chloride is necessary to bring about an inmate's death. He stated that the administration of this drug is very painful if a person is conscious. He also stated that there are alternative drugs which also stop the heart which are not painful when administered.

### III. DISCUSSION

**A. Missouri's Means and Method of Execution**

The Eighth Amendment provides that "cruel and unusual punishment" shall not be inflicted. It prohibits punishments that are "incompatible with the 'evolving standards of decency that mark the progress of a maturing society.'" Estelle v. Gamble 429 U.S. 97, 102 (1976). As to executions, it prohibits "the unnecessary and wanton infliction of

pain" as well as methods involving torture or a lingering death.  See <u>Gregg v. Georgia</u>, 428 U.S. 153, 173 (1976).  "The cruelty against which the Constitution protects a convicted man is cruelty *inherent in the method of punishment*, not the necessary suffering involved in any method employed to extinguish life humanely." <u>Louisiana ex rel. Francis v. Resweber</u>, 329 U.S. 459, 464 (1947)(emphasis added).  Additionally, as the Court noted in <u>Campbell v. Wood</u>, 18 F.3d 662, 687 (9th Cir. 1994), "the risk of accident cannot and need not be eliminated from the execution process in order to survive constitutional review."

Plaintiff argues that the sequence of the three chemicals mentioned above (sodium pentothal, pancuronium bromide and potassium chloride) are unnecessary as a means of employing lethal injection and they create a foreseeable risk of inflicting gratuitous pain and suffering.  However, based upon the testimony which was presented by the witnesses, the Court does not find that there is a significant risk that the means and method which the Missouri Department of Corrections uses will cause unnecessary pain and suffering.  Dr. Dershwitz testified that the dose of sodium pentothal which is administered, 5 grams, has a very long lasting effect.  Thus, the likelihood that the inmate will still be conscious when the other drugs are administered is highly unlikely.  Other courts who have examined this procedure have also found that it is not cruel and unusual.  In <u>Johnston v. Crawford</u>, No. 4-04-CV-1075 CAS, (E.D.Mo. Aug. 26, 2005), the Court stated:

Plaintiff's evidence is inadequate to demonstrate that Missouri's execution

protocol would subject him to the unnecessary and wanton infliction of pain, torture or a lingering death. Plaintiff's evidence suggests only a possibility, rather than a probability, that he may remain conscious and sensate long enough to experience pain during his execution. For instance, in the affidavit of Dr. Heath submitted in support of the TRO motion, Dr. Heath opines that "the failure to properly administer the sodium pentothal" would create an unjustifiable risk that a prisoner will be conscious during the remainder of the execution. But as previously noted the ever-present possibility of human error or accident is insufficient to establish a constitutional violation. Louisiana ex rel. Francis, 329 U.S. at 464; see also Estelle, 429 U.S. at 105; Beardslee, 395 F.3d at 1075.

Furthermore, plaintiff's evidence does not adequately demonstrate the nature or the duration of the possible pain relative to the likely degree of sedation so as to establish that the quantum of pain would violate Eighth Amendment standards. . . . The record fails to establish any foreseeable probability that the use of the Missouri protocol would result in an execution involving torture or unnecessary pain of unconstitutional magnitude or length.

Id. at pp. 4-5. This conclusion has been reached by other courts that have also considered challenges to lethal injection protocols. In Beardslee v. Woodford, No. C 04-5381 JF, 2005 WL 40073 (N.D.Cal. Jan. 7, 2005), aff'd, 395 F.3d 1064 (2005), the Court stated, "even with protocols under which only two grams of sodium pentothal - as opposed to the five grams used in California - are to be administered, the likelihood of such an error occurring 'is so remote as to be nonexistent.'" Id. at * 3. See also Reid v. Johnson, 333 F.Supp.2d 543 (E.D.Va. 2004). Therefore, the Court does not find that the plaintiff has demonstrated that Missouri's means of accomplishing lethal injection violate the Eighth Amendment.

Plaintiff also argues that method by which the drugs are administered is also cruel and unusual in that the drugs are administered through the femoral vein, rather than through a vein in the inmate's arm. However, the Court is also not persuaded that this constitutes cruel and unusual punishment. The testimony was that an injection is administered to numb the area before the catheter is inserted so that the inmate will

6

experience little if any pain. There was testimony that complications can arise with the placement of the catheter and that it might become dislodged or that it is sometimes difficult to locate the femoral vein. However, as noted above, these slim possibilities do not show that the procedure is cruel and unusual.

### B. Role of Physician - Violation of Medical Ethics

Plaintiff also argues that the defendants will violate his right to due process of law by executing him by using a physician to carry out the essential steps in the execution in violation of the physician's medical ethics. Other courts have addressed this and found that it does not violate the physician's code of ethics to participate in an execution. In Abdur 'Rahman v. Bredesen, No. M2003-01767-COA-R3-CV, 2004 WL 2246227, * 9 (Tenn.Ct.App. Oct. 6, 2004), aff'd, 2005 WL 2615801 (Tenn. Oct. 17, 2005), the Court noted, "the Tennessee Supreme Court noted that 'no public policy is violated by allowing physicians or anyone else to participate in carrying out a lawful sentence.'" Id. at *9 quoting Coe v. Sundquist, No. M2000-00897-SC-R9-CV (Tenn. Order Apr. 19, 2000). The Court finds that this is likely the way Missouri courts would also rule on the issue. Indeed, if physicians were not involved in supervising and administering the drugs, it is likely that inmates would claim that it was cruel and unusual punishment because Department of Corrections personnel, without any medical training, were administering the drugs.

### C. Violation of the Thirteenth Amendment

Finally, plaintiff claims that the chosen form of lethal injection is a vestige and badge of slavery and therefore violates the Thirteenth Amendment as well as the Eighth and Fourteenth and impinges on the vertical-equity (color and socio-economic status of accused) and the horizontal equity (irrationality of who among the mass of homicide

defendants gets the death penalty, irrespective of color and socio-economic status).

The Thirteenth Amendment provides that:

> Neither slavery nor involuntary servitude, *except as a punishment for crime*, whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction.

(Emphasis added). Defendants argue that the Thirteenth Amendment does not apply in this case because this case involves neither slavery nor involuntary servitude. Even if it did, defendants argue that the Amendment specifically makes exception for instances in which a person is being punished for a crime. In Wendt v. Lynaugh, 841 F.2d 619, 620 (5th Cir. 1988), the Court stated:

> The record is clear that Wendt had been duly convicted of a crime and was serving sentence in the Texas prison as punishment for that crime. His situation in precise words is exempted from the application of the Thirteenth Amendment. He is in no position to claim a right under the Thirteenth Amendment.

Similarly in Draper v. Rhay, 315 F.2d 193 (9th Cir.), cert. denied, 375 U.S. 915, 84 S.Ct. 214, 11 L.Ed.2d 153 (1963) the Court stated:

> Where a person is duly tried, convicted, sentenced and imprisoned for crime in accordance with law, no issue of peonage or involuntary servitude arises. . . . The Thirteenth Amendment has no application where a person is held to answer for a violation of a penal statute.

Id. at. 197 (internal citations omitted).

Additionally, defendants point out that Missouri's method of execution is used on all inmates who have been sentenced to death, regardless of their race. In order to show a violation of the Thirteenth Amendment, defendants argue that plaintiff would have to show that prisoners of different races were treated differently. This plaintiff has failed to do. Accordingly, the Court finds that plaintiff has failed to demonstrate a violation of the Thirteenth Amendment.

8

## IV. CONCLUSION

After considering the evidence and testimony which was presented during the evidentiary hearing, the Court finds that neither the chemicals used by the State of Missouri for lethal injection nor the procedure employed to administer these injections constitutes cruel and unusual punishment. While the plaintiff suggests a different approach to lethal injection, he does not prove that the current method used by Missouri violates the Eighth Amendment to the Constitution. Further the Court is not persuaded that the use of the femoral vein for the administration of the lethal injection violates applicable standards of the Eighth Amendment. The Court also does not find that Missouri physicians who are involved in administering the lethal injections are violating their ethical obligations nor that the procedure is violative of the Thirteenth Amendment.

The Court **GRANTS** the Motion of Reginald Clemons to Withdraw his Motion to Intervene (Doc. # 72).

Date: January 31, 2006
Kansas City, Missouri

**S/ FERNANDO J. GAITAN, JR.**
Fernando J. Gaitan, Jr.
United States District Judge