UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
_____
                               )
JAMES ROANE, JR., et al.,      )
                               )
         Plaintiffs,           )
                               )
         v.                    )   Civil Action No. 05-2337 (RWR)
                               )
ERIC H. HOLDER, JR., et al.,   )
                               )
         Defendants.           )
_____)
```

MEMORANDUM OPINION AND ORDER

Six death row inmates facing execution by lethal injection bring this action against the Attorney General and other Justice Department officials[1] in their official and individual capacities alleging various constitutional and statutory violations caused by the federal government's adoption and intended use of a lethal injection protocol that allegedly exposes the inmates to a substantial risk of severe pain. The defendants have renewed their motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). Because the defendants' asserted statute of limitations defense raises a genuine factual dispute that precludes summary judgment, the defendants' renewed motion for judgment on the pleadings will be denied in part. The defendants have also renewed their motion to dismiss under Rules 12(b)(1)

---

[1] Under Federal Rule of Civil Procedure 25(d), Attorney General Eric H. Holder, Jr. and Acting DEA Administrator Michele Leonhart are substituted for their predecessors as parties.

- 2 -

and 12(b)(6).  Because the plaintiffs do not oppose dismissal of all individual capacity claims, the defendants' motion to dismiss all individual capacity claims will be granted.  In addition, because the plaintiffs do not seek to challenge 28 C.F.R. § 26.3, the defendants' motion to dismiss Count IV to the extent it challenges this regulation will be denied as moot.  Because Count V challenges the defendants' general policy to not apply certain Controlled Substances Act ("CSA") provisions against individuals who participate in federal lethal injections or against the federal government's lethal injection protocol itself, but does not challenge any individual decision not to prosecute an alleged CSA violation, the defendants' motion to dismiss to Count V of the amended complaint will be denied.  The defendants' motion to dismiss all official capacity claims against defendant Thomas Webster, M.D., a penitentiary Clinic Director, will be granted because Dr. Webster has exercised his right under 18 U.S.C. § 3597(b) and 28 C.F.R. § 26.5 not to participate in federal executions.

<u>BACKGROUND</u>

Plaintiffs James Roane, Jr., Cory Johnson, and Richard Tipton were each tried and convicted on multiple charges and "each was sentenced to death on one or more of the capital murder charges on which he was convicted."  <u>United States v. Tipton</u>, 90 F.3d 861, 868 (4th Cir. 1996).  Their convictions became final on

- 3 -

direct appeal when the Supreme Court denied certiorari for each on June 2, 1997.  Roane v. United States, Johnson v. United States, Tipton v. United States, 520 U.S. 1253 (1997).  Plaintiff Orlando Hall was convicted of kidnaping resulting in death and other crimes and sentenced to death in 1995.  United States v. Hall, 152 F.3d 381, 390 (5th Cir. 1998).  His conviction became final on May 17, 1999.  Hall v. United States, 526 U.S. 1117 (1999) (denying petition for certorari).  Plaintiff Bruce Webster was convicted of kidnaping resulting in death and other crimes and sentenced to death in 1996.  United States v. Webster, 162 F.3d 308, 317, 319-20 (5th Cir. 1998).  His conviction became final on October 4, 1999.  Webster v. United States, 528 U.S. 829 (1999) (denying petition for certorari).  Plaintiff Anthony Battle was convicted of murdering a federal correctional officer and sentenced to death in 1997.  United States v. Battle, 173 F.3d 1343, 1345 (11th Cir. 1999).  His conviction became final on March 20, 2000.  Battle v. United States, 529 U.S. 1022 (2000) (denying petition for certorari).  Each plaintiff also has sought unsuccessfully to challenge his death sentence through collateral review.  At present, each plaintiff is to be executed in the manner prescribed by the federal government's lethal injection protocol.

Plaintiffs Roane, Tipton, and Johnson filed this action on December 6, 2005 against the Attorney General, the Administrator

- 4 -

of the Drug Enforcement Administration ("DEA"), Director of the
Federal Bureau of Prisons Harley G. Lappin, Medical Director of
the Health Services Division of the Federal Bureau of Prisons
Newton E. Kendig, M.D., Warden of the United States Penitentiary
Terre Haute ("Terre Haute") Mark Bezy, and Clinical Director at
Terre Haute Thomas Webster, M.D.  Bruce Webster, Battle, and Hall
intervened as plaintiffs in 2007.  The plaintiffs' executions
were stayed by consent of all parties.  The plaintiffs' amended
complaint alleges five claims.  The plaintiffs' first claim
alleges that they have been denied due process under the Fifth
Amendment because the defendants "have refused to disclose the
procedures that will be utilized in carrying out the plaintiffs'
executions[.]"  (Am. Compl. ¶ 58.)  The plaintiffs' second and
third claims allege that the defendants' method of carrying out
the plaintiffs' executions by lethal injection violates the
Eighth Amendment's prohibition against cruel and unusual
punishment.  (Id. ¶¶ 61, 63-66.)  The plaintiffs' fourth claim,
brought under the Administrative Procedure Act ("APA"), alleges
that the defendants failed to follow the APA's rulemaking
procedures when promulgating their lethal injection protocol.
(Id. ¶¶ 68-72.)  Finally, the plaintiffs' fifth claim alleges
that "the defendants have arbitrarily and capriciously failed to
exercise their authority to enforce the CSA" against persons

- 5 -

dispensing one of the lethal injection drugs, sodium thiopental, without a valid registration.  (<u>Id.</u> ¶¶ 74-77.)

The defendants have renewed[2] their motion for judgment on the pleadings and their motion to dismiss certain claims and defendants.  The defendants contend that they are entitled to judgment because the plaintiffs' claims are barred by the applicable statute of limitations and because the plaintiffs' claims are an eleventh hour challenge filed "too late in the day."  (Defs.' Mem. in Supp. of Their Renewed Mot. for J. on the Pleadings ("Defs.' J. on the Pleadings Mem.") at 9-10.)  The defendants also contend that all individual capacity claims, the official capacity claims against the DEA Administrator and Dr. Webster, and Counts IV (in part) and V of the amended complaint should be dismissed, alleging that one claim in Count IV is barred by res judicata, that the claim against the DEA Administrator in Count V is foreclosed by the Supreme Court's decision in <u>Heckler v. Chaney</u>, 470 U.S. 821 (1985), and that no relief is available against Dr. Webster because he has exercised his right not to participate in federal executions.

_____

[2]This action has been twice stayed pending the Supreme Court's decisions in <u>Hill v. McDonough</u>, 547 U.S. 573 (2006), and <u>Baze v. Rees</u>, 128 S. Ct. 1520 (2008).

- 6 -

DISCUSSION

I.   RENEWED MOTION FOR JUDGMENT ON THE PLEADINGS

A party may move for judgment on the pleadings "[a]fter the pleadings are closed -- but early enough not to delay trial" under Rule 12(c).  Fed. R. Civ. P. 12(c).  Under Rule 12(d), if, as here, "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."  Fed. R. Civ. P. 12(d).  Summary judgment may be granted only where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The relevant inquiry "is the threshold inquiry of determining whether there is a need for a trial -- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).  In considering a motion for summary judgment, all evidence and inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

- 7 -

A.   Statute of limitations

The defendants contend that the plaintiffs' method-of-execution claims are barred by the general six-year statute of limitations on lawsuits against the government.  (Defs.' J. on the Pleadings Mem. at 14 (citing 28 U.S.C. § 2401 ("[E]very civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues.").)  A statute of limitations bar is an affirmative defense and the defendants bear the burden of proving it.  See Colbert v. Potter, 471 F.3d 158, 165 (D.C. Cir. 2006); Jones v. Ritter, 587 F. Supp. 2d 152, 159 (D.D.C. 2008.)  The defendants allege that each plaintiff's claim accrued at the time he exhausted his direct appeal, which was more than six years before each plaintiff's participation in this action.  In response, the plaintiffs contend that the general six-year statute of limitations does not apply to constitutional claims seeking injunctive relief, and that if the statute of limitations does apply, the plaintiffs' claims are timely.  (See Pls.' Opp'n to Renewed Mot. for J. on the Pleadings at 15-16.)

The six-year statute of limitations under 28 U.S.C. § 2401 applies to the plaintiffs' claims for injunctive relief.  See Kendall v. Army Bd. of Corr. of Military Records, 996 F.2d 362, 365 (D.C. Cir. 1993) (holding that § 2401(a) "applies to all civil actions whether legal, equitable, or mixed").  Section

- 8 -

2401(a) applies to "every civil action," making no distinction between legal and equitable actions.  28 U.S.C. § 2401(a); see Kendall, 996 F.2d at 365; Walters v. Sec'y of Def., 725 F.2d 107, 111-12 (D.C. Cir. 1983) (noting the Congress's choice to use "civil action" rather than "suit" "eliminat[es] any possible distinction under the statute between legal and equitable claims").  Thus, by its express terms, the six-year statute of limitations under § 2401(a) applies to all civil actions against the United States, "even [if] the relief sought . . . is purely prospective."  Walters, 725 F.2d at 113.  Accordingly, although the plaintiffs' claims seek injunctive relief, such claims are still subject to the six-year limitations period for claims brought against the United States.

"[I]t is the 'standard rule that [accrual occurs] when the plaintiff has a complete and present cause of action[,]' . . . that is, when 'the plaintiff can file suit and obtain relief[.]'" Wallace v. Kato, 549 U.S. 384, 388 (2007) (internal citation omitted) (quoting Bay Area Laundry & Dry Cleaning Pension Trust Fun v. Ferbar Corp. of Cal., 522 U.S. 192, 201 (1997)).  A cause of action may accrue even if "the full extent of the injury is not then known or predictable."  Id. at 391 (internal quotation marks omitted).  Courts of appeals considering when a method-of-execution claim accrues have concluded that a plaintiff's claim accrues upon completion of the plaintiff's direct appeal or, if

- 9 -

the challenged protocol is not known upon conclusion of direct appeal, at the time when a plaintiff "knew or should have known based upon reasonable inquiry" about the protocol giving rise to the challenge.  Cooey v. Strickland, 479 F.3d 412, 422 (6th Cir. 2007); see Walker v. Epps, 550 F.3d 407, 414 (5th Cir. 2008) (holding that the statute of limitations begins to run on "the date direct review of an individual case is complete or the date on which the challenged protocol was adopted"); McNair v. Allen, 515 F.3d 1168, 1174, 1176-77 (11th Cir. 2008) (holding that a method-of-execution claim under § 1983 "accrues on the later of the date on which state review is complete, or the date on which the capital litigant becomes subject to a new or substantially changed execution protocol"); Nooner v. Norris, 491 F.3d 804, 808 (8th Cir. 2007) (concluding that the constitutionality of a lethal injection protocol can be challenged once an inmate's death sentence becomes final on direct review "as long as lethal injection is the established method of execution, the protocol is known, and no state administrative remedies are available); see also Neville v. Johnson, 440 F.3d 221, 222 (5th Cir. 2006) ("A challenge to a method of execution may be filed at any time after the plaintiff's conviction has become final on direct review.").

The question of when a plaintiff knew or should have known of his cause of action is a question of fact.  See Jones v. Rogers Mem'l Hosp., 442 F.2d 773, 775 n.2 (D.C. Cir. 1971);

Cobell v. Babbitt, 30 F. Supp. 2d 24, 44 (D.D.C. 1998) ("The question of when the plaintiffs knew or should have known of their claim is a question of fact."). For example, in Cooey, the Sixth Circuit concluded that Cooey's 2004 method-of-execution challenge was untimely under the applicable two-year statute of limitations because, regardless of his actual knowledge, "Cooey should have known of his cause of action in 2001 after amendments to the law required that he be executed by lethal injection, and the information was publicly available upon request." 479 F.3d at 422. Similarly, in McNair, the Eleventh Circuit held that the plaintiff, whose conviction became final in 1990, had a method-of-execution claim that accrued on July 31, 2002, the date the plaintiff "selected lethal injection as the means by which he [would] die." 515 F.3d at 1177. The Eleventh Circuit concluded that at the time the plaintiff selected lethal injection as the method for his execution and made himself subject to the state's lethal injection protocol, "the facts which would support a cause of action [challenging the lethal injection method] should have been apparent to any person with a reasonably prudent regard for his rights." Id.

Here, each plaintiff's conviction became final on direct appeal more than six years before he filed or intervened in this action. However, the plaintiffs argue that the federal government has "assiduously guarded" its protocol and the

government's lack of disclosure prevented the plaintiffs from
having knowledge of their injury until "well within any possible
limitations period." (Pls.' Opp'n to Renewed Mot. for J. on the
Pleadings at 19, 21.) Plaintiffs identify facts revealing eight
specific alleged constitutional defects in the defendants'
execution processes. (Id. at 35-48.) Notably, the plaintiffs'
amended complaint alleges that at the time this case was filed,
"[t]he defendants . . . [had] refused to disclose the procedures
that will be utilized in carrying out plaintiffs' executions[.]"
(Am. Compl. ¶ 58.) The plaintiffs further contend that "there
was no specific information . . . until November 2003" indicating
that the federal government's method of execution used too little
anesthetic, and that information regarding "the use of the
femoral vein access and the employment of persons who are
responsible" for previous serious errors in federal executions
was not available until June 26, 2007, when the government
produced an addendum to its protocol. (Pls.' Opp'n to Renewed
Mot. for J. on the Pleadings at 20.) The defendants do not
dispute the plaintiffs' allegations that they were not permitted
access to the defendants' protocol. Instead, the defendants
contend that there was sufficient publicly available information
cited in the plaintiffs' amended complaint[3] and "published

---

[3]The intervenor plaintiffs prepared their own complaints,
but the parties stipulated that the intervenors would simply join
in the original plaintiffs' existing pleading.

accounts of purported problems with lethal injection procedures"
known to each plaintiff at the time his conviction became final
on direct review that he should have been aware of his claims at
that time and therefore, the claims of each plaintiff accrued
more than six years before he filed or intervened in this action.
(See Defs.' Reply at 13-14.)

To show the plaintiffs knew or should have known of their
claims long ago, it is not enough to recite the amended
complaint's allegations that there were reports of problems with
federal executions for years.  The plaintiffs must or should have
known of the particular problems the plaintiffs have cited in
this case as being of actionable constitutional dimensions.  When
the plaintiffs actually knew or when they should have known about
each of their challenges to the defendants' lethal injection
protocol is a fact question that cannot be resolved as a matter
of law based on the current record.[4]  Accordingly, the

_____

[4]The plaintiffs also contend that their method-of-execution
claims have not yet accrued because a method-of-execution claim
alleges a "continuing violation."  (See Pls.' Opp'n to Renewed
Mot. for J. on the Pleadings at 15-16.).  The continuing tort
doctrine applies where "no single incident in a continuous chain
of tortious activity can 'fairly or realistically be identified
as the cause of significant harm[.]'"  Page v. United States, 729
F.2d 818, 821-22 (D.C. Cir. 1984) (quoting Fowkes v. Pa. R.R.,
264 F.2d 397, 399 (3d Cir. 1959); see Heard v. Sheahan, 253 F.3d
316, 319 (7th Cir. 2001) ("A violation is called 'continuing'
. . . when it would be unreasonable to require or even permit
[the plaintiff] to sue separately over every incident of the
defendant's unlawful conduct.").  For example, a hostile work
environment claim under Title VII alleges a continuing violation
because, unlike a discrete act of discrimination, it is based on

- 13 -

defendants' motion for judgment on the pleadings on the ground
that the plaintiffs' claims are barred by six-year statute of
limitations for civil actions brought against the government will
be denied.

B.   Eleventh hour challenge

The defendants allege, relying on the Supreme Court's
opinion in Hill v. McDonough, 547 U.S. 573 (2006), that the
plaintiffs' suit should be dismissed as being an "eleventh hour
challenge" to their executions that was "filed too late in the
day and can reasonably be construed as dilatory." (See Defs.' J.
on the Pleadings Mem. at 13-14.)   In Nelson v. Campbell, 541 U.S.
641 (2004), the Supreme Court held that a stay of execution was

---

"repeated conduct . . . [that] cannot be said to occur on any
particular day." Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S.
101, 115 (2002).  In such a situation, "the cumulative effect of
the conduct [is] actionable," and "'the cause of action accrues,
and the limitation period begins to run, at the time the tortious
conduct ceases.'"  Page, 729 F.2d at 821-22 (quoting Donaldson v.
O'Connor, 493 F.2d 507, 529 (5th Cir. 1974), vacated on other
grounds, 422 U.S. 563 (1975)).  The continuing tort doctrine
"becomes relevant only when the tortious conduct is ongoing."
Id. at 822 n.23.

The plaintiffs' method-of-execution challenge does not
allege a continuing violation because there is no "continuous
chain of tortious activity."  Page, 729 F.2d at 821.  "The
challenged protocol will affect each plaintiff but once."
Walker, 550 F.3d at 417 (concluding that the continuous tort
doctrine does not apply to a method-of-execution challenge).
Similarly, the adoption of the challenged protocol is a discrete
action that creates the alleged risk of future injury.  Although
the risk of future injury for each plaintiff may continue while
they are subject to the challenged protocol, there is no ongoing
tortious conduct by the government giving rise to a cumulative
injury.  Accordingly, the continuing tort doctrine is
inapplicable to the plaintiffs' claims.

- 14 -

"an equitable remedy" that "'must take into consideration the State's strong interest in proceeding with its judgment.'"   Id. at 649.   Two years later, in Hill, the Supreme Court reaffirmed its position that "a stay of execution is an equitable remedy" that is "not available as a matter of right," and that "inmates seeking time to challenge the manner in which the [government] plans to execute them must satisfy all of the requirements for a stay, including a showing of a significant possibility of success on the merits."[5]   547 U.S. at 584.   The Court further explained that "equity must be sensitive to the [government's] strong interest in enforcing its criminal judgments without undue interference from the . . . courts."   Id.   Thus, "[a] court considering a stay [of execution] must also apply 'a strong equitable presumption against the grant of a stay where a claim could have been brought at such a time as to allow consideration of the merits without requiring entry of a stay.'"   Id. (quoting Nelson, 541 U.S. at 650).   Hill noted that "a number of federal courts [had] invoked their equitable powers to dismiss suits they

_____

[5]To be entitled to preliminary injunctive relief, a plaintiff generally must "demonstrate four things: (1) that he is substantially likely to succeed on the merits of his suit, (2) that in the absence of an injunction, he would suffer irreparable harm for which there is no adequate legal remedy, (3) that the injunction would not substantially harm other parties, and (4) that the injunction would not significantly harm the public interest."   Taylor v. Resolution Trust Corp., 56 F.3d 1497, 1505-06 (D.C. Cir. 1995).   "These factors interrelate on a sliding scale and must be balanced against each other."   Serono Labs., Inc. v. Shalala, 158 F.3d 1313, 1318 (D.C. Cir. 1998).

- 15 -

saw as speculative or filed too late in the day" and concluded that "courts can and should protect [against] dilatory and speculative suits." Id. at 584-85. In addition, in Baze v. Rees, 128 S. Ct. 1520 (2008), the Supreme Court cautioned that a plaintiff bringing a method-of-execution challenge carries a heavy burden to establish an Eighth Amendment violation. Id. at 1537. Recognizing the government's "legitimate interest in carrying out a sentence of death in a timely manner[,]" Baze concluded that "a stay of execution may not be granted . . . unless the condemned prisoner establishes that the . . . lethal injection protocol creates a demonstrated risk of severe pain. He must show that the risk is substantial when compared to the known and available alternatives." Id.

Ultimately, in Nelson, Hill, and Baze, the Supreme Court has provided a clear warning to convicted inmates facing execution that equity weighs against those who sit on their rights and then seek to delay timely enforcement of judgments. See, e.g., Walker v. Epps, 587 F. Supp. 2d 763, 773 (N.D. Miss. 2008) (applying the "'strong equitable presumption against the grant of a stay where the claim could have been brought'" earlier in the context of the plaintiffs' requests for stays of execution (quoting Nelson, 541 U.S. at 650)). However, equity's dislike of late-filed suits requiring stays is a "presumption" and accordingly, may be overcome in certain circumstances. Since the defendants have

- 16 -

moved to lift the stays of execution currently in place, the
defendants' argument that equity demands judgment for the
defendants because the plaintiffs claims were filed too late in
the day will be considered together with the motion to lift the
stay.[6]  Accordingly, whether the defendants are entitled to
judgment in their favor because the plaintiffs' claims are an
eleventh hour challenge to their executions "filed too late in
the day" will be taken up separately.

II.  RENEWED MOTION TO DISMISS

The defendants have renewed their motion to dismiss certain
claims and defendants under Rules 12(b)(1) and 12(b)(6), alleging
that all individual capacity claims against the defendants and
the official capacity claims against the DEA Administrator and
Dr. Webster should be dismissed, that the plaintiffs' challenge
in Count IV to the federal regulations authorizing lethal
injection is barred by res judicata or the six-year statute of
limitations, and that the plaintiffs' Count V claim challenging
the defendants' alleged failure to enforce the CSA with respect
to individuals who participate in federal executions is barred by
Heckler v. Chaney, 470 U.S. 821 (1985).

---

[6]On a motion to lift a stay, a court must be guided by the
same equitable considerations that apply when a court determines
whether a stay should be issued in the first place.  See SEC v.
Vision Commc'ns, Inc., Civil Action No. 94-0615 (CRR), 1995 WL
109037, at *2-3 (D.D.C. Mar. 6, 1995).

- 17 -

A.   Individual capacity claims

Plaintiffs do not oppose the dismissal of all individual capacity claims.  (Pls.' Opp'n to Renewed Mot. to Dismiss at 1 n.1.)  Accordingly, all individual capacity claims against the defendants will be dismissed.

B.   Alleged challenge to federal regulations in Count IV

The defendants contend that any challenge to the 28 C.F.R. § 26.3, the federal regulation permitting lethal injection, is barred either by the doctrine of res judicata or by the six-year statute of limitations under 28 U.S.C. § 2401.  In their opposition, the plaintiffs state that they "do not challenge the promulgation of [this] regulation[]."  (Pls.' Opp'n to Renewed Mot. to Dismiss at 10.)  Accordingly, the defendants' motion to dismiss Count IV to the extent that it challenges 28 C.F.R. § 26.3 will be denied as moot.

C.   Count V: failure to enforce the CSA

Count V alleges that "the defendants have arbitrarily and capriciously failed to exercise their authority to enforce the CSA by not requiring the persons whom the defendants intend to dispense controlled substances to the plaintiffs to apply for a registration[.]"  (Am. Compl. ¶ 77.)  The CSA requires "[e]very person who dispenses, or proposes to dispense, any controlled substance" to "obtain from the Attorney General a registration" unless the registration requirement is waived by the Attorney

General.  21 U.S.C. §§ 822, 829, 841(a)(1).  "The Attorney
General may, by regulation, waive the requirements for
registration of certain manufacturers, distributors, or
dispensers if he finds it consistent with the public health and
safety."  21 U.S.C. § 822(d).  The plaintiffs contend that their
claim challenges the "Defendants' long-settled position
concerning application of [the] CSA [registration] requirements
to those who carry out the federal lethal injection protocol and
their adoption of a general policy that is unlawful."  (Pls.'
Opp'n to Renewed Mot. to Dismiss at 4.)  In addition, the
plaintiffs challenge not just the defendants' adoption of an
enforcement policy, but the lethal injection protocol itself as a
violation of the CSA.  The defendants contend that these
challenges are barred by the "presumption against reviewability
for 'an agency's decision not to take enforcement action'"
established in Heckler v. Chaney, 470 U.S. 821 (1985).[7]  Crowley
Caribbean Transp., Inc. v. Pena, 37 F.3d 671, 675 (D.C. Cir.
1994) (quoting Heckler, 470 U.S. at 832).  (See Defs.' Mem. in
Supp. of Their Renewed Mot. to Dismiss at 12-15.)

---

[7]The defendants construe this claim as brought only against
the DEA Administrator.  However, the plaintiffs contend that this
claim is brought "against all defendants who have been named in
the case" because the defendants' alleged policy "is a
coordinated policy established by all Defendants."  (Pls.' Opp'n
to Renewed Mot. to Dismiss at 8.)  At this stage, it must be
presumed that the plaintiffs will be able to provide support for
their allegation of coordination among all the defendants.

The APA "provides judicial review to any 'person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute.'"  Webster v. Doe, 486 U.S. 592, 597 (1988) (quoting 5 U.S.C. § 702).  However, under 5 U.S.C. § 701(a), judicial review under the APA is not available if the relevant statute precludes review or if the "agency action is committed to agency action by law."  5 U.S.C. § 701(a); see Webster, 486 U.S. at 599.  In Heckler, prison inmates brought suit against the Food and Drug Administration ("FDA"), challenging the FDA's refusal to take enforcement action against the states for alleged violations of the Federal Food, Drug, and Cosmetic Act ("FDCA") caused by the states' use of certain drugs in administering lethal injections to carry out capital sentences.  470 U.S. at 823-24.  The government argued that the FDA's decision not to apply the FDCA to drugs used in lethal injections was "'committed to agency discretion by law' under § 701(a)(2)."  Id. at 828.  Considering whether the FDA's determination "not to exercise its enforcement authority" with respect to the drugs used by states in lethal injections, the Supreme Court concluded that "an agency's decision not to prosecute or enforce, whether through civil or criminal process, is a decision generally committed to an agency's absolute discretion[,]" and is presumptively unreviewable.  Id. at 831.  The Court reasoned that "an agency

decision not to enforce often involves a complicated balancing of a number of factors which are peculiarly within its expertise."

Id.

> [An] agency must not only assess whether a violation has occurred, but whether agency resources are best spent on this violation or another, whether the agency is likely to succeed if it acts, whether the particular enforcement action requested best fits the agency's overall policies, and, indeed, whether the agency has enough resources to undertake the action at all.   An agency generally cannot act against each technical violation of the statute it is charged with enforcing. The agency is far better equipped than the courts to deal with the many variables involved in the proper ordering of its priorities.

Id. at 831-32.  Further, Heckler reasoned that "when an agency refuses to act it generally does not exercise its coercive power over an individual's liberty . . . and thus does not infringe upon areas that courts often are called upon to protect."  Id. at 832.  Finally, Heckler noted that an agency's decision not to enforce "shares to some extent the characteristics of the decision of a prosecutor in the Executive Branch not to indict -- a decision which has long been regarded as the special province of the Executive Branch."  Id.

In Crowley, the court of appeals clarified the scope of the Heckler presumption against judicial review, distinguishing between a "single-shot non-enforcement decision" presumed unreviewable and "a general enforcement policy [that] may be reviewable for legal sufficiency where the agency has expressed the policy as a formal regulation after the full rulemaking

process . . . or has otherwise articulated it in some form of universal policy statement[.]" 37 F.3d at 676.  The court of appeals reasoned that a reviewable policy is distinguishable from an unreviewable enforcement decision because "[b]y definition, expressions of broad enforcement policies are abstracted from the particular combinations of facts the agency would encounter in individual enforcement proceedings." Id. at 677.  Further, enforcement policies "are more likely to be direct interpretations of the commands of the substantive statute rather than the sort of mingled assessments of fact, policy, and law that drive an individual enforcement decision and that are . . . peculiarly within the agency's expertise and discretion." Id. Thus, where the agency has expressed a policy "divorced from any specific . . . factual scenario, Heckler does not preclude review." Ctr. for Auto Safety, Inc. v. Nat'l Highway Traffic Safety Admin., 342 F. Supp. 2d 1, 13 (D.D.C. 2004) (reviewing the National Highway Traffic Safety Administration's 1998 letter to manufacturers stating a policy that the Safety Act "precludes regional recalls"); see OGS Bulk Ships, Inc. v. United States, 132 F.3d 808, 809, 812 (D.C. Cir. 1998) (holding that the Maritime Administration's "longstanding interpretation of the Merchant Marine Act of 1936" permitting "vessel[s] built with the aid of a 'construction-differential subsidy' from the federal government . . . [to] enter domestic trade after the statutorily

- 22 -

defined economic life of vessel expires" was reviewable as "a
general enforcement policy"); cf. Crowley, 37 F.3d at 677
(finding the Maritime Administrator's denial of a waiver for a
single company "unreviewable because it [was] a decision to
forego enforcement in [the] one instance").

By the plaintiffs' own admission, they do not seek review of
"'individual, isolated non-enforcement decisions'" presumed
unreviewable under Heckler.  (Pls.' Opp'n to Renewed Mot. to
Dismiss at 4 (quoting Heckler, 470 U.S. at 839 (Brennan, J.,
concurring).)  Instead, the plaintiffs' contend that the
defendants have a general policy against applying the CSA's
registration requirements to those who participate in federal
lethal injections under the protocol.  To the extent the
plaintiffs are claiming that the defendants have made a general
statement about their policy of enforcement of the CSA with
respect to federal lethal injections divorced from any fact-
specific enforcement decision, the plaintiffs have stated a claim
outside the scope of the Heckler presumption against judicial
review.  Similarly, the plaintiffs also challenge "the lethal
injection protocol itself," arguing that the protocol's "failure
to require registration . . . preclud[es] enforcement of the
registration requirement."  (Id. at 8.)  To the extent the
plaintiffs are arguing that the lethal injection protocol itself
is unlawful, such a claim is not foreclosed by Heckler.

- 23 -

Accordingly, the defendants' motion to dismiss the plaintiffs'
Count V claim and the DEA Administrator as a defendant will be
denied to the extent that Count V is a challenge to an alleged
general enforcement policy and the lethal injection protocol
itself.

D.   Defendant Webster

Defendant Webster seeks dismissal of all claims brought
against him in his official capacity as clinical director at
Terre Haute because he has exercised his right under 18 U.S.C.
§ 3597(b) and 28 C.F.R. § 26.5 to be excused from attendance at
or personal participation in any execution.  Under 18 U.S.C.
§ 3597(b), no employee of

> the United States Department of Justice, the Federal
> Bureau of Prisons, or the United States Marshals
> Service . . . shall be required, as a condition of that
> employment or contractual obligation, to be in
> attendance at or to participate in any prosecution or
> execution under this section if such participation is
> contrary to the moral or religious convictions of the
> employee.  In this subsection, "participation in
> executions" includes personal preparation of the
> condemned individual and the apparatus used for
> execution and supervision of the activities of other
> personnel in carrying out such activities.

18 U.S.C. § 3597(b).  In addition, under 28 C.F.R. § 26.5,

> No officer or employee of the Department of Justice
> shall be required to be in attendance at or to
> participate in any execution if such attendance or
> participation is contrary to the moral or religious
> convictions of the officer or employee, or if the
> employee is a medical professional who considers such
> participation or attendance contrary to medical ethics.
> For purposes of this section, the term "participation"
> includes personal preparation of the condemned

individual and the apparatus used for execution and supervision of the activities of other personnel in carrying out such activities.

28 C.F.R. § 26.5.

In his affidavit in support of the defendants' motion, Dr. Webster declares that he has exercised his right "not to participate in any and all facets of the execution process" and "absolutely no involvement in, nor control over, any facet of the operation involving the execution process."  (Defs.' Renewed Mot. to Dismiss, Decl. of Thomas Webster at 1.)  The plaintiffs nonetheless contend that Dr. Webster has an affirmative duty to involve himself in the execution process to "ensur[e] that appropriate steps are taken to minimize pain suffered by inmates," and that he "bears responsibility for any 'deliberate indifference' to such pain."  (Pls.' Opp'n to Renewed Mot. to Dismiss at 9.)  The plaintiffs' contention that Dr. Webster bears responsibility for pain caused by the federal execution process after he has exercised his right under 18 U.S.C. § 3597(b) and 28 C.F.R. § 26.5 not to participate is inconsistent with the clear purpose of these provisions.  In addition, dismissal of Dr. Webster as a named defendant will cause no prejudice to the plaintiffs because there is no question that the relief sought can be provided by the other named defendants in this action. Accordingly, the defendants' motion to dismiss Dr. Webster as a named defendant will be granted.

CONCLUSION

Because the defendants' statute of limitations defense raises a genuine factual dispute regarding when the plaintiffs knew or should have known of their Eighth Amendment method-of-execution claims, the defendants' renewed motion for judgment on the pleadings will be denied in part. Because the defendants' argument that the plaintiffs have filed their claim too late in the day to permit consideration raises equitable arguments, such arguments will be considered along with the defendants' motion to lift the stays of execution currently in place. The defendants' renewed motion to dismiss will be granted in part and denied in part. The defendants' motion to dismiss all individual capacity claims will be granted as unopposed. The defendants' motion to dismiss Count IV to the extent it challenges 28 C.F.R. § 26.3 will be denied as moot because plaintiffs do not purport to be challenging this regulation. Because Count V alleges an APA challenge to an alleged general nonenforcement policy and the defendants' lethal injection protocol itself, the defendants' motion to dismiss Count V and the DEA Administrator as unreviewable under Heckler will be denied. Finally, because defendant Webster has exercised his right under 18 U.S.C. § 3597(b) and 28 C.F.R. § 26.5 not to participate in federal executions and the relief sought by the amended complaint can be provided by the remaining named defendants, the defendants'

- 26 -

motion to dismiss Dr. Webster as a named defendant will be granted.  Accordingly, it is hereby

ORDERED that the defendants' renewed motion for judgment on the pleadings [160] be, and hereby is, DENIED IN PART insofar as it asserts a statute of limitations bar.  It is further

ORDERED that the defendants' renewed motion to dismiss [159] be, and hereby is, GRANTED IN PART and DENIED IN PART.  All individual capacity claims are dismissed and defendant Webster is dismissed as a named defendant.  The motion is denied in all other respects.

SIGNED this 20th day of April, 2009.


_____/s/_____
RICHARD W. ROBERTS
United States District Judge