UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JAMES ROANE, JR., <u>et al.</u>, | ) |
| Plaintiffs, | ) |
| ANTHONY BATTLE, ORLANDO HALL, BRUCE WEBSTER, | ) |
| Plaintiff-Intervenors, | ) Civil Action No. 05-2337 (RWR/DAR) |
| v. | ) |
| ERIC H. HOLDER, <u>et al.</u>, | ) |
| Defendants. | ) |

**DEFENDANTS' OPPOSITION TO JEFFREY PAUL'S MOTIONS TO INTERVENE AND FOR A PRELIMINARY INJUNCTION**

In June 1997, in the U.S. District Court for the Western District of Arkansas, the movant, Jeffrey Paul (hereinafter referred to as "movant" or "Paul"), was convicted of the murder of 82-year old Sherman Williams in violation of 18 U.S.C. §§ 2 and 1111(a), and for "knowing use of a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924." *See Paul v. United States of America*, No. 05-3431 (8th Cir. July 22, 2008)(Mem. Op. at 1)(attached hereto as Ex. 1).  The Eighth Circuit summarized the evidence adduced at trial as follows:

> [O]n June 22, 1995, Paul and an acquaintance, Trinity Ingle, followed Williams from downtown Hot Springs to a walking trail in the [Hot Springs] National Park [in Arkansas], where they first robbed and beat Williams, and then shot him in the head and shoulder.  Paul and Ingle attempted to hide the body by dragging it away from the trail.  Four days later, a hiker found Williams's body under logs and rocks, with hands and ankles bound with duct tape.  A medical examiner testified that Williams suffered gunshot wounds to the head and chest, and that the wound to the head caused his death. . .

*Id.* at 3.

A jury in the U.S. District Court for the Western District of Arkansas sentenced Paul to death under the Federal Death Penalty Act, 18 U.S.C. §§ 3591, *et seq.*  *Id.* at 1.  The Eighth Circuit affirmed Paul's conviction and sentence on June 27, 2000.  *Id.*, citing, *United States v. Paul*, 217 F.3d 989 (8th Cir. 2000).  The Eighth Circuit noted that "[t]he government presented a strong case on aggravating factors [supporting] a sentence of death."  Ex. 1, Mem. Op. at 10.  The Circuit summarized the factors as follows:

> The jury unanimously found that Paul intentionally aided and abetted in the killing of Sherman Williams, and it unanimously found three statutory aggravating factors and six non-statutory aggravating factors in support of the death penalty: (1) the defendant committed the offenses in an especially heinous, cruel or depraved manner, in that they involved torture or serious physical abuse, (2) the defendant committed the offenses with the expectation of the receipt of something of pecuniary value, (3) the victim was particularly vulnerable due to old age, (4) the defendant is likely to commit criminal acts of violence in the future which would be a continuing and serious threat to society, (5) the defendant successively eluded capture by the FBI until his arrest in August 1996, (6) the victim was killed to prevent the defendant from being identified as a participant in the robbery, (8) the 'victim had personal characteristics as an individual human being,' and (9) the family of the victim has suffered injury and loss as the result of the victim's death.

*Id.* at 11.

On January 30, 2002, Paul filed a motion pursuant to 28 U.S.C. § 2255 in the Western District of Arkansas arguing ineffective assistance of counsel during his criminal trial which, on January 31, 2005, the Court denied.  *Id.* at 4.  On July 22, 2008, the Eighth Circuit affirmed the District Court's decision.  Ex. 1.  Paul petitioned for certiorari to the U.S. Supreme Court, and on October 5, 2009, the Supreme Court denied the petition.  Ex. 2.  On October 6, 2009, Paul filed his motions to intervene and for a preliminary injunction in this Court.  For reasons stated below, Defendants respectfully submit that both motions should be denied.

## **ARGUMENT**

On February 2, 2006, the Plaintiffs and Intervenor Plaintiffs, in the above-captioned suit, filed a motion for an order enjoining the Defendants from executing them until the United States Supreme Court decided *Hill v. Crosby*, No. 05-8794, 2006 WL 171583 (U.S. Jan. 25, 2006). R. 2. Defendants did not oppose the Court imposing a preliminary injunction to bar Roane, Tipton and Johnson's scheduled May, 2006 executions pending a decision by the Supreme Court in *Hill v McDonough*. R. 4. The District Court entered an order granting a preliminary injunction. After Hill was decided in June, 2006, the District Court *sua sponte* continued the preliminary injunctions without requiring Plaintiffs to establish their entitlement to such extraordinary relief. Defendants' motion to lift the stays of the Plaintiffs' and Plaintiff Intervenors' executions is pending before this Court. At this juncture, Paul seeks to intervene, and a preliminary injunction.

Rule 24 of the Federal Rules of Civil Procedure sets forth the requirements for both intervention as of right and permissive intervention. As to intervention as of right, Rule 24(a) states:

> Upon timely application anyone shall be permitted to intervene in an action ... when a statute of the United States confers an unconditional right to intervene; or.
> . .when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Fed. R. Civ. P. 24(a).

Paul cannot point to any statute conferring upon him an unconditional right to intervene. As to establishing an "interest" for purposes of intervention by right, the District of Columbia Circuit has held that qualification for intervention as of right depends on four factors:

>   (1) the timeliness of the motion; (2) whether the applicant "claims an interest relating to the property or transaction which is the subject of the action"; (3) whether "the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest"; *and* (4) whether "the applicant's interest is adequately represented by existing parties."

*Mova Pharm. Corp. v. Shalala*, 140 F.3d 1060, 1074 (D.C.Cir.1998) (*quoting* Fed.R.Civ.P. 24(a)(2)) (citations omitted)(emphasis added).[1]

Paul's request to intervene as of right should be denied because he cannot demonstrate that disposition of this suit will impede his ability to protect his interest. Paul could have clearly sought the relief that he is requesting here (i.e., a preliminary injunction barring his execution) in the U.S. District Court for the District of Arkansas – the jurisdiction in which he committed his crime, was tried by a jury, and was convicted and sentenced by that jury – and that Court has jurisdiction to consider the requested relief. Further, disposition of the litigation in this suit will not at all undermine Paul's ability to prove his claim in the district court in Arkansas. *See, e.g. Glamis Imperial Corp. v. U.S. Dep't of the the Interior*, No.Civ.A. 01-530(RMU), 2001 WL 1704305, *3 (D.D.C. Nov. 13, 2001)(noting that this Court "has held that the ability to protect an interest is impaired or impeded if denying intervention would destroy an applicant's work in proving his claim or defense."). For example, to the extent that statute of limitations is an issue (and it appears that might be given that Paul was sentenced to death in 1997), the U.S. District Court for the District of Arkansas can readily decide that issue. Indeed, courts have decided that issue absent discovery. *See, e.g. Jones v. Allen*, 483 F.Supp.2d 1142, 1152 (M.D. Ala. 2007)(denying stay of execution because of prisoner's delay in challenging method of execution,

---

[1]The D.C. Circuit also stated that, in addition to meeting the four factors for intervention, a party must establish Article III standing. *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 731 (D.C. Cir. 2003).

and stating "the mere filing of a lethal-injection lawsuit does not insulate a person, who has waited an inordinate amount of time to commence a lethal-injection challenge, from the consequences of that inordinate delay."); *Smith v. Johnson*, No. Civ.A. H-06-450, 2006 WL 644424 (S.D. Tex. Feb. 13, 2006)(denying injunction and stay of execution on statute of limitations grounds). Accordingly, given that Paul cannot demonstrate that he is situated such that the disposition of this action may impair or impede his ability to protect his interest, his request to intervene as of right should be denied.

A court, in its discretion, may however *permit* intervention if there are common questions of law or fact with the main suit. Fed. R. Civ. P. 24(b). Although this suit does involve common questions of law and fact as those underlying Paul's claim (i.e., challenge to the manner in which the federal death penalty is effectuated), Defendants urge the Court to deny permissive intervention because, absent the *Roane* litigation, Paul's ties to this jurisdiction are nil. There is an interest in having local controversies decided locally, and that includes the relief that Paul is seeking here. *See, e.g. Sierra Club*, 276 F.Supp.2d 62, 70 (D.D.C. 2003). This Court is likely keenly aware that there are human dynamics involved other than that of Paul's – certainly, the family and friends of Mr. Williams all have an interest in having a lawful sentence imposed by a judge *outside this jurisdiction* for a crime committed in a community *other than this one* being carried out. There is nothing precluding the U.S. District Court for the District of Arkansas from considering Paul's request for relief, and indeed, there are considerations why it should. Accordingly, Paul's motion to intervene in this suit should be denied.

However, if this Court were to grant Paul's motion to intervene, his request for a preliminary injunction should be denied. In the District of Columbia, a preliminary injunction is an extraordinary remedy and is to be sparingly granted. *Sandoz v. FDA*, 439 F.Supp. 2d 26, 30

(D.D.C. 2006).  The relief should only be granted when the party seeking relief, by clear showing, carries the burden of persuasion.  *Chaplaincy of Full Gospel Churches v England*, 454 F.3d 290. 297 (D.C. Cir. 2006), citing, *Cobell v. Norton*, 391 F.3d 251, 258 (D.C. Cir. 2004).  A district court is required to balance the strength of the requesting party's arguments in favor of the areas of (1) substantial likelihood of success on the merits, (2) a showing of irreparable harm in the absence of an injunction, (3) the injunction would not substantially harm other parties; and (4) the injunction would not substantially harm the public interest.  *Taylor v. Resolution Trust*, 56 F.3d 1497, 1505-1506 (D.C. Cir. 1995).  In the present case, Paul cannot establish his entitlement to a preliminary injunction.  As the Supreme Court noted in *Hill v. McDonough*, 547 U.S. 573, 584 (2006) stays of execution are equitable remedies, are not available as a matter of right, and equity must be sensitive to the state's strong interest in enforcing its criminal judgments.

     Paul's ability to show a substantial likelihood of success on the merits is virtually nil.  As the Sixth Circuit noted in *Workman v. Bredesen*, 486 F.3d 896, 906 (6th Cir. 2007), "[n]o court. . .has issued a final decision declaring a state's lethal injection protocol unconstitutional[,] thus, "[o]ne cannot credibly establish a likelihood of success in attacking a death penalty procedure when the theory of success has yet to succeed in a considerable number of cases over a considerable number of years."  Perhaps more importantly, the Supreme Court's decision in *Baze v. Rees*, 128 S.Ct. 1520 (2008) essentially vitiates Paul's ability to demonstrate both a substantial likelihood on the merits and irreparable harm.  Indeed, the *Baze* decision post-dates those state matters cited by Paul as relates to concerns regarding death penalty executions.  Paul's Mem. at 8-9 (discussing 2006 and 2007 stays of or moratorium on executions in California, Florida, and North Carolina).

In *Baze*, the Supreme Court held that Kentucky's three drug protocol (similar to that used by the federal government) does not violate the Eighth Amendment, and further noted that "a stay of execution may not be granted" to a condemned prisoner challenging "a lethal injection protocol substantially similar to the protocol [the Supreme Court upheld that day]." 128 S.Ct. At 1537.  The Court averred that its decision should resolve similar challenges to lethal injection protocols given this standard.  Id.  In this same decision, the Supreme Court reiterated that "capital punishment is constitutional" and further stated that, "[s]ome risk of pain is inherent in any method of execution-no matter how humane-*if only from the prospect of error in following the required procedure*.  It is clear, then, that the Constitution does not demand the avoidance of all risk of pain in carrying out executions."  Id. at 1529 (emphasis added).  Although the Supreme Court recognized that "subjecting individuals to a risk of future harm-not simply actually inflicting pain-can qualify as cruel and unusual punishment[,]" the Supreme Court emphasized that, "[t]o establish that such exposure violates the Eighth Amendment, . . .the conditions presenting the risk must be '*sure or very likely* to cause serious illness and *needless suffering*,' and give rise to 'sufficiently *imminent* dangers.'" Id. at 1530-31, quoting Helling v. McKinney, 509 U.S. 25, 33 (1993)(emphasis in original).  The Court added that "an inmate cannot succeed on an Eighth Amendment claim simply by showing one more step the State could take as a failsafe for other, independently adequate measures."  Id. at 1537.  "This approach[,]" the Supreme Court noted, "would serve no meaningful purpose and would frustrate the State's legitimate interest in carrying out a sentence of death in a timely manner."  Id. (emphasis added).  Thus, "[a] stay of execution may not be granted. . . unless the condemned prisoner establishes that the State's lethal injection protocol creates a demonstrated risk of severe pain."  Id. at 1537.  Given *Baze*, Paul simply cannot demonstrate a substantial likelihood of success on the merits on

7

his challenge to the manner in which federal death sentences are effectuated (given its similarity to Kentucky's method), and thus, his request for a preliminary injunction enjoining Defendants from setting a date for his execution and from executing him should be denied.

Further, the Supreme Court addressed - and disposed of - arguments raised by Paul to support his motion. The three drugs used by Kentucky (at issue in *Baze*) and to carry out federal death sentences are sodium thiopental ("a fast-acting barbituate sedative that induces a deep, comalike unconsciousness when given in the amounts used for. . .lethal injections[s]"), pancuronium bromide ("a paralytic agent"), and potassium chloride (a drug that induces cardiac arrest). Baze, 128 S.Ct. at 1527; see also Workman v. Bredesen, 486 F.3d 896, 902 (6th Cir. 2007). On this issue, the Supreme Court stated that "[t]he proper administration of the first drug ensures that the prisoner does not experience any pain associated with the paralysis and cardiac arrest caused by the second and third drugs." 128 S.Ct. at 1527. The Court rejected the Kentucky inmates' concerns about the potential for improper preparation of the first drug by unqualified personnel (the same advanced by Paul, Mem. at 6) noting that reconstituting the thiopental into solution is fairly straightforward. Id. at 1533.

The *Baze* Court also determined that a state's failure to adopt a one-drug protocol "[does] not violate the prisoner's Eighth Amendment rights since the *comparative efficiency of that method [is] not well-established.*" See *Harbison v. Little*, 571 F.3d 531, 539 (6th Cir. 2009), citing *Baze*, 128 S.Ct. at 1535. The Supreme Court noted "how the continued use of the three-drug protocol cannot be seen as an 'objectively intolerable risk' in light of the fact that no other state adopted it." *Harbison, 571 F.3d* at 539, citing, *Baze*, 128 S.Ct. at 1535. In *Harbison*, the Sixth Circuit also discussed its previous examination of the one drug protocol, stating, "[w]e also

noted in Workman that the [Tennessee protocol review committee] concluded that using only sodium thiopental would slow down the death penalty process, *the effect of the required dosage would be less predictable as the sole drug inducing death, and there was no date or case studies from other states on the efficacy of the one-drug method.*" *Id.*, at 539, n.1, citing, *Workman v. Bredesden*, 486 F.3d 896, 901 (6th Cir. 2007), *cert denied*, 550 U.S. 930 (2007).

Additionally, Paul's argument that he should be granted a preliminary injunction and his execution stayed on the basis that the Bureau of Prisons' protocol was not subject to notice and comment, and thus, violative of the Administrative Procedure Act, 5 U.S.C. 701, *et seq.*, is without merit. Pls.' Mem. at 10. The Department of Justice's regulation on implementation of death sentences in federal cases was proposed in November 1992 (57 Fed. Reg. 56536) and issued in or around January 1993 (58 Fed. Reg. 4898), and prescribes that a sentence of death shall be executed "[b]y intravenous injection of a lethal substance or substances in a quantity sufficient to cause death, such substance or substances to be determined by the Director of the Federal Bureau of Prisons. . ." 28 C.F.R. § 26.3(a)(4). Contrary to Paul's argument, the Department's method of execution was published, and subject to notice and comment. 57 Fed. Reg. 56536 and 58 Fed. Reg. 4898. Accordingly, his request for a stay on this ground should be denied.

Further, while Paul may argue that he could suffer irreparable harm by his execution, Mem. P.&A. in Support Mot. Prelim. Inj., at 4, the harm is not in the carrying out of his lawfully imposed death sentence, but that he might suffer unconstitutional pain and suffering in the process. *State of La. ex. rel. Francis v. Resweber*, 329 U.S. 459, 464 (1947). As indicated above, *Baze* held that the procedures utilized by Kentucky, and jurisdictions with "substantially

9

similar" procedures to those used by Kentucky would not create a significant risk of unnecessary pain or suffering. Because the lethal injection protocol and procedures used by the Defendants are substantially similar to those approved by the Supreme Court in *Baze*, Paul cannot demonstrate irreparable harm. *See also Workman v. Bredesen*, cited *supra*.

As to the third factor, the substantial harm to other interested parties, including Defendants, the public, and the families and friends of Plaintiffs' victims, the harm is the same – i.e., further delay in the timely execution of criminal sentences. There is a strong public interest in the timely implementation of criminal sentences, *see Hill*, 547 U.S. at 584, which is undermined by the unsupported and unsupportable stay. This point is underscored by Judge Means' entry of an Order to Show Cause in Hall and Webster's criminal case requiring the government to show cause why the sentences he issued in their cases have not been carried out. See R. 194. Accordingly, if permitted to intervene, Paul's motion for a preliminary injunction should be denied.

A proposed Order consistent with the relief requested herein accompanies this opposition memorandum.

Date: October 27, 2009

Respectfully Submitted,


/s/ CDP /mj
CHANNING D. PHILLIPS, D.C. Bar # 415793
Acting United States Attorney


/s/ Rudolph Contreras
RUDOLPH CONTRERAS, D.C. Bar #  434122
Assistant United States Attorney


/s/ Beverly M. Russell
BEVERLY M. RUSSELL, D.C. Bar # 454257
Assistant United States Attorney
United States Attorney's Office, Civil Division
555 4th Street, N.W.
Washington, D.C. 20530
Ph:  (202) 307-0492


/s/ Robert J. Erickson /bmr
ROBERT J. ERICKSON, D.C. Bar # 220731
Principal Deputy Chief
Criminal Appellate Section
U. S. DEPARTMENT OF JUSTICE
950 Pennsylvania Avenue, NW, Room 1515
Washington, DC 20530
Ph:  (202) 514-2841