UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JEFFREY PAUL, et al., )<br>)<br>Plaintiffs, )<br>v. )<br>)<br>ERIC H. HOLDER, JR., et al., )<br>)<br>Defendants. )<br>_____) | Case No. 1:05-CV-2337 (RWR) |

### MOTION OF PLAINTIFF JEFFREY PAUL FOR PRELIMINARY INJUNCTION BARRING THE SCHEDULING OF HIS EXECUTION AND BARRING HIS EXECUTION

Plaintiff/Intervenor Jeffrey Paul ("Paul") hereby moves this court for a preliminary injunction barring the scheduling of his execution and barring his execution. The plaintiffs do not oppose Paul's Motion for a Preliminary Injunction; counsel for the Bureau of Prisons will notify the Court of its position on Paul's underlying Motion to Intervene in writing after the Bureau has an opportunity to review Paul's Motion.

A Memorandum of Points and Authorities in support of this Motion is being filed herewith, along with a proposed Order.

This 6th day of October, 2009

Respectfully submitted,

S/ Douglass G. Robinson
Douglas G. Robinson,
Skadden, Arps, Slate, Meagher & Flom, LLP
1440 NY Ave NW
Washington D.C. 20005-2111, 202-371-7800,
douglas.robinson@skadden.com

/S/ Sean D. O'Brien   
Sean D. O'Brien, MO Bar #30116
Jennifer A. Merrigan, #56733
6155 Oak Street, Suite C
Kansas City, MO 64113
816/363-2795 FAX: 816/363-2799

/S/ Robert L. McGlasson
Robert L. McGlasson, GA Bar #492638
1024 Clairemont Ave.
Decatur, GA 30030
404-314-7664 Fax 404-373-9338

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JEFFREY PAUL, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| v. | )   Case No. 1:05-CV-2337 (RWR) |
| | ) |
| ERIC H. HOLDER, JR., et al., | ) |
| | ) |
| Defendants. | ) |
| | ) |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF PAUL'S MOTION FOR A PRELIMINARY INJUNCTION BARRING SCHEDULING HIS EXECUTION AND BARRING HIS EXECUTION**

The lethal injection protocol employed by the defendants violates the United States Constitution and other statutory provisions including but not limited to the Fifth and Eighth Amendments of the United States Constitution, and the Administrative Procedures Act, 5 U.S.C. §§ 551 *et seq.* Plaintiff Jeffrey Paul ("Paul"), a death row inmate, requests that this Court enjoin defendants Eric Holder, United States Attorney General; Karen Tandy, Administrator of the Drug Enforcement Agency; Harley G. Lappin, Director of the Federal Bureau of Prisons; Newton E. Kendig II, M.D., Medical Director of the Federal Bureau of Prisons; Richard Veach, Warden at United States Penitentiary Terre Haute; and John Doe I-X (collectively "Defendants") from scheduling his execution until the Court has completed its review of the Defendants' lethal injection protocol to determine its legality and constitutionality. Counsel for Paul has conferred with counsel for the Bureau of Prisons; the Bureau will notify the Court of its position on Paul's underlying Motion to Intervene in writing after the Bureau has an opportunity to review Paul's Motion.

2

*INTRODUCTION*

Paul is a death row inmate. He has exhausted all direct and collateral appeals. On October 5, 2009, the Supreme Court of the United States denied his petition for certiorari in his collateral attack of his death sentence under 28 U.S.C. § 2255. Unless enjoined by this Court, the Federal Bureau of Prisons ("BOP") could schedule his execution at any time. Paul has been sentenced to die pursuant to the federal lethal injection protocol ("Protocol"). The Protocol, on information and belief, calls for employees of the BOP to inject a combination of three drugs into a condemned inmate. Complaint ¶ 21, December 6, 2005. When carried out, the Protocol causes the condemned inmate to suffer death by suffocation in conjunction with a heart attack. Id. On information and belief, Defendants intend to execute Paul by injecting him with three chemicals: sodium thiopental or sodium pentothal (an ultra short-acting barbiturate); pancuronium bromide or pavulon (a curare-derived agent that paralyzes all skeletal or voluntary muscles, but does not affect the condemned's awareness or sensation); and potassium chloride (a chemical that activates the nerve fibers lining the inmate's veins and interferes with the rhythmic cardiac contractions, causing cardiac arrest). Id.; National Coalition to Abolish the Death Penalty, Drug Companies and Their Role in Aiding Executions, 1-3 (2002). Despite claims that this three drug cocktail will cause Paul to be unconscious when he suffocates and has a heart attack, recent evidence demonstrates that there is a substantial risk that the drugs merely paralyze the condemned, ensuring he is cognizant of the resulting pain associated with suffocating and a heart attack. Declaration of Mark Heath ("Heath Decl.") attached as Exhibit A ¶¶ 39-44. However, because the pancuronium bromide paralyzes the condemned's muscles, any pain he experiences is not evident to the executioners or any observers. Id. at ¶¶ 43-44.

*ARGUMENT*

Paul seeks a preliminary injunction because the Protocol, which, on information and belief, will govern the method of Paul's execution, is unconstitutional and illegal. Courts consider and weigh four factors before granting a preliminary injunction: (1) the threat of irreparable injury to the plaintiff if an injunction is not granted; (2) the likelihood that other interested parties will suffer substantial harm if injunctive relief is granted; (3) the interests of the public; and (4) whether the plaintiff is likely to succeed on the merits of his underlying action. *Wagner v. Taylor*, 836 F.2d 566, 575 (D.C. Cir. 1987).

The court must balance the factors, and may grant an injunction even if Paul does not have an equally strong showing for all four factors. *Role Models America, Inc. v. White*, 193 F. Supp. 2d 76, 80 (D.D.C. 2002), *rev'd on other grounds*, 317 F.3d 327 (D.C. Cir. 2003). In particular, a court "may accept a showing that the movant has a 'substantial case on the merits' instead of the probability of success on the merits that is ordinarily required, but only when all of 'the other three factors strongly favor [the requested] interim relief'" *Id*. (quoting *WMATC v. Holiday Tours, Inc.*, 559 F.2d 841, 843 (D.C. Cir. 1977)). Irreparable injury, however, is the *sine qua non* of preliminary injunctive relief. *See USA Recycling, Inc. v. Town of Babylon*, 66 F.3d 1272, 1295 (2d Cir. 1995). Below, Paul demonstrates that he not only will suffer irreparable injury if the Court does not grant injunctive relief, but also that the other three factors courts use to decide whether to grant a preliminary injunction also favor Paul's request.

**Paul Faces Irreparable Injury**

The Court's principal concern is the threat of irreparable injury that the plaintiff will suffer if the injunction is not issued. *USA Recycling, Inc.*, 66 F.3d at 1294. Paul unquestionably faces grave injury – a foreseeably painful death. The evidence shows that there is a substantial risk that the Protocol will cause Paul to be conscious while suffocating and suffering a painful heart attack

before he finally dies. See Heath Decl. ¶¶ 36-40. The pain Paul would suffer will be unimaginable. Without question, this factor strongly supports Paul's request for an injunction.

**Defendants Will Not Suffer Substantial Harm**

The Court must balance whether other interested parties may suffer substantial harm if the injunction is granted. *See Wagner*, 836 F.2d at 575. Paul has been a death row inmate for twelve years. Briefly delaying his execution will not harm the defendants in any way, and certainly will not cause them "substantial harm." Further, this court has already enjoined Defendants from executing other inmates under federal death sentences and in their custody. *See* Orders Granting Motion to Stay and Granting Motion for Preliminary Injunction, February 20, 2006 and February 21, 2007. Merely adding Paul to this group will not inconvenience the Defendants. Because Defendants will not suffer substantial harm, or virtually any harm, if injunctive relief is granted, the second element also heavily favors Paul's pending motion.

**Injunctive Relief Would Serve the Public Interest**

The Court should also consider whether an injunction serves the public's interests. *See Wagner*, 836 F.2d at 575. Paul's request for injunctive relief serves the public interest because if an injunction is not granted the Defendants will violate Paul's constitutional rights. The United States' criminal justice system, including the implementation of capital punishment, is founded on the constitutional guarantees intended to limit governmental overreaching. Among those guarantees is the right to due process and to be free from cruel and unusual punishment. Absent an injunction, the BOP will violate Paul's constitutional rights, which creates doubt about the legitimacy of the federal capital punishment system The public's best interest is served when courts force the government to afford condemned inmates all of their constitutional rights, protecting the public as well as the inmates from future violations. Because the public has a strong interest in protecting the constitutional rights of all citizens, the third factor favors

injunctive relief.

**Success on the Merits of the Underlying Action Is Likely**

The Eighth Amendment protects against cruelty "inherent in the method of punishment." *Louisiana ex rel. Francis v. Resweber*, 329 U.S. 459, 464 (1947); *Furman v. Georgia*, 408 U.S. 238, 273 (1972). The United States Supreme Court has recognized that "[t]here is no purpose to inflict unnecessary pain nor any unnecessary pain involved in the proposed execution." *Resweber*, 329 U.S. at 464. The Protocol which, on information and belief, will apply to Paul's execution if an injunction is not issued, does not protect him from suffering an extraordinary and excruciatingly painful death. Experts examining the Protocol have concluded that there is a substantial risk that a condemned inmate will remain conscious throughout the execution, yet be paralyzed and unable to speak. See Heath Decl. ¶¶ 36-42.

On information and belief, sodium thiopental is the first drug injected into a condemned inmate. Sodium thiopental is a short-acting anesthetic, which is generally used by anesthesiologists to sedate the patient long enough for the doctor to intubate a patient's trachea and begin artificial respiration. See Heath Decl. ¶ 18. It is not used to maintain a patient in an unconscious state for long periods of time. *Id*. Although sodium thiopental, when correctly administered, would anesthetize a condemned inmate sufficiently, the complexity of properly administering the drug, in conjunction with its short-acting properties, may result in the inmate remaining conscious and able to feel pain or may cause the inmate to regain consciousness while being executed. See Heath Decl. ¶ 19.

Properly injecting sodium thiopental is difficult. See Heath Decl. ¶¶ 20-21. Preparing the drug and the materials for the drug's administration requires someone with significant training in pharmaceutical concepts. *Id*. The amount administered should be adjusted for factors such as the

inmate's weight and sensitivity to barbiturates. *Id*. at ¶ 20. Because of the numerous foreseeable problems associated with administering sodium thiopental, only those people with advanced training in anesthesiology should administer the drug. *Id*. at ¶ 21. Despite the risks associated with injecting sodium thiopental, the Protocol does not require a physician's presence while the drug is administered or at any point during the execution. See Implementation of Death Sentences in Federal Cases, 58 Fed. Reg. 4898 (Jan 19, 1993).

The other two drugs in the cocktail are pancuronium bromide, a neuromuscular blocking agent, and potassium chloride, an agent administered to stop the heart. *See* Drug Companies and Their Role in Aiding Executions, NCADP, p. 3-4 (2002). Both of these drugs increase the likelihood that Paul will suffer a cruel and inhumane death. *Id*. Pancuronium bromide is not an anesthetic. Id. It only paralyzes the body's voluntary muscles, thus precluding observers from determining whether the inmate experiences pain during the execution. See Heath Decl. ¶ 43. If the sodium thiopental was not properly administered as to render the condemned unconscious, then the inmate risks being aware of the paralysis and suffocation resulting from the injection of pancuronium bromide. *Id*. at ¶¶ 38-39. Likewise, if the condemned was not properly sedated, he will be aware of the "excruciating pain of the intravenous injection of high dose potassium chloride," the third drug that is injected. *Id*. at ¶ 39. This pain will end only after several minutes during which time the condemned would suffer "the torment and agony caused by suffocation…[which] would only be relieved by the onset of suffocation-induced unconsciousness." *Id*. at ¶ 40.

On information and belief, the Protocol does not require that a trained professional administer the sodium thiopental to Paul. Likewise, on information and belief, the Protocol has no provision requiring that the drug's administrator analyze or in any way account for Paul's weight and resistance to barbiturates. There is also no reason to believe that the BOP will provide

an Anesthesiologist or a Certified Registered Nurse Anesthetist at Paul's execution to correctly administer the sodium thiopental and ensure that he is adequately sedated. Therefore, there is a real likelihood that Paul will not be properly sedated and will be aware of the paralysis caused by the pancuronium bromide and the pain resulting from the injection of potassium chloride. Particularly because such horrendous pain could be prevented with changes to the Protocol, the risk of a painful death is unacceptable and unconstitutional.

As explained in the Amended Complaint, botched lethal injections are not rare. Complaint ¶ 41, July 10, 2006. On December 15, 2006, Florida Governor Jeb Bush ordered a moratorium on all lethal injections in Florida following the execution of Angel Diaz. *See* Adam Liptak & Terry Aguayo, *Bush's Brother Suspends Florida Death Penalty After Botched Execution*, INT'L HERALD TRIB., Dec. 16, 2006, available at http://www.iht.com/articles/2006/12/16/news/web.1216death.php. During the execution, the needle containing the lethal cocktail punctured Diaz's veins before it entered his soft tissue. *Id*. A second dose was administered and 34 minutes passed before Diaz died. *Id*. Just today, October 6, 2009, Ohio Governor Ted Strickland issued reprieves for Lawrence Reynolds and Darrel Durr "to allow more time for a review of the lethal injection protocol in Ohio" after the failed attempt to execute Ohio death row inmate Romell Broom. *See, Governor's Statement Regarding Reprieves,* http://www.governor.ohio.gov/News/PressReleases/2009/October2009/News10509/tabid/1265/Default.aspx.

Florida is not the only state recently to express concern about lethal injection procedures.[1]

---

[1] Superior Court Judge Donald Stephens of North Carolina recently enjoined three executions because of confusion surrounding whether doctors can participate in executions. On January 25, 2007, Judge Stephens issued injunctions halting the execution of a man set to die on January 26, 2007 and another who was set to die a few days later. Again on January 26, 2007, Judge Stephens enjoined an execution scheduled for February 9. Associated Press, *North*

On December 15, 2006, a federal district court in California halted all executions in California because California's "implementation of lethal injection is broken." *Morales v. Tilton*, Crim. No. 06-0219 (N.D. Ca. Dec. 15, 2006), submitted by plaintiff Anthony Battle, Doc. #36-4. U.S. District Judge Jeremy Fogel "reviewed a mountain of documents, including hundreds of pages of legal briefs, expert declarations, and deposition testimony, and [he] conducted five days of formal hearings, including at San Quentin State Prison that involved a detailed examination of the execution chamber and related facilities." *Id*. After his extensive review, Judge Fogel concluded that the method used by California and the federal government to execute prisoners is "broken" because the sodium thiopental frequently is administered improperly. *Id*. Therefore, he concluded, even though the plaintiff inmate could not provide definitive evidence showing that any inmate had been conscious at the time he was executed, "the evidence is more than adequate to establish a constitutional violation." *Id*. Judge Fogel acted by halting executions in California until the state remedied the obvious problems associated with using the three drug cocktail. California's execution procedures are nearly identical to the Protocol which would be employed in Paul's execution. *Id*.

In addition to violating the Eighth Amendment, executing Paul would also violate the Fifth Amendment The Fifth Amendment's Due Process Clause requires notice and the opportunity to be heard before the deprivation of life, liberty, or property. The Defendants however, have not disclosed the exact procedures they will use to execute Paul, which violates Paul's right to consult medical experts prior to his execution regarding the constitutionality of each aspect of the Protocol. Thus is a violation of the Fifth Amendment's requirement that the

---

*Carolina Judge Delays 3rd Execution in 2 Days, Citing 1909 Law*, INT'L HERALD TRIB., Jan. 26, 2007.

government provide notice and the opportunity to be heard before denying a person his life.

The Protocol also violates the Administrative Procedures Act ("APA"). Defendants have issued regulations governing execution procedures. However, these procedures were adopted without public notice and comment, a violation of the APA's procedural requirements. The Maryland Court of Appeals recently determined that Maryland violated the APA when adopting its lethal injection guidelines. The appellate court remanded the case with instructions that the district court "ENJOIN ENFORCEMENT OF [THE] LETHAL INJECTION CHECKLIST INCLUDED AS PART OF [THE] DIVISION OF CORRECTION EXECUTION OPERATIONS MANUAL UNTIL SUCH TIME AS THE CONTENTS OF THAT CHECKLIST …ARE ADOPTED AS REGULATIONS IN ACCORDANCE WITH THE REQUIREMENTS OF THE ADMINISTRATIVE PROCEDURES ACT." *Evans v. State of Maryland*, 914 A.2d 25, 81 (Md. Dec. 19,2006).

The explanation and discussion of the Protocol given above clearly establishes that there is a substantial danger that the three-drug cocktail, the foundation of the Protocol, will cause Paul to endure unreasonable pain and suffering. The administration of anesthesia is simply inadequate. Because of incomplete sedation there is a substantial danger that Paul and other condemned inmates will be fully aware that they are suffocating and having painful heart attacks in the moments prior to their deaths. Such an experience is unacceptable and unconstitutional. The Defendants propose to use an unconstitutional procedure to execute Paul, therefore, Paul likely will succeed on the merits of this action.

Because Paul meets all four requirements for an injunction, the court should grant his request for a preliminary injunction barring his execution. *See Wagner*, 836 F.2d at 575.

*CONCLUSION*

The court should grant Jeffrey Paul's request for a preliminary injunction barring his execution. All four of the factors that need to be considered to grant an injunction strongly favor Paul's request. Moreover, courts around the country are becoming increasingly concerned about executions using the three-drug cocktail referenced above. Within approximately the past six weeks three judges have halted executions noting disturbing new evidence that condemned inmates may be suffering unnecessarily painful and tortured deaths a result of the drugs' administration. Likewise, Florida Governor Jeb Bush has halted executions in a fourth state. This is not a trend to be ignored. Serious problems exist with the lethal injection processes currently being used to execute condemned prisoners. The court should enjoin the federal government from scheduling Paul's execution so that the Protocol can be properly evaluated. By setting an execution date for Paul, the BOP will show it will not voluntarily suspend executions. Therefore, this Court should require BOP to do so in the same manner that this Court enjoined BOP from executing the three Roane plaintiffs as well as plaintiff Bruce Webster. The defendants have advised counsel for Paul that they do not oppose the entry of preliminary injunction.

For the foregoing reasons, Paul respectfully requests that the Court enjoin Defendants from executing Paul until this Court has completed its review of the constitutionality and legality of the current lethal injection Protocol.

This 6th day of October, 2009.

        Respectfully submitted,

        S/ Douglass G. Robinson
        Douglas G. Robinson,
        Skadden, Arps, Slate, Meagher & Flom, LLP
        1440 NY Ave NW
        Washington D.C. 20005-2111, 202-371-7800,
        douglas.robinson@skadden.com

| | |
|---|---|
| */S/* Sean D. O'Brien | /S/ Robert L. McGlasson |
| Sean D. O'Brien | Robert L. McGlasson |
| MO Bar #30116 | GA Bar #492638 |
| Jennifer A. Merrigan, #56733 | 1024 Clairemont Ave. |
| 6155 Oak Street, Suite C | Decatur, GA 30030 |
| Kansas City, MO 64113 | 404-314-7664 Fax 404-373-9338 |
| 816/363-2795 FAX: 816/363-2799 | |

Case 1:05-cv-02337-RWR-DAR Document 334 Filed 03/24/14 Page 13 of 14

## CERTIFICATE OF SERVICE

I hereby certify that on October 6, 2009, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to the following:

**Counsel for Plaintiffs**

**Joshua Christopher Toll**
KING & SPALDING, LLP

**Paul F. Enzinna**
BAKER BOTTS, LLP

**Graham E. Eddy**
VINSON & ELKINS, L.L.P.

**Jeremy I. Levin**
BAKER BOTTS, LLP

**Rachel M. McKenzie**
BAKER BOTTS LLP

**Charles Anthony Zdebski**
TROUTMAN SANDERS LLP

**Jeanne Vosberg Sourgens**
VINSON & ELKINS L.L.P

**William E. Lawler , III**
VINSON & ELKINS, L.L.P.

**Margaret O'Donnell**
MCNALLY & O'DONNELL, P.S.C.

**Abigail Bortnick**
KING & SPALDING LLP

**William E. Hoffmann , Jr.**
KING & SPALDING, LLP

**Mark Joseph Hulkower**
STEPTOE & JOHNSON, LLP

**Matthew John Herrington**
STEPTOE & JOHNSON, LLP

**Jody A. Cummings**
STEPTOE & JOHNSON, LLP

**Owen James Bonheimer**
STEPTOE & JOHNSON, LLP

**Robert E. Waters**
KING & SPALDING, LLP

**Counsel for Defendants**

**Peter S. Smith**
UNITED STATES ATTORNEY'S OFFICE

**Robert J. Erickson**
U. S. DEPARTMENT OF JUSTICE

**Beverly Maria Russell**
U.S. ATTORNEY'S OFFICE FOR D.C.

**John F. Henault , Jr.**
COOLEY GODWARD KRONISH LLP

**Kenneth Adebonojo**
U.S. ATTORNEY'S OFFICE

**Madelyn E. Johnson**
U.S. ATTORNEY'S OFFICE FOR D.C.

/S/ Sean D. O'Brien

*Counsel for Movant*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JEFFREY PAUL, et al.,           )<br>                                             )<br>            Plaintiffs,            )<br>    v.                                    )<br>                                             )<br>ERIC H. HOLDER, JR., et al. , )<br>                                             )<br>            Defendants.          )<br>_____) | Case No. 1:05-CV-2337 (RWR) |

## **ORDER**

IT IS ORDERED that Plaintiff Jeffery Paul's Motion for a Preliminary Injunction Barring Defendants from Setting an Execution Date for Plaintiff and from Executing Him is hereby GRANTED.  The Defendants herein are enjoined from setting a date for executing Jeffery Paul and from executing Jeffery Paul pending further order of this Court.

_____

Richard W. Roberts
United States District Judge